UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C. A. No. 04-10685 WGY |
| AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

Plaintiffs Melinda Brown and Treffle LaFleche (collectively "Insureds" or "Plaintiffs") have moved this Court, pursuant to FED. R. CIV. P. 56, to grant them summary judgment with respect to their complaint seeking (1) a declaratory judgment that the "Prior Acts Exclusion" endorsement contained in Computrex's Officers and Directors Liability Insurance Policy does not bar coverage of the claims brought against them by Computrex's Chapter 7 Trustee; and (2) the entry of an order that National Union must undertake the defense of and make available to the Insureds the proceeds of the Officers and Directors Liability Insurance Policy to pay for losses (including defense costs) incurred by them or to be incurred by them in connection with the action brought against them by the Chapter 7 Trustee.

The following facts are undisputed and the Plaintiffs are entitled to judgment as a matter of law:

**A.     The Parties**

1.     Plaintiffs Melinda Brown and Treffle LaFleche are residents of Massachusetts. See Affidavit of Melinda Brown in Support of Plaintiffs' Motion for Summary Judgment ("Brown Aff.") ¶¶ 1-2. Plaintiffs are former directors of Computrex, id., and direct beneficiaries of the Officers and Directors Liability Insurance Policy at issue in these proceedings. Id. ¶ 6.

2.     Defendant American International Group, Inc. ("AIG") is the parent company of certain member insurance companies. See Directors and Officers Corporate Liability Policy No. 872-35-08 and Run-Off Endorsement ("D&O Policy"), at ii.[1] AIG is a corporation organized under the laws of Delaware with its principle place of business in New York, New York. See Affidavit of Daniel J. Kelly in Support of Plaintiffs' Motion for Summary Judgment ("Kelly Aff."), ¶ 8. The Policy identifies AIG as an insurer. See D&O Policy, at i.

3.     Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") is a subsidiary member of AIG and the named issuer of a Directors and Officers Corporate Liability Policy No. 872-35-08 and Run-Off Endorsement (the "D&O Policy") to Computrex's officers and directors, see D&O Policy, ii, iv, which includes the Plaintiffs, see Brown Aff. ¶ 6.[2] National Union is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principle place of business in New York, New York. See Kelly Aff. ¶ 9.

**B.     The Bankruptcy Proceeding**

4.     Computrex was a company based in Louisville, Kentucky and in the business of auditing freight bills prior to its involuntary petition in bankruptcy. See Brown Aff. ¶ 3.

---

[1] The first five (5) pages of the D&O Policy are not paginated. For purposes of Plaintiffs' Statement of Material Facts, those pages will be referenced as pages "i" – "v" respectively.

[2] AIG and National Union will collectively be referred to as "Defendants."

Computrex was a Kentucky corporation when the Policy was issued, but, on July 23, 2001, the company incorporated under the laws of the state of Delaware. Id. ¶ 5.

5. Computrex is currently the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington, Case No. 01-53755 (the "Bankruptcy Proceeding"). See Kelly Aff. ¶ 10.

6. On January 30, 2004, the Insureds were served with a 63-page adversary complaint (the "D&O Action") filed by the Bankruptcy Trustee. See Brown Aff. ¶ 7. The Trustee alleges a multitude of claims against several of Computrex's former Directors and Officers. Id. ¶ 8. Only a portion of the allegations and causes of action in the D&O Action are specifically directed at the Plaintiffs. Id.

7. The Trustee seeks to recover damages specifically from the Plaintiffs based on the following causes of action: (1) Breach of Fiduciary Duty to the Corporation (Count I); (2) Breach of Fiduciary Duty to Creditors (Count II); (3) Fraudulent Conveyance (Count IV); (4) Racketeer Influenced and Corrupt Organizations (Count V); (5) Negligence of the Board of Directors (Count VI); (6) Return of Shareholder Dividends (Count VIII); and (7) Common Law Fraud (Count IX). See Adversary Complaint, Case No. 01-53755 ("D&O Complaint"), ¶¶ 118-133; 146-179; 194-204.

