UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>MELINDA BROWN and TREFFLE )<br>LAFLECHE, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>AMERICAN INTERNATIONAL GROUP, )<br>INC. and NATIONAL UNION FIRE )<br>INSURANCE COMPANY OF )<br>PITTSBURGH, PENNSYLVANIA, )<br> )<br>Defendants. )<br> )<br> ) | C. A. No. 04-10685 WGY |

**PLAINTIFFS' MEMORANDUM OF LAW**
**<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

<div style="text-align:right">

Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

</div>

Dated:  May 11, 2004

## Table of Contents

Page

I.      Summary Judgment Is Appropriate In This Action. ...............................................3

II.     Kentucky Law Governs This Action Because Kentucky Has The
        Most Significant Relationship To The Parties And D&O Action. ...................................4

III.    The Defendants Cannot Prove That Any Exclusion Applies To Bar
        Coverage. ............................................................................................5

        A.      The Prior Act Exclusion Does Not Apply As A Matter Of
                Law Because All Of The "Wrongful Acts" That The D&O
                Action Allege To Have Occurred During The Policy Period
                Are Separate, Distinct and Independent, And Do Not
                Directly Relate To Any Pre-Policy "Wrongful Acts." .............................5

        B.      The Defendants Cannot Establish That The "Personal
                Profit" Exclusion Applies .......................................................12

        C.      The Defendants Cannot Establish That The "Crime/Fraud"
                Exclusion Applies ...............................................................16

IV.     The Defendants Have A Duty To Defend Because The D&O
        Complaint Contains Allegations That Potentially, Possibly, Or Might
        Fall Within The Policy. .........................................................................18

i

# TABLE OF AUTHORITIES

*Cases*

Aetna Cas. & Sur. Co. v. Clasby,
  788 F. Supp. 61 (D. Mass. 1991) ............................................................ 4, 13, 14, 15

Alstrin v. St. Paul Mercury Ins. Co.,
  179 F. Supp. 2d 376 (D. Del. 2002) ...................................................................... passim

Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire and Cas. Co.,
  551 N.W.2d 224 (Minn. 1996) ..................................................................................... 7

Brown & LaCounte, LLP v. Westport Ins. Co.,
  307 F.3d 660 (7th Cir. 2002) ..................................................................................... 15

Brown v. Nat'l Union Ins. Co. of Pittsburgh, Pa.,
  Civ. No. 02-4724 (DWF/SRN), 2004 U.S. Dist. LEXIS 2224, (D. Minn. Feb. 11, 2004) ........ 7

Bushkin Assocs., Inc. v. Raytheon Co.,
  393 Mass. 622, 473 N.E.2d 662 (1985) ......................................................................... 4

Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.,
  60 Mass. App. Ct. 492, 803 N.E.2d 75 (2004) ............................................................... 4

Colker v. Ct. Fire Ins. Co.,
  7 S.W.2d 502 (Ky. 1928). ............................................................................................ 5

Dykes v. DePuy, Inc.,
  140 F.3d 31 (1st Cir. 1998) ......................................................................................... 4

Eureka Fed. Sav. and Loan Assoc v. Am. Cas. Co. of Reading, Pa.,
  873 F.2d 229 (9th Cir. 1989) ........................................................................... 7, 8, 10, 11

F.D.I.C. v. Mmahat,
  907 F.2d 546 (5th Cir. 1990) ................................................................................... 7, 10

Gateway Group Advantage, Inc. v. McCarthy,
  C.A. No. 02-10322-JGD, 2003 WL 23194597 (D. Mass. Dec. 4, 2003). ...................... 6, 7, 11

Gregory v. Home Ins. Co.,
  876 F.2d 602 (7th Cir. 1989) ................................................................................... 6, 12

Guar. Nat'l Ins. Co. v. Int'l Ins. Co.,
  994 F.2d 1280 (7th Cir. 1993) ................................................................................... 19

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.,
  439 Mass. 387, 788 N.E.2d 522 (2003) .......................................................................... 3

Imperial Cas. and Indem. Co. v. State of Conn.,
    714 A.2d 1230 (Conn. 1998) .......................................................................... 18

Ind. Ins. Co. v. Brown,
    No. 2003-CA-000113-MR, 2003 WL 23008788 (Ky. Ct. App. Dec. 24, 2003) ...................... 17

James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co.,
    814 S.W.2d 273 (Ky. 1991) ...................................................... 5, 9, 12, 18

Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.,
    82 S.W.3d 869 (Ky. 2002). ........................................................................... 5

Ky. Sch. Bds. Ins. Trust v. Bd. of Ed. of Woodward Cty, Ky.,
    2003 WL 22520018 (Ky. Ct. App. Nov. 7, 2003) ........................................... 9, 20

Little v. MGIC Indem. Corp.,
    649 F. Supp. 1460 (W.D. Pa. 1986) ............................................................... 5

Merchants Ins. Co. of N.H., Inc. v. USF & G,
    143 F.3d 5 (1st Cir. 1998) ............................................................................. 9

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Ill. Corp.,
    666 F. Supp. 1180 (N.D. Ill. 1987) ............................................................... 13

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc.,
    No. 03-20542, 2004 U.S. App. LEXIS 2694 (5th Cir. 2004) ................................. 19

Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Holmes & Graven,
    23 F. Supp. 2d 1057 (D. Minn. 1998). ....................................................... 6, 12

North Bank v. Cincinnati Ins. Cos.,
    125 F.3d 983 (6th Cir. 1997) ....................................................................... 18

Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,
    1998 WL 774109 (6th Cir. Oct. 13, 1998) .................................................... 16

Sigma Fin. Co. v. Am. Int'l Spec. Lines Ins. Co.,
    200 F. Supp. 2d 697 (E.D. Mich. 2001) ......................................................... 7

Simpsonville Wrecker Serv., Inc. v. Empire Fire and Marine Ins. Co.,
    793 S.W.2d 825 (Ky. Ct. App. 1990). ............................................................ 5

St. Paul Fire & Marine Ins., Co. v. Chong,
    78 F. Supp. 183 (D. Kan. 1992) ................................................................... 12

