UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE,<br><br>        Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,<br><br>        Defendants. | C. A. No. 04-10685 GAO |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT 2 PART 2 OF 2**

Company or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance. This policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to submit to the ADR process chosen by the Insured. Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

There shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete,

then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. (The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission rules or regulations promulgated pursuant to Section 16 of the Securities Exchange Act of 1934).

## 20. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 21. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

<u>**ENDORSEMENT# *1***</u>

This endorsement, effective *12:01 a.m.*   *January 1, 2001*   forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**OUTSIDE ENTITY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the following entities shall be deemed an "Outside Entity" with respect to its corresponding Continuity Date below:

| <u>OUTSIDE ENTITY</u> | <u>CONTINUITY DATE</u> |
|---|---|
| 1) a not-for-profit organization under section 501 (c)(3) of the Internal Revenue Code of 1986 (as amended). | *December 31, 1998* |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

ENDORSEMENT# 2

This endorsement, effective *12:01 a.m.   January 1, 2001*       forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**KENTUCKY
AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that the cancellation paragraph of this policy is deleted in its entirety and is replaced by the following:

**CANCELLATION/NONRENEWAL**

CANCELLATION – This policy may be cancelled by the Insured by surrender of this policy to the Insurer or by giving written notice to the Insurer stating when thereafter such cancellation shall be effective.

A notice of cancellation of insurance by the Insurer shall be in writing, shall be delivered to the first named Insured or mailed to the first named Insured at the last known address of the first named Insured, shall state the effective date of the cancellation, and shall be accompanied by a written explanation of the specific reason or reasons for the cancellation.

If the cancellation occurs within sixty (60) days of the date of the issuance of the policy or if the reason for cancellation is nonpayment of premium, notice of the cancellation shall be mailed or delivered by the Insurer at least fourteen (14) days prior to the effective date of the cancellation. Such notice of cancellation shall be mailed or delivered by the Insurer to the First named Insured at least seventy-five (75) days prior to the effective date of cancellation if the policy has been in effect for more than sixty (60) days.

After coverage has been in effect more than sixty (60) days, or after the effective date of a renewal policy, a notice of cancellation shall not be issued unless it is based on at least one (1) of the following reasons:

1. Nonpayment of premium;

2. Discovery of fraud or material misrepresentation made by or with the knowledge of the First Named Insured or Other Insured(s) or Other Insured(s) in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

3. Discovery of willful or reckless acts or omissions on the part of the First Named Insured or Other Insured(s) which increase any hazard insured against;

52145 (9/91)                              - 1 -

## ENDORSEMENT# *2*    (continued)

4. The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

5. A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

6. The Insurer is unable to reinsure the risk covered by the policy; or

7. A determination by the commissioner that the continuation of the policy would place the Insurer in violation of the Kentucky Insurance Code or regulations of the commissioner.

NONRENEWAL – The Insurer shall not refuse to renew a property or casualty insurance policy unless notice of nonrenewal is given at least seventy-five (75) days before the end of the policy period. Notice will include written explanation of the specific reason or reasons for the nonrenewal.

No notice of intention not to renew shall be required where the First Named Insured is given notice of the Insurer's willingness to renew the policy by mailing or delivering of a renewal notice, bill, certificate, or policy to the Insured at his last known address at least 30 days before the end of the current policy period, and has not received the renewal premium before the date.

When any policy terminates because the renewal premium was not received on or before the due date, the Insurer shall deliver or mail notice of the non-renewal including the date on which coverage ceased to exist within fifteen 15 days of that date.

All other terms, conditions and exclusions of the policy remain the same.