8. The allegations of wrongful conduct contained in the D&O Action that serve as the basis for the foregoing causes of action are:

  a. allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, continued operating Computrex's business during insolvency based on a Ponzi scheme; see D&O Complaint, ¶¶ 121, 130, 160, & 176.

  b. allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, approved a settlement with Ronald LaFleche, a former Director, on September 6, 2000; Id. ¶¶ 56, 121, 130, 148, & 176.

3

    c.    allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc. Id. ¶¶ 121, 130, 151, & 176. The "spin-off" of these corporations is alleged to have officially occurred on March 10, 2001; Id. ¶ 87.

    d.    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly received dividends in the form of both cash and stock in connection with the "spin-off." Id. ¶¶ 121, 130, 176, & 198. The issuance of these dividends is alleged to have occurred on March 10, 2001; Id. ¶ 87.

    e.    Allegations that the Insureds, in their capacity as members of the Board of Directors, allowed Computrex's counsel to represent both Computrex and parties having interests adverse to Computrex; Id. ¶¶ 81, 121, & 176.

    f.    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly approved bonuses to Computrex executives. Id. ¶¶ 121, 130, & 176. The approval of bonuses is alleged to have occurred in December 2000, id. ¶ 65, July 2001, and August 2001, id. ¶ 104; and

    g.    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly received fees for their service on the Board of Directors while Computrex experienced financial difficulties. Id. ¶¶ 113, 125.

9.    The D&O Action contains allegations of wrongful conduct by the Plaintiffs that fall within the scope of the D&O Policy. See Kelly Aff. ¶14.

**C.    The D&O Policy**

10.    The D&O Policy was in effect with respect to the claims set forth in the Complaint at the time the Trustee filed the D&O Action. See Brown Aff. ¶ 10.

11.    The initial term of the D&O Policy spanned from January 1, 2001 to January 1, 2002. See D&O Policy, at ii.

12.    In consideration for payment by Computrex of an additional $19,800, the parties executed a "Run-Off Endorsement." See D&O Policy, at Endorsement #12. Pursuant to the Run-Off Endorsement, Computrex:

4

> Shall have the right to a period of three (3) years following the Effective Time… in which to give written notice to the Insurer of any Claim(s) first made against any Insured(s) during said three (3) year period for any Wrongful acts occurring on or prior to the Effective Time and otherwise covered by the policy.

Id.

13. Consequently, the Insureds may make a claim under the D&O Policy until January 1, 2005. See Kelly Aff. ¶15.

14. The D&O Policy contains two types of coverage, A and B. See D&O Policy, at 1. Coverage A, entitled "Individual Insured Insurance," requires the Defendants to:

> [P]ay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers, or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

Id.

15. Thus, the D&O Policy obligates the Defendants to undertake the defense of a claim if the claim is tendered by the Insureds. See D&O Policy, at 1. Clause 8 of the D&O Policy states that:

> [T]he Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of the Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy.

Id. at 11-12.

B0360701v1

16. The D&O Policy alternatively provides that the insurer must advance defense costs prior to the final disposition of a claim. See D&O Policy, at 11-12. Clause 8 specifically states:

> When the Insurer has not assumed the defense of the claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the even and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

Id. at 12.

17. In consideration for payment by Computrex of $8,932 for the initial term and $19,800 for the run-off endorsement, the Defendants assumed the risk that Insureds would make a claim on the D&O Policy and they would be required to assume the defense of or advance defense costs pursuant to such a claim. See Kelly Aff. ¶ 11.

18. Included in the definition of a "Claim" under the Policy is a "civil…. proceeding for monetary or non-monetary relief which is commenced by… the service of a complaint." See D&O Policy, at 2.

19. Included in the definition of "Loss" are "Defense Costs" which are defined as "reasonable and necessary fees, costs and expenses… resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds." See D&O Policy, at 4.