True v. Mable Raines,
    99 S.W.3d 4393 (Ky. 2003). ....................................................................... 12

Ursprung v. Safeco Ins. Co.,
    497 S.W.2d 726 (1973)................................................................................ 18

Vance v. The Cincinnati Ins. Co.,
    No. 98-CA1592-MR, 1986 Ky. App. LEXIS 1231 (Sept. 19, 1986) ...................................... 18

***Treatises***

Restatement (Second) of Conflict of Laws § 193 (1971). ............................................................ 4

## INTRODUCTION

Plaintiffs Melinda Brown and Treffle LaFleche (collectively "Insureds" or "Plaintiffs") have moved this Court, pursuant to FED. R. CIV. P. 56, to grant them summary judgment with respect to their Complaint seeking (1) a declaratory judgment that the "Prior Acts" exclusion endorsement contained in Computrex, Inc.'s ("Computrex") Officers and Directors Liability Insurance Policy does not bar coverage of the claims brought against them by Computrex's Chapter 7 Trustee; and (2) the entry of an order that the Defendants American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") must undertake the defense of and make available to the Insureds the proceeds of the Officers and Directors Liability Insurance Policy to pay for losses (including defense costs) incurred by them or to be incurred by them in connection with the action brought against them by the Chapter 7 Trustee.[1]

## UNDISPUTED MATERIAL FACTS[2]

Plaintiffs Melinda Brown and Treffle LaFleche are residents of Massachusetts and former directors of Computrex, Inc. ("Computrex"). See Affidavit of Melinda Brown in Support of Plaintiffs' Motion for Summary Judgment ("Brown Aff.") ¶¶ 1-2. Computrex was in the business of auditing freight bills and based in Louisville, Kentucky prior to its involuntary petition in bankruptcy. Id. ¶ 3. Defendant American International Group, Inc. ("AIG") is the

---

[1] The Plaintiffs' Complaint only seeks a declaratory judgment on the basis that the "Prior Acts" exclusion endorsement does not bar coverage. See Complaint filed in the United States District Court for the District of Massachusetts in connection with Brown v. Am. Int'l Group, Inc., et al., C.A. No. 04-10685 GAO ("Compl."), ¶ 1. This Motion, however, will discuss the applicability of the "Personal Profit" exclusion 4(a) and the "Crime/Fraud" exclusion 4(c). The only basis that the Defendants had given to the Plaintiffs for denying coverage under the Policy at the time the Complaint was filed was the Prior Acts exclusion. See Affidavit of Daniel J. Kelly in Support of Plaintiffs' Motion for Summary Judgment ("Kelly Aff.") ¶ 13. The Defendants did not raise the additional exclusions until their letter dated April 5, 2004, see 4/5/04 Letter from John F. Varley, III ("Varley Letter, 4/5/04"), at 2-3, which was after the Plaintiffs had filed the instant Complaint.
[2] The following factual recitation abbreviates and incorporates in its entirety the Undisputed Material Facts more fully set forth in the Local Rule 56.1 Statement of Material Facts submitted herewith.

1

parent company of a host of member insurance companies, including Defendant National Union

Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union").  See Affidavit of

Daniel J. Kelly in Support of Plaintiffs' Motion for Summary Judgment ("Kelly Aff.") ¶ 8.

The Defendants issued Computrex a Directors and Officers Corporate Liability Policy

No. 872-35-08 and Run-Off Endorsement (the "D&O Policy" or "Policy"), which insured certain

claims made against Computrex's officers and directors.  See Brown Aff. ¶ 4.  Coverage A of the

Policy, entitled "Individual Insured Insurance," requires the Defendants to "pay the Loss of each

and every Director, Officer or Employee of the Company arising from a Claim first made against

such Insureds during the Policy Period …."  See Directors and Officers Corporate Liability

Policy No. 872-35-08 and Run-Off Endorsement ("D&O Policy"), at 1, Cl. 1.  Coverage A

further provides the "[Defendants] shall, in accordance with and subject to Clause 8, advance

Defense Costs of such Claim prior to its final disposition."  Id.  Clause 8 of the D&O Policy

governs "Defense Costs, Settlements, Judgments (Including the Advancement of Defense

Costs)" and requires the Defendants to undertake the defense of a Claim if the Claim is properly

tendered by the Insureds.  Id. at 11, Cl. 8.  The D&O Policy alternatively provides that the

Defendants must advance defense costs prior to the final disposition of a claim.  Id. at 12, Cl. 8.

The Plaintiffs, as former directors, are direct beneficiaries of the D&O Policy and qualify as

Insureds.  See Brown Aff. ¶ 6.

On January 30, 2004, the Insureds were served with a 63-page adversary complaint (the

"D&O Complaint") filed by a trustee in bankruptcy (the "D&O Action").[3]  See Brown Aff. ¶ 7.

The Trustee alleges a multitude of claims against several of Computrex's former Directors and

Officers.  See generally Adversary Complaint filed in the United States Bankruptcy Court for the

---

[3] Computrex is currently the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the
Eastern District of Kentucky, Lexington, Case No. 01-53755 (the "Bankruptcy Proceeding").  See Kelly Aff. ¶ 10.

Eastern District of Kentucky, Lexington, <u>In re Computrex, Inc.</u>, Case No. 01-53755 ("D&O Compl."); Brown Aff. ¶ 8.  Only a portion of the allegations and causes of action in the D&O Action are specifically directed at the Plaintiffs.  <u>See</u> Brown Aff. ¶ 8.

On February 6, 2004, the Insureds, through counsel, via letter tendered the defense of the D&O Action to the Defendants and demanded that they assume the defense of the D&O Action within the time and manner prescribed in the D&O Policy.  <u>See</u> 2/6/04 Letter from Daniel J. Kelly ("Kelly Letter, 2/6/04"), at 1.  The Insureds did not receive any written justification from the Defendants outlining their reasons for denying coverage before they filed the Complaint in the instant proceedings on April 2, 2004.  <u>See</u> Kelly Aff. ¶ 2.  On April 5, 2004, the Defendants, via letter from John Varley, finally issued a written response to the Insureds tender of defense, stating that they intended to deny coverage based on the "Prior Acts" exclusion, and exclusions 4(a) and 4(c) as contained in the Policy.  <u>See</u> Varley Letter, 4/5/04, at 1-3.