_____
AUTHORIZED REPRESENTATIVE

52145 (9/91)                                                                 - 2 -

## ENDORSEMENT# 3

This endorsement, effective *12:01 a.m.    January 1, 2001*    forms a part of
policy number  *872-35-08*
issued to *COMPUTREX, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payments for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to the ownership, management, maintenance, operation and/or control by the Company of any captive insurance company or entity, including but not limited to Claim(s) alleging the insolvency or bankruptcy of the Named Entity as a result of such ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature: Paul J. Schiavone]*

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 4

This endorsement, effective *12:01 a.m.   January 1, 2001*   forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**COMMISSIONS EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to:

(i)   Payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)  Payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees, or "affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such affiliates) of any customers of the company or any members of their family or any entity with which they are affiliated; or

(iii) Political contributions, whether domestic or foreign.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

_____
AUTHORIZED REPRESENTATIVE

62737 (5/95)

<u>ENDORSEMENT# 5</u>

This endorsement, effective *12:01 a.m.    January 1, 2001*    forms a part of
policy number    *872-35-08*
issued to *COMPUTREX, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(BROAD FORM)**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.  alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

   (1) nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

   (2) nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

   (3) the furnishing by an Insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   (4) claims for damages to the company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.  (1) which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or,

   (2) with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

## ENDORSEMENT# 5     (continued)

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Paul J. [signature]*
AUTHORIZED REPRESENTATIVE

62739 (5/95)                                            - 2 -

## ENDORSEMENT# 6

This endorsement, effective *12:01 a.m.  January 1, 2001*   forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to any Insured(s)' performance of or failure to perform professional services, or any act(s), error(s) or omission(s) relating thereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature: Paul J. Schieron]*
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 7

This endorsement, effective *12:01 a.m.  January 1, 2001*          forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### MAJOR SHAREHOLDER EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s) which are brought by any individual(s) or entity(ies) that own or control (whether beneficially, directly or indirectly) *10*     % or more of the outstanding voting stock (hereinafter "Major Shareholder"); or by any security holder of the Company whether directly or derivatively, unless such security holder's Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of any Major Shareholder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_Paul J. Schiavone_
AUTHORIZED REPRESENTATIVE

ENDORSEMENT# 8

This endorsement, effective *12:01 a.m.   January 1, 2001*     forms a part of
policy number   *872-35-08*
issued to *COMPUTREX, INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR ACTS EXCLUSION
### (INCEPTION DATE OF THE POLICY PERIOD)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss arising from any Claim(s) alleging Wrongful Act(s) which occurred prior to the inception date of the Policy Period or after the end of the Policy Period. This policy only provides coverage for Loss arising from a Claim(s) for an alleged Wrongful Act(s) occurring on or after the inception date of the Policy Period and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or Related Wrongful Act(s) shall be deemed to arise from the first such same or Related Wrongful Act.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

62740 (5/95)

**ENDORSEMENT# 9**

This endorsement, effective *12:01 a.m.   January 1, 2001*   forms a part of
policy number  *872-35-08*
issued to  *COMPUTREX, INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### Co-defendant Entity EPLI Coverage

In consideration of the premium charged, it is hereby understood and agreed that, notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), this policy is hereby amended as follows:

### I.
### INSURING AGREEMENTS

The Section of the policy entitled INSURING AGREEMENTS is amended by deleting Coverage B, Private Company Insurance, in its entirety and replacing it with the following:

**COVERAGE B: PRIVATE COMPANY INSURANCE**

This policy shall pay the Loss of the Company arising from a:

    (i)    Claim first made against the Company, however solely with respect to an Employment Practices Claim, only so long as such Employment Practices Claim is also made and continuously maintained against at least one Individual Insured of the Company; or

    (ii)    Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the charter or by-laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 9, advance Defense Costs of such Claim prior to its final disposition.

### II.
### DEFINITIONS

The Section of the policy entitled DEFINITIONS is amended as follows:

Definition (j) "Insured(s)" is deleted in its entirety and replaced with the following:

    (j) "Insured(s)" means:

        (1)    an Individual Insured; and

        (2)    the Company, however with respect to Employment Practices Claim(s) only, the Company is an Insured only to the extent described in Insuring Agreement Coverage B(i) of the policy.