20. Included in the definition of "Wrongful Acts" are "any breach of duty, neglect, error, misstatement, misleading statement, omission, or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company." See D&O Policy, at 6.

B0360701v1

21.     "Related Wrongful Act" is defined as "Wrongful Acts which are the same, related or continuous, or wrongful acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action." See D&O Policy, at 4.

22.     The Policy does not contain a "Choice of Law" provision. See Kelly Aff. ¶ 16.

**D.      Plaintiffs' Tender of the Defense and Demand for Defense Costs**

23.     On February 6, 2004, the Insureds, through counsel, via letter tendered the defense of the D&O Action to the Defendants and demanded that they assume the defense of the D&O Action within the time and manner prescribed in the D&O Policy. See 2/6/04 Letter from Daniel J. Kelly ("Kelly Letter, 2/6/04"), at 1.

**E.      Response by National Union**

24.     On February 13, 2004, John Varley, a representative of the Defendants, left a voicemail for counsel for the Insureds. See Affidavit of Charles Dale, III in support of Plaintiffs' Motion for Summary Judgment ("Dale Aff."), ¶ 2. In his voicemail, he stated that the Defendants intended to deny coverage based on the "Prior Acts Exclusion" included in an endorsement to the Policy. Id.

25.     On February 18, 2004, John Varley reiterated the position that the Defendants intended to deny coverage based on the "Prior Acts Exclusion" in a conversation with the Insureds' counsel. See Dale Aff. ¶ 3.

26.     On February 24, 2004, counsel for the Insureds wrote to Mr. Varley notifying him that counsel would be entering an appearance on behalf of the Insureds in the D&O Action and requesting that the Defendants provide the Insured with a detailed explanation of their reasons for denying coverage under the Policy. See 2/24/04 Letter from Daniel J. Kelly ("Kelly Letter, 2/24/04"), at 1.

27.     The Defendants failed to respond to the Insureds request for a detailed explanation of their reasons for denying coverage before the Insureds commenced the instant action on April 2, 2004. See Kelly Aff. ¶ 12.

28.     Mr. Varley ultimately responded to the Insureds request in a letter dated April 5, 2004. See 4/5/04 Letter from John F. Varley, III ("Varley Letter, 4/5/04"), at 1-3. In the letter, Mr. Varley reiterated the position that the Defendants intended to deny coverage based on the "Prior Acts Exclusion," as set forth in "Endorsement 8" of the D&O Policy. Id. at 2. Mr. Varley also asserted, for the first time, that "Exclusions 4(a)" and "4(c)" may also preclude coverage under the D&O Policy. See id. at 2-3; Kelly Aff. ¶ 13.

29.     Endorsement #8, the "Prior Acts Exclusion," provides, in relevant part, as follows:

> In consideration of the premium being charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss arising from any Claim(s) alleging Wrongful Act(s) which occurred prior to the inception date of the Policy Period or after the end of the Policy Period. This policy only provides coverage for Loss arising from a Claim(s) for an alleged Wrongful Act(s) occurring on or after the inception date of the Policy period and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or Related Wrongful Act(s) shall be deemed to arise from the first such same or Related Wrongful Act.

See D&O Policy, at Endorsement #8.

30.     Exclusions 4(a) and (c) provide:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;
>
> …

    (c) arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law[.]

    The Wrongful Act of an insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).

See D&O Policy, at 6.

    31.    The Plaintiffs commenced the instant proceeding on April 2, 2004. See Kelly Aff. ¶ 2.

    Respectfully submitted,
    MELINDA BROWN AND TREFFLE LAFLECHE
    By their attorneys,

    /s/ Daniel J. Kelly
    Daniel J. Kelly, BBO # 553926
    dkelly@ghlaw.com
    B. Michael Ortwein, III BBO# 654836
    bortwein@ghlaw.com
    Gadsby Hannah LLP
    225 Franklin Street
    Boston, MA 02110
    (617) 345-7000

Dated: May 11, 2004

9

B0360701v1