<u>**ARGUMENT**</u>

**I.    SUMMARY JUDGMENT IS APPROPRIATE IN THIS ACTION.**

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> FED. R. CIV. P. 56(c).  Summary judgment is appropriate in the case at bar because there is no genuine dispute as to any material fact, and the sole issue before the Court is the interpretation of an insurance contract, which is a question of law.  <u>See</u> <u>Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.</u>, 439 Mass. 387, 393, 788 N.E.2d 522 (2003).

3

## II.  KENTUCKY LAW GOVERNS THIS ACTION BECAUSE KENTUCKY HAS THE MOST SIGNIFICANT RELATIONSHIP TO THE PARTIES AND D&O ACTION.

The D&O Policy in this case does not contain a "choice of law" clause, see Kelly Aff. ¶ 16, and, thus, this Court must first ascertain the governing law.  Jurisdiction in this case is based on diversity of citizenship, and a federal district court sitting in diversity applies the substantive law of the forum state, which includes the forum's choice of law tenets.  Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998).  Massachusetts has adopted a functional choice-of-law approach guided by the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ("RESTATEMENT).  Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631, 473 N.E.2d 662 (1985); see Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 496, 803 N.E.2d 75 (2004).  Section 193 of the RESTATEMENT governs conflict of law questions involving insurance contracts.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971).

Kentucky law applies in this case because Kentucky is the state where the parties understood the "principal location" of the "insured risk" would be located.  See id.  The "insured risk" was the "Loss of each … Director … for … alleged Wrongful Act[s]."  See D&O Policy, at 1, Coverage A; see also Aetna Cas. & Sur. Co. v. Clasby, 788 F. Supp. 61, 64 (D. Mass. 1991) (holding the insured risk of a fiduciary responsibility policy were claims made against the Insured for wrongful acts committed by the insured).  This risk was "principally located" in Kentucky because Computrex has always been located and operated in Kentucky, see Brown Aff. ¶ 3, and the Policy expressly insures against alleged Wrongful Acts committed by Insureds while acting in their respective corporate capacities, see D&O Policy, at 1, Coverage A.  See RESTATEMENT § 193 cmt. b.

4

### III.    THE DEFENDANTS CANNOT PROVE THAT ANY EXCLUSION APPLIES TO BAR COVERAGE.

The Defendants have refused to tender a defense based on the following three exclusions: (1) the "Prior Acts" exclusion contained in Endorsement #8; (2) the "Personal Profit" exclusion contained in Clause 4(a); and (3) the "Crime/Fraud" exclusion contained in Clause 4(c).  See Varley Letter, 4/5/04, at 1-3.  When resolving coverage issues, courts operate from the well-established, baseline premise that insurance companies must defend insureds if the underlying complaint contains *any* allegation that "*potentially*, *possibly*, or *might*" fall within the Policy. James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991) (emphasis added); see also Little v. MGIC Indem. Corp., 649 F. Supp. 1460, 1466-67 (W.D. Pa. 1986) ("An insurer is not excused from its duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible.").[4]

Courts construe coverage exclusions strictly against the insurer "[b]ecause coverage exclusions are contrary to the fundamental protective purpose of insurance[.]"  Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 873-74 (Ky. 2002).  Ultimately, the insurer has the burden of proving the applicability of a policy exclusion.  See Colker v. Ct. Fire Ins. Co., 7 S.W.2d 502, 504 (Ky. 1928).  As more fully set forth herein, the Defendants cannot meet their burden.

### A.    The Prior Act exclusion does not apply as a matter of law because all of the "Wrongful Acts" that the D&O Action allege to have occurred during the Policy Period are separate, distinct and independent, and do not directly relate to any pre-Policy "Wrongful Acts."

The Prior Acts exclusion at issue provides, in part, that the Defendants are only liable:

---

[4] Kentucky courts often look to Pennsylvania case law for guidance in deciding insurance cases.  See, e.g., Simpsonville Wrecker Serv., Inc. v. Empire Fire and Marine Ins. Co., 793 S.W.2d 825, 827 (Ky. Ct. App. 1990).

> [F]or Loss arising from a Claim(s) for an alleged Wrongful Act(s)
> occurring on or after the inception date of the Policy period and prior to
> the end of the Policy Period and otherwise covered by this policy.
> *Loss(es) arising out of the same or Related Wrongful Act(s) shall be*
> *deemed to arise from the first such same or Related Wrongful Act.*

See D&O Policy at Endorsement #8 (emphasis added).  The Defendants' ability to invoke this

exclusion predominately turns on the meaning of "related" and/or "Related Wrongful Act(s)" as

contained in the exclusion's last sentence.

The Policy defines "Related Wrongful Acts," in part, as "Wrongful Acts which are the

same, related or continuous[.]"  See D&O Policy, at 4, Cl. 2(p).  The Supreme Court of

Kentucky has not had occasion to construe the meaning of "related," or "Related Wrongful Acts"

as employed by an insurer in a prior acts exclusion.  Courts from other jurisdictions have

construed the substantive meaning of "related" as used in other insurance-policy clauses with

divergent results.  E.g., Gregory v. Home Ins. Co., 876 F.2d 602, 606 (7th Cir. 1989)

(interpreting whether claims were "related" in an attorney liability policy).  Some courts have

construed the terms "related" and/or "Related Wrongful Acts" broadly to include even

relationships with a mere logical connection.  E.g., Gregory, 876 F.2d at 606; Gateway Group

Advantage, Inc. v. McCarthy, C.A. No. 02-10322-JGD, 2003 WL 23194597, at *3-4 (D. Mass.

Dec. 4, 2003).[5]  Other courts reject mere logical relationships and require a direct—or causal—

connection.  E.g., Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Holmes & Graven, 23 F. Supp. 2d

1057, 1069-70 (D. Minn. 1998).