(2/90)

**ENDORSEMENT# 9 (Continued)**

This endorsement, effective  *12:01 a.m.   January 1, 2001*   forms a part of
policy number  *872-35-08*
issued to  *COMPUTREX, INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

## III.
## EXCLUSIONS

Clause 4. Exclusion (q) is deleted in its entirety and replaced with the following:

(q) with respect to Coverage B(i) only:

(1) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

(2) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

(3) for the rendering or failure to render any service to a customer or client of the Insured provided, however, that this exclusion shall not apply to any:

   (i) Claim solely alleging Employment Practices Violations, but only so long as such Employment Practices Claim is also made and continuously maintained against at least one Individual Insured of the Company;

   (ii) Securities Claim; or

   (iii) Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this policy by written endorsement attached hereto;

(4) seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim as otherwise covered under this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*
—————————————————
AUTHORIZED REPRESENTATIVE

(2/90)

<u>ENDORSEMENT#</u> *10*

This endorsement, effective  *12:01 a.m.   January 1, 2001*          forms a part of
policy number   *872-35-08*
issued to   *COMPUTREX, INC*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


### RELIANCE ENDORSEMENT-PRIVATE COMPANIES
### (STANDARD FORM)

In consideration of the premium charged, it is hereby understood and agreed that this policy is issued in reliance upon the statements made and materials furnished to the Insurer by the Named Entity in connection with all Directors and Officers and Private Company Insurance applications or requests furnished to the Insurer including prior insurance applications or requests, and all statements made and materials incorporated in the following specific documents issued or filed by the Company whether furnished directly to the Insurer or indirectly to the Insurer from public sources available to the Insurer at the time of such request(s):

1. The Company's Annual report(s);
2. The Company's Quarterly reports;
3. The Company's interim financial statements;
4. The Company's proxy statement(s)(or other Notices to Shareholders);
5. The Company's indemnification provisions (and contracts, if any).


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


*[signature]*
———————————————
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# 12**

This endorsement, effective 12:01 a.m.  January 15, 2002    forms a part of
policy number  872-35-08
issued to  COMPUTREX, INC

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### RUN-OFF ENDORSEMENT

In consideration of the additional premium of $19,800, (which shall be fully earned at the inception date of this endorsement) it is hereby understood and agreed that as of January 31, 2002 (hereinafter the "Effective Time"), the following provisions shall apply and be added to the policy:

I.

The Section of the policy entitled DISCOVERY CLAUSE is deleted in its entirety and replaced with the following:

RUN-OFF COVERAGE CLAUSE

The Named Entity shall have the right to a period of three (3) years following the Effective Time (herein referred to as the Discovery Period or Run-off Coverage) in which to give written notice to the Insurer of any Claim(s) first made against any Insured(s) during said three (3) year period for any Wrongful Act(s) occurring on or prior to the Effective Time and otherwise covered by this policy.

II.

The Section of the policy entitled CANCELLATION CLAUSE is deleted in its entirety and replaced with the following:

This policy may not be canceled by the Named Entity or by the Insurer except as indicated below.

Notwithstanding the foregoing, this policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1. of the Declarations, written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

It is further understood and agreed that the entire premium charged for this policy and this endorsement shall be fully earned as of the Effective Time.

END 12

(2/90)    COPY

ENDORSEMENT# 12    (Continued)

This endorsement, effective 12:01 a.m. January 15, 2002 forms a part of
policy number 872-35-08
issued to COMPUTREX, INC

by National Union Fire Insurance Company of Pittsburgh, Pa.

III.

The Section of the policy entitled CHANGE IN CONTROL OF NAMED ENTITY is deleted in its entirety.

IV.

It is further understood and agreed that notwithstanding any other provision of this policy, this policy shall not provide coverage for any Claim(s) alleging any Wrongful Act(s) occurring after the Effective Time.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

END 12
COPY

(2/90)

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# 11**

This endorsement, effective *12:01 a.m. January 1, 2000* forms a part of policy number *860-37-92* issued to *COMPUTREX, INC*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Delete Prior Acts and Known Circumstance Exclusion**

In consideration of the materials received, it is hereby understood and agreed that Endorsement #10 Prior Acts and Know Circumstance Exclusion is deleted in its entirety.

All other terms, conditions and exclusions remain unchanged.

END 11
COPY

(2/90)

AUTHORIZED REPRESENTATIVE