---

[5] The Gateway decision is one of the only reported cases interpreting "Related Wrongful Acts" as contained in a
prior acts exclusion such as the one in the instant case.  In Gateway, Magistrate Judge Dein construed, under
Massachusetts law, a prior acts exclusion virtually identical to the one at issue in the case at bar.  Id.  Magistrate
Judge Dein interpreted "related wrongful act" according to its plain and ordinary meaning and held that the phrase
includes both a "logical or causal" connection.  Id. at *8-9.  This Court is not bound by the Gateway court's decision
because Kentucky law controls this case and Kentucky has not adopted the Gateway court's decision.

Even courts, like <u>Gregory</u>, that employ a broad definition have admonished, however, that the term "related" cannot "encompass every conceivable logical relationship" because such claims or conduct might be "so attenuated or unusual that an objectively reasonable insured could not have expected that they would be treated" as related under the policy.  <u>Brown v. Nat'l Union Ins. Co. of Pittsburgh, Pa.</u>, Civ. No. 02-4724 (DWF/SRN), 2004 U.S. Dist. LEXIS 2224, (D. Minn. Feb. 11, 2004).  Key factors courts ultimately consider when assessing the relationship between certain conduct are whether the acts are connected by "time, place, opportunity, pattern, and most importantly, method or modus operandi." <u>Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire and Cas. Co.</u>, 551 N.W.2d 224, 231 (Minn. 1996); <u>see also, e.g.</u>, <u>Sigma Fin. Co. v. Am. Int'l Spec. Lines Ins. Co.</u>, 200 F. Supp. 2d 697 (E.D. Mich. 2001) (holding sale of company products were separate where each sale involved different sales representatives and different purchasers); <u>F.D.I.C. v. Mmahat</u>, 907 F.2d 546, 553 (5th Cir. 1990) (holding attorney's conduct was separate where the loss resulted from three discrete acts of malpractice that resulted in discrete losses on several loans); <u>Eureka Fed. Sav. and Loan Assoc v. Am. Cas. Co. of Reading, Pa.</u>, 873 F.2d 229, 234-35 (9th Cir. 1989) (holding the mere existence of a single "aggressive" loan policy did not "transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss").[6]

In <u>Eureka</u>, the Eureka Federal Savings & Loan Association ("Eureka") sued five former corporate officers for breach of fiduciary duty, negligence, mismanagement, and waste in connection with losses incurred in over two hundred loan transactions.  <u>Eureka</u>, 873 F.2d at 230. The officers sought a declaratory judgment against American Casualty Company ("American")

---

[6] Though these cases predominately concern the interpretation of "relate(d)" with respect to whether claims should be aggregated under "claims-made" policies, courts nonetheless find them instructive circumstances like the case at bar for their discussion on the substantive meaning of these terms as contained generally in policies of insurance. <u>See</u> <u>Gateway</u>, 2003 WL 23194597, at *8-9 (relying on cases that interpreted "relate" as used in claims-made policies when interpreting "related wrongful acts" phrase contained in "Prior Acts" exclusion).

seeking to establish the liability limits under a director and officer liability insurance policy ("Policy").  Id  The Policy had a $20 million limit for each claim and a $20 million aggregate limit for each officer per policy year.  Id at 231.  The insurer argued that the single loss limit ought to apply because the losses resulted from an "aggressive lending strategy" pursuant to a single, comprehensive management plan that Eureka specifically and expressly adopted to reverse operating losses.  Id at 234.  The complaint asserted that the officers made all the allegedly improper loans pursuant to this single strategy, which the officers conceded was part of a common business plan.[7]  Id

The Eureka court held that the "mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with the issuance of loans to over 200 unrelated borrowers into a single loss."  Eureka, 873 F.2d at 234-35.  The court reasoned that numerous "intervening business decisions" took place after the initial decision to implement the aggressive loan policy, each requiring independent business judgment.  Id. at 235.  In the court's judgment, these intervening acts were separate—or distinct—from the common business plan, and, therefore, not "based on or arising out of the same act, interrelated acts, or one or more series of similar acts" for purposes of determining loss.  See id.

In addition to "Wrongful Acts" that are the "same, related, or continuous," the D&O Policy in this case further defines "Related Wrongful Acts" to include "Wrongful Acts which *arise from* a common nucleus of facts."  See D&O Policy, at 4, Cl. 2(p) (emphasis added).  Kentucky courts interpret the phrase "arise from" or "arising out of" narrowly—akin to "directly

---

[7] The predicate acts that served as the basis for the breach of fiduciary duty claims included: "funding loans without approval, failing to complete proper loan documents, failing to perfect security interests or obtain adequate collateral, funding loans in excess of approval limits to one borrower, selling participation interests with recourse to Eureka, and funding speculative loans without adequate sources of repayment or adequate risk analysis."  Id.

results from"—and reject a broad construction that includes "but for" causation.  See Ky. Sch. Bds. Ins. Trust v. Bd. of Ed. of Woodward Cty, Ky., 2003 WL 22520018, *1 (Ky. Ct. App. Nov. 7, 2003) (holding negligent hiring claim did not "arise out of" mental or emotional injury because the two allegations were not "directly related"); cf. Merchants Ins. Co. of N.H., Inc. v. USF & G, 143 F.3d 5, 9 (1st Cir. 1998) ("[U]nder Massachusetts law the phrase 'arising out of' denotes a level of causation that lies between proximate and actual causation[.]").

Here, the D&O Complaint contains allegations of conduct that occurred in 2001, during the Policy Period, which are covered under the Policy.[8]  These allegations include:

(1)  allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, continued operating Computrex's business during insolvency based on a Ponzi scheme; see D&O Compl. ¶¶ 121, 130, 160, & 176.

(2)  allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc., which is alleged to have officially occurred on March 10, 2001; Id. ¶¶ 87, 121, 130, 151, & 176.

(3)  allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly received dividends in the form of both cash and stock in connection with the "spin-off."  Id. ¶¶ 121, 130, 176, & 198.  The issuance of these dividends is alleged to have occurred on March 10, 2001; Id. ¶ 87.

(4)  allegations that the Plaintiffs, in their capacity as members of the Board of Directors, allowed Computrex's counsel to represent both Computrex and parties having interests adverse to Computrex; Id. ¶¶ 81, 121, & 176.

(5)  allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly approved bonuses to Computrex executives.  Id. ¶¶ 121, 130, & 176.  The approval of bonuses is alleged to have occurred in July 2001 and August 2001, id. ¶ 104; and

---

[8] The Trustee asserts a multitude of vague allegations against several of Computrex's former directors, only a portion of which are specifically directed at the Plaintiffs, see Brown Aff. ¶ 8, and many of which do not contain express references to when the conduct occurred, see D&O Compl. ¶¶ 74-75 (alleging the directors and officers began to solicit funds through the mail without stating when this practice began).  This lack of clarity severely undermines the Defendants' argument in favor of denying the Plaintiffs' tender of defense because the ambiguity makes it more likely the claims "possibly, potentially, or might" come within the Policy.  See James Graham Brown Found., 814 S.W.2d at 279.

(6) allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly received fees for their service on the Board of Directors while Computrex experienced financial difficulties.  Id. ¶ 113, 125.

The "Prior Acts" exclusion does not apply because none of these allegations "relate" either causally or logically to "Wrongful Acts" that occurred prior to the Policy Period's inception date.  First, the D&O Complaint does not clearly indicate when Computrex's directors and officers began the alleged Ponzi scheme.  The complaint merely alleges that the directors and officers began to solicit funds through the mail from clients to "delay [Computrex's] financial collapse" and that this enabled the corporation to continue during insolvency.  See D&O Compl. ¶¶ 74-75, ¶ 121.  Even if the alleged Ponzi scheme commenced before the Policy's inception date, however, any pre-Policy Period conduct was unrelated because each solicitation was a separate and distinct act that resulted in separate and distinct losses to different Computrex customers.  See Mmahat, 907 F.2d 553 (finding three acts of legal malpractice regarding legal advice all devised pursuant to a common plan "resulted in discrete losses on seven loans" and thus were unrelated); Eureka, 873 F.2d at 234-35 ("[T]he mere existence of an aggressive loan policy is insufficient … to transform disparate acts and omissions made by five directors in connection with the issuance of loans to over 200 unrelated borrowers into a single loss.").

Second, the complaint alleges that Computrex's decision to "spin-off" Computrex International, Inc. and CX-IT, Inc. officially occurred on March 10, 2001, which is during the Policy Period.  See D&O Compl. ¶ 87.  The Defendants will likely contend that this decision falls within the "Prior Acts" exclusion because it "relates" to the memorandum entitled "Project Merlin," which Computrex's attorney allegedly sent to the Plaintiffs prior to the Policy Period, on December 14, 2000, and that outlined the details of the "spin-off."  See D&O Compl. ¶ 76. The receipt of the memorandum, however, is unrelated to the Board's official vote to form the "spin-offs" on March 10, 2001 because numerous "intervening business decisions" took place

10

after the Plaintiffs received the memorandum that required independent business judgment.  <u>See</u> <u>Eureka</u>, 873 F.2d at 235.  Moreover, and perhaps more detrimental to the Defendants' argument, even if the acts were "related," the Defendants must first prove, which they cannot, that the mere receipt of the memorandum by the Plaintiffs was itself "Wrongful" under the Policy.[9]  <u>See</u> D&O Policy, at 4, Cl. 2(p) ("'Related Wrongful Acts' shall mean *Wrongful Acts*….");  <u>Gateway</u>, 2003 WL 23194597, at *5-6 (analyzing whether the conduct was "Wrongful" before analyzing whether the conduct was "Related").[10]

Third, the complaint alleges the directors improperly awarded bonuses to Computrex executives in July and August 2001, which is during the Policy Period.  <u>See</u> D&O Compl. ¶ 104. The Defendants will likely argue that these bonus awards are "related" to bonuses that the directors allegedly awarded in July 1999, <u>see id.</u> ¶ 28, and December 2000, <u>see id.</u> ¶ 65, before the Policy Period's inception date.  Each decision by the Board to award bonuses is severable and unrelated, however, because each award required separate Board action, which constituted an "intervening business decision."  <u>See</u> <u>Eureka</u>, 873 F.2d at 235.  The severability of each subsequent decision to award bonuses is further bolstered by the fact that the membership of Computrex's Board of Directors had changed between 2000 and 2001.  <u>See</u> D&O Compl. ¶ 89 (noting that Computrex's Board consisted of only two members after the "spin-off").

---

[9] Under the Policy, a "Wrongful Act" requires a "breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds …."  <u>See</u> D&O Policy, at 6, Cl. 2(t).  The mere receipt of a memorandum, without more, should not fall within definition.

[10] The D&O Complaint also alleges two additional acts in connection to the "spin off."  The complaint, for example, alleges that the Plaintiffs improperly received dividends in connection with the "spin-off."  <u>See</u> D&O Compl. ¶ 87. The complaint also alleges that the Plaintiffs improperly allowed Computrex's counsel to represent Computrex and parties with adverse interests simultaneously.  <u>Id.</u> ¶ 121.  This conflict of interest issue specifically concerned the attorney's representation of both Computrex and the "spin-off" corporations.  <u>Id.</u> ¶¶ 80, 103.  Both of these alleged "Wrongful Acts" occurred during the Policy Period because they did not officially take place until the Board voted to effectuate the "spin off" on March 10, 2001.  <u>Id.</u> ¶ 87.  Moreover, they are unrelated to any pre-Policy "Wrongful Acts" under the "intervening business decisions" rationale enunciated in <u>Eureka</u>, <u>supra</u>.

Finally, the complaint alleges that the Plaintiffs were improperly compensated for their service on Computrex's Board of Directors while the company experienced "severe financial difficulties[.]"  <u>See</u> D&O Compl. ¶ 113.  The complaint, however, does not indicate the specific date when this compensation was awarded.  <u>Id.</u>  Because the complaint does not indicate the specific date when this compensation occurred, and it alleges that Computrex's financial difficulties existed during the Policy Period in 2001, <u>see, e.g.</u>, <u>id.</u> ¶ 91 (noting Computrex's balance sheet showed a "negative equity" in March of 2001), this allegation potentially falls within the Policy and the Defendants are obligated to defend and/or advance defense costs to the Plaintiffs.  <u>See</u> <u>James Graham Brown Found.</u>, 814 S.W.2d at 279.[11]

## B.  <u>The Defendants Cannot Establish that the "Personal Profit" Exclusion Applies</u>

The "Personal Profit" exclusion at issue provides that the Defendants are not obligated to pay "for Loss in connection with a Claim made against an Insured … arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled …."  <u>See</u> D&O Policy, at 6, Cl. 4(a).  To properly invoke this exclusion, the Defendants must prove that the D&O Complaint alleges facts sufficient to establish that each Plaintiff received a profit, gain or advantage that was wrongful or illegal.  <u>See</u> <u>Alstrin v. St. Paul Mercury Ins. Co.</u>, 179 F. Supp. 2d 376, 398-400 (D. Del. 2002).  The exception does not apply in situations where the underlying complaint only alleges that the insureds engaged in improper

---

[11] The Plaintiffs also encourage this Court to find the terms "relate(d)" and/or "Wrongful Related Act(s)" to be ambiguous as a matter of law and, therefore, construe the terms strictly against the Defendants and in accordance with the Plaintiffs' reasonable expectations of coverage.  <u>See</u> <u>True v. Mable Raines</u>, 99 S.W.3d 439, 443 (Ky. 2003). ("Under the reasonable expectations doctrine, when [] an ambiguity exists, the ambiguous terms should be interpreted in favor of the insureds reasonable expectations.") (internal quotations omitted).  The term "related" is ambiguous because it has no generally accepted legal definition and the phrase "Related Wrongful Acts" is, therefore, susceptible to two or more reasonable interpretations.  <u>See</u> <u>id.</u>; <u>St. Paul Fire & Marine Ins., Co. v. Chong</u>, 78 F. Supp. 183, 187 & n.3 (D. Kan. 1992) (holding "related" ambiguous because a "review of [the definitions contained in BLACK'S LAW DICTIONARY] indicate[d] that the term covers an incredibly broad, and certainly subjective, range of connections").  Moreover, the term's ambiguity is further evidenced by the general lack of agreement among the courts that have interpreted the term in similar policy language.  E.g., <u>Gregory</u>, 876 F.2d at 606; <u>Holmes & Graven</u>, 23 F. Supp. 2d at 1069-70

conduct and a wrongful or illegal gain resulted as an incidental by-product of the alleged

misconduct.  Id. at 400;[12] cf. Aetna Cas. & Sur. Co. v. Clasby, 788 F. Supp. 61, 64-65 (D. Mass.

1991 (holding D&O plaintiff received a personal profit to which he was not legally entitled

where the underlying complaint alleged that he benefited by receiving undisclosed commissions

that constituted per se violation of ERISA).

In Alstrin, a trustee in bankruptcy initiated adversary proceedings against a holding

company asserting claims against certain directors for, inter alia, fraudulent transfer and breach

of fiduciary duty.  Alstrin, 179 F. Supp. 2d at 380.  At the same time, a shareholder class action

suit was brought against the directors asserting violations of federal securities law.  Id at 378-79.

The cases were consolidated and the directors ("D&O plaintiffs") sought declaratory relief for

D&O coverage after their insurer denied coverage pursuant to the "Personal Profit" exclusion.

Id at 398-99.  The insurers argued that the exception applied to the claims against the directors

for securities law violations and breach of fiduciary duty because the D&O plaintiffs benefited

by issuing false and misleading statements in connection with the acquisition of a "split-off"

corporation and that profit was illegal because it was premised on fraud.[13]  Id at 399.

The court examined the underlying complaints to determine whether they contained any

allegations that the plaintiffs obtained an illegal profit or advantage and held that the exclusion

did not apply because the success of the securities claim violation and breach of fiduciary duty

turned on allegations of misconduct (e.g., misrepresentation), and any financial benefit inuring to

[12] See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Ill. Corp., 666 F. Supp. 1180, 1199-1200 (N.D. Ill. 1987) (holding exception inapplicable to claims against D&O plaintiffs for securities fraud based upon the improper receipt of bonus incentives because the allegations focused on the plaintiffs' conduct and did not sufficiently allege wrongful personal profiteering).

[13] With respect to the securities claim, the complaint specifically alleged that the plaintiffs' false statements inflated the value of their stock and personal holdings, and increased their compensation.  Alstrin, 179 F. Supp. 2d at 399. The breach of fiduciary duty claim specifically alleged that the plaintiffs looted the company and managed the company for their own benefit by forming a "split off" corporation.  Id. at 400.

the plaintiffs was only incidental to the improper conduct and not essential to the viability of either claim.[14] Id. at 399-400 ("[The exclusion], by its terms, requires a profit or gain that is illegal; not an illegal act that produces a profit or gain to the insured as a by-product."). The court ultimately concluded that the exclusion only applies "[i]f an element of the cause of action that must be proved [in the underlying cause of action] requires that the insured gained a profit or advantage to which he was not legally entitled[.]" Id. at 400.

In Aetna, the court interpreted the exclusion as contained in a pension and welfare fiduciary responsibility insurance policy. Aetna, 788 F. Supp. at 62-63. The underlying actions alleged that Clasby, as trustee of an employee benefit plan ("Plan"), breached the fiduciary duties he owed to his employer by investing the Plan's funds in investment vehicles issued by agencies with which he and his family were financially involved. Id. 64-65. The complaint further alleged that these improper transactions constituted per se violations of ERISA and that Clasby personally benefited in the form of undisclosed commissions and compensation. Id. at 64.

The Aetna court held that the exclusion applied to the claim because, unlike in Alstrin, the complaint alleged that Clasby's personal benefit was directly linked to an alleged statutory violation (e.g., the ERISA violation), and the statutory violation was the *sole* basis for the fiduciary duty claim. See id at 63, 65 (noting that the fiduciary duty claim was premised on ERISA violations). Thus, unlike in Alstrin, the elements of the statutory violation, as the only alleged predicate acts or legal basis for the offense, essentially transformed into an element of the fiduciary duty claim, and the alleged improper conduct axiomatically constituted wrongful personal profit because the plaintiff benefited and the conduct violated ERISA. See id. Clasby's

---

[14] The D&O plaintiffs conceded that the allegations supporting the fraudulent transfer claims fell within the exclusion. Alstrin, 179 F. Supp. 2d at 399, n.8. The Plaintiffs, in this case, make no such concession.

personal profit was thus indistinguishable from the breach of the fiduciary duty and not an incidental by product of the alleged misconduct.  See id.

In the case at bar, the causes of action contained in the D&O Action specifically concerning the Plaintiffs include: (1) Breach of Fiduciary Duty to the Corporation; (2) Breach of Fiduciary Duty to Creditors; (3) Fraudulent Conveyance; (4) Racketeer Influenced and Corrupt Organizations; (5) Negligence of the Board of Directors; (6) Return of Shareholder Dividends; and (7) Common Law Fraud.  See D&O Compl. ¶¶ 118-133; 146-179; 194-204.  The allegations of wrongful conduct that serve as the basis for these claims, which are even remotely subject to the "Personal Profit" exclusion, include: (1) allegations relating to the "spin-off;" id. ¶ 121, 130, 151, & 176, (2) allegations that the Plaintiffs improperly received dividends in connection with the "spin-off;" id. ¶¶ 121, 130, 176, & 198, and (3) allegations that the Plaintiffs improperly received fees for their services as directors, id. ¶¶ 113, 125.  The Defendants cannot establish that these, or any other, allegations and causes of action fall within the purview of the "Personal Profit" exclusion.

The aforementioned allegations focus predominately on the Plaintiffs' allegedly misleading or improper conduct rather than on illegal or wrongful profiteering.  E.g., D&O Compl. ¶ 74 ("[T]he defendants solicited money from [Computrex's] clients ….") (emphasis added).  The complaint in the D&O Action, for example, does not allege that the dividend distribution in connection with the "spin-off" or the compensation the Plaintiffs received for their service as Computrex directors violated a statute or other law.  See Aetna, 788 F. Supp. at 63-64 (holding exclusion applicable because the complaint alleged the personal gain violated ERISA); see also Brown & LaCounte, LLP v. Westport Ins. Co., 307 F.3d 660, 664 (7th Cir. 2002) (holding the Insured received an illegal profit because the complaint alleged the Insured billed

his clients and received payment for legal services without a federally-mandated attorney contract).  Instead, the complaint challenges the propriety of the Plaintiffs' conduct and motives in creating the "spin-off."  See, e.g., Alstrin, 179 F. Supp. 2d at 399-400 (considering a complaint that alleged the Insureds looted the company for their own benefit by creating a "spin-off").

The case law provides that the consequence of this rather subtle distinction is that any personal gain the Plaintiffs may have received was only incidental to the allegedly wrongful act. See id. at 400 ("[T]he breach of fiduciary duty clam alleges that [the Insureds] breached their duty of loyalty to the company in the manner in which they ran the company and in various actions concerning the split-off transaction.  The alleged 'illegal' conduct is the breach of this duty; not the incidental gains therefrom.").  An examination of the particular causes of action asserted against the Plaintiffs provides further evidence of the exclusion's inapplicability because proof of an illegal or wrongful personal gain is not an element for any of the causes of action. See Alstrin, 179 F. Supp. 2d at 400 (holding that courts should focus on whether proof of illegal or wrongful gain is an element of the claim).

**C.  The Defendants Cannot Establish that the "Crime/Fraud" Exclusion Applies**

The coverage clause in the Policy covers all "Loss … arising from a Claim … for … [the Plaintiffs'] Wrongful Act(s) …."  See D&O Policy, at 1, Cl. 1.  The Policy defines "Wrongful Act" as "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by [the Plaintiffs] in their respective capacities …."  See id. at 6, Cl. 2(t).  By its own terms, therefore, the Policy expressly provides a broad grant of coverage, which includes coverage for claims based on fraudulent and/or dishonest conduct.  See, e.g., Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 1998 WL 774109, *2 (6th Cir. Oct. 13, 1998) (holding "Wrongful Act," included claims against D&O plaintiffs premised on fraud, misrepresentation,

16

and violations of securities law) (unpublished opinion). The present issue, therefore, is whether the "Crime/Fraud" exception can properly be construed to exclude coverage for the particular allegations and claims asserted against the Plaintiffs in the D&O Action. For the reasons stated herein, the exclusion does not apply in this case.

The "Crime/Fraud" exclusion provides, in pertinent part, that the "Insurer shall not be liable to make any payment for Loss … arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law[.]" See D&O Policy, at 6, Cl. 4(c). The only causes of action contained in the D&O Action that could arguably fall within this exclusion are: (1) Breach of Fiduciary Duty to the Corporation; (2) Breach of Fiduciary Duty to Creditors; (3) Fraudulent Conveyance; (4) the RICO claim; (5) Negligence; and (6) Common Law Fraud.[15] See D&O Compl. ¶¶ 118-133; 146-179; 200-204. These claims are of the type generally raised against directors and officers when they are sued in their corporate capacity in shareholder derivative actions or adversary proceedings. In addition, most claims for breach of fiduciary duty are supported, at least in part, by allegations of fraudulent or dishonest conduct. Clearly, the same holds true for causes of action for civil RICO violations, fraudulent conveyances, and/or common law fraud.

As a result, applying the "Crime/Fraud" exclusion to these claims would completely eviscerate the coverage expressly granted under Coverage A and would contravene the Plaintiffs reasonable coverage expectations as beneficiaries under the Policy. See Ind. Ins. Co. v. Brown, No. 2003-CA-000113-MR, 2003 WL 23008788 (Ky. Ct. App. Dec. 24, 2003) ("Under the

---

[15] The D&O Action also contains a claim for "Return of Shareholder Dividends." See D&O Compl. ¶¶ 194-99. The complaint alleges that Computrex made dividend distributions to the Plaintiffs when the corporation was insolvent in violation of a Kentucky statute. See id. ¶¶ 112, 194-99. The Defendants cannot reasonably argue that this cause of action falls within the "Crime/Fraud" exclusion. The claim seeks reimbursement of the dividends and focuses on the *corporation's* conduct rather than alleging the *Plaintiffs'* conduct, e.g., the receipt of the dividends, was itself dishonest or fraudulent, or that the Plaintiffs otherwise knew that the distribution was improper. See id. In fact, the Plaintiffs' knowledge and/or conduct is irrelevant for purposes of reimbursement of the dividends under the statute. E.g., KY. REV. STAT. 271B.6-400(3) (West 2001).

'doctrine of reasonable expectations,' an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy.").  Applying this exclusion would be particularly harsh and irrational in this case because these types of claims are among the most common filed against directors.  Cf. Alstrin, 179 F. Supp. 2d at 397 (holding that if the crime/fraud exception applied to securities claims, the policy would be rendered meaningless because securities fraud claims are among the most common claims filed against directors).  It is therefore unlikely that Computrex intended to purchase insurance that excludes such claims.  See Imperial Cas. and Indem. Co. v. State of Conn., 714 A.2d 1230, 1237 (Conn. 1998) (noting that application of an intentional-conduct exclusion would not comport with the insureds reasonable expectations of coverage); see also North Bank v. Cincinnati Ins. Cos., 125 F.3d 983, 987-88 (6th Cir. 1997) (noting that an insurance company should not be able to sell a policy purporting to cover intentional discrimination claims and then refuse to cover ordinary discrimination cases).

IV.    **THE DEFENDANTS HAVE A DUTY TO DEFEND BECAUSE THE D&O COMPLAINT CONTAINS ALLEGATIONS THAT POTENTIALLY, POSSIBLY, OR MIGHT FALL WITHIN THE POLICY.**

The Plaintiffs in this action have requested the Court to enter an order that the Defendants must defend the Plaintiffs in the D&O Action under the terms of the D&O Policy.  Insurance policies typically involve two mutually exclusive duties: (1) to defend and (2) to pay.  See Ursprung v. Safeco Ins. Co., 497 S.W.2d 726 (1973).  The former duty is much broader than the latter and requires the insured to meet a considerably less burdensome threshold when seeking enforcement.  See Vance v. The Cincinnati Ins. Co., No. 98-CA1592-MR, 1986 Ky. App. LEXIS 1231, *6 (Sept. 19, 1986).  As noted supra, the duty is so broad that the insurer must defend if there is any allegation in the underlying complaint that "potentially, possibly or might come within the coverage of the policy."  James Graham Brown Found., Inc., 814 S.W.2d at 279.

18

In this case, a review of the D&O Complaint shows that it contains at least "an" allegation of misconduct that "might" come within the Policy.  The D&O Complaint, for example, alleges that, as directors, the Plaintiffs improperly permitted Computrex's counsel to simultaneously represent the corporation and the companies that were formed during the "spin off."  See D&O Compl. ¶ 81.  This conduct is one allegation of alleged malfeasance among several offered by the Trustee to support the claims against the Plaintiffs for Breach of Fiduciary Duties and Negligence.  See id. ¶¶ 121, 176.  This alleged conduct is potentially or possibly covered under the Policy because it could qualify as a "Wrongful Act," see D&O Policy, at 6, Cl. 2(t), the D&O Complaint does not state exactly when the attorney was hired, see D&O Compl. ¶ 78, and the "spin offs" were not officially created until March 2001, which is during the Policy Period, see id.¶ 87.  Finally, as explained more fully in supra note 10, this conduct does not fall within an exclusion from coverage.

In addition, the Defendants' duty to defend is not affected even if this Court finds that the D&O Complaint contains some allegations of excluded conduct.  An insurer must defend when the underlying complaint alleges loss that is caused by both covered and excluded conduct if either allegation of misconduct may independently cause the loss or support liability for a particular cause of action.  See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc., No. 03-20542, 2004 U.S. App. LEXIS 2694, *11 (5th Cir. 2004).  ("[I]f a loss is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable.") (internal quotations omitted).

Here, the D&O Complaint contains allegations of covered conduct that purport to state a cognizable legal claim independent of any conduct that might be subject to an exclusion.  See, e.g., Guar. Nat'l Ins. Co. v. Int'l Ins. Co., 994 F.2d 1280, 1284 (7th Cir. 1993) (holding prior acts

exclusion inapplicable because a viable claim for tortious interference with business relations existed even if the allegations of excluded conduct were eliminated from the complaint); Ky. Sch. Bd. Ins. Trust v. Bd. of Ed. of Woodward Cty., Ky., 2003 WL 22520018, at *11 (Ky. Ct. App. Nov. 7, 2003) (holding insurer had a duty to defend state board of education for negligence claims because the complaint alleged sufficient negligent conduct as support for the claim that was independent of the allegations that were subject to an exclusion).  The allegations relating to the Plaintiffs' acquiescence in allowing Computrex's counsel to simultaneously represent both the corporation and the "spin offs," just noted, serve as one example of alleged improper conduct, not subject to an exclusion, which may independently support claims against the Plaintiffs for Breach of Fiduciary Duty and Negligence even if those claims are also supported by conduct subject to an exclusion.

## **CONCLUSION**

The Defendants have a duty to defend the Plaintiffs in the D&O Action because the D&O Complaint contains allegations that, at an absolute minimum, "potentially, possibly, or might" be covered under the Policy.  Moreover, the Defendants cannot meet their burden of proving the applicability of any of the three exclusions that they have raised to deny undertaking a defense of the Plaintiffs' claims.  Accordingly, this Court should grant Plaintiffs' Motion for Summary Judgment, enter a declaratory judgment that the aforementioned exclusions do not apply, and order that the Defendants undertake the defense of and/or make available to the Plaintiffs the proceeds of the Policy to pay for losses (including defense costs) incurred by them or to be incurred by them in connection with the action brought against them by the Trustee.

<div style="margin-left: 45%;">

Respectfully submitted,
MELINDA BROWN AND TREFFLE LAFLECHE
By their attorneys,

/s/  Daniel J. Kelly
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

</div>

Dated:  May 11, 2004

B0360801v