UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C. A. No. 04-10685 GAO |
| AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT 3 PART 3 OF 4**

informed basis, and in a manner the Board honestly believed was in the best interest of the creditors.

129. The acts described are failures to exercise diligence, care and skill which an ordinarily prudent person would have exercised under similar circumstances in a like position, and are thus breaches of each director's statutory and fiduciary duty.

130. The continuation of the Debtor's business during insolvency based on the Ponzi scheme, the Ronald LaFleche settlement, the award of improper bonuses, the improper distribution of shareholder dividends in the form of cash and shares of stock in International and CX-IT, and the spin-off of International and CX-IT eventually led to the demise of the Debtor, took over $25 million from the creditors, and was a predicate to the filing of the involuntary bankruptcy petition by five of the Debtor's creditors.

131. The Board's actions caused direct, proximate, and foreseeable damage to the Debtor's creditors.

132. The Board's actions were intentional, oppressive, malicious, wanton, fraudulent, and with reckless disregard, thereby entitling Plaintiff to punitive damages. The Boards actions were also grossly negligent and entitle Plaintiff to punitive damages.

39

133. Each member of the Board of Directors approving these acts is jointly and severally liable to the corporation for the loss caused by this breach as follows:

(a) the continuation of the Debtor's business during times of insolvency based on the Ponzi scheme - $25,419,257.36;

(b) the Ronald LaFleche settlement - $981,202.00;

(c) the award of improper bonuses - $711,895.00;

(d) the improper distribution of shareholder dividends in the form of cash - $561,651.21;

(e) the improper distribution of shareholder dividends in the form of shares of stock in International and CX-IT - $947,197.20;

(f) the spin-off of International - $789,197.20;

(g) the spin-off of CX-IT - $158,000.00.

**COUNT THREE - AIDING & ABETTING BREACH OF FIDUCIARY DUTY**

134. Plaintiff incorporates all previous paragraphs.

135. A person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of a fiduciary relationship becomes jointly and severally liable for the loss resulting from the breach.

136. Milton Cleve Collins, Arthur Dana, Edward Lindquist, Gary Pershbacher and his principal, Tatum CFO, and Ronald Schaupp were aware that the Debtor was either

insolvent or perilously close to insolvency to the extent that the Debtor's net worth was very small and its shares of stock had very little value.

137. Collins, Dana, Lindquist, Pershbacher and his principal, Tatum CFO, and Schaupp were instrumental in the continuation of the Debtor's business during insolvency based on the Ponzi scheme.

138. This substantial assistance renders Collins, Dana, Lindquist, Pershbacher and his principal, Tatum CFO, and Schaupp aiders and abettors to the breach of fiduciary duty by the Board.

139. Collins, Dana, Lindquist and Schaupp were instrumental in assisting the Board of Directors in settling the dispute with Ronald LaFleche.

140. This substantial assistance renders Collins, Dana, Lindquist and Schaupp aiders and abettors to the breach of fiduciary duty by the Board.

141. Collins, Lindquist, Pershbacher, and his principal, Tatum CFO, were instrumental in assisting the Board of Directors in the spin-off of International and CX-IT.

142. This substantial assistance renders said officers and Tatum CFO aiders and abettors to the breach of fiduciary duty by the Board.

41

143. Collins, Dana, Lindquist, Pershbacher and his principal, Tatum CFO, and Schaupp are jointly and severally liable to the corporation for the damages sustained by the continuation of the Debtor's business during times of insolvency based on the Ponzi scheme in the amount of $25,419,257.36.

144. Collins, Dana, Lindquist, and Schaupp are jointly and severally liable to the corporation for the damages sustained by the Debtor in the amount of $981,202.00 as a result of the settlement with Ronald LaFleche.

145. Collins, Lindquist, Pershbacher and his principal, Tatum CFO, are jointly and severally liable to the corporation for the damages sustained by the Debtor in the amount of $789,197.20 as a result of the spin-off of International, and in the amount of $158,000.00 as a result of the spin-off of CX-IT.

**COUNT FOUR - FRAUDULENT CONVEYANCE**

146. Plaintiff incorporates all previous paragraphs.

147. Pursuant to K.R.S. 378.010, every transfer of real or personal property with the intent to delay, hinder or defraud creditors, purchasers or others shall be void as against such creditors, purchasers and other persons.

148. As members of the Board of Directors, Melinda Brown, Milton Cleve Collins, Peter LaFleche, Treffle

42

LaFleche, Edward Lindquist, Ronald Schaupp, and Jonathon Wilfong had knowledge of the dire financial condition of the Debtor at the time it approved the settlement with Ronald LaFleche.

149. These defendants structured the settlement so that it would not appear the Debtor was rendering payment to a shareholder despite the fact it was redeeming or acquiring its stock and forgiving indebtedness.

150. The transfer of funds to LaFleche was a fraudulent conveyance under Kentucky law in that it was made with the intent to delay, hinder or defraud creditors, purchasers or other persons.

151. As members of the Board of Directors, Melinda Brown, Milton Cleve Collins, Peter LaFleche, Treffle LaFleche, Edward Lindquist, Ronald Schaupp, and Jonathon Wilfong had knowledge of the dire financial condition of the Debtor at the time it approved the spin-off of International and CX-IT.

152. The purpose of the spin-off was to provide International with the more profitable logistics division of the Debtor, but leave the insurmountable debt with the Debtor.

153. The spin-off approved by the Board of Directors was a fraudulent conveyance under Kentucky law in that it

43

was made with the intent to delay, hinder or defraud creditors, purchasers or other persons.

154. Each member of the Board of Directors approving these acts is jointly and severally liable to the corporation for the loss caused by these fraudulent conveyances as follows:

(a) the Ronald LaFleche settlement - $981,202.00;

(b) the spin-off of International - $789,197.20;

(c) the spin-off of CX-IT - $158,000.00.

155. In the alternative, the spin-off of International and CX-IT, the Board of Directors violated 11 U.S.C. § 548(a) in that the Debtor received less than a reasonably equivalent value for the assets received during said spin-offs.

156. Each member of the Board of Directors approving these acts is jointly and severally liable to the corporation for the loss caused by these fraudulent conveyances as follows:

(a) the spin-off of International - $789,197.20;

(b) the spin-off of CX-IT - $158,000.00.

**COUNT FIVE – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO")**

157. Plaintiff incorporates all previous paragraphs.

44

158. Defendants are persons who were employed by or associated with the Debtor, a common enterprise pursuant to 18 U.S.C. § 1961(5). The enterprise was engaged in and its activities affected interstate commerce.

159. Each Defendant participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962, all as described more specifically herein and throughout this complaint.

160. Defendants conducted the affairs of the Debtor to operate the Ponzi scheme described in this complaint, whereby money was solicited from clients on the pretense that the funds would be used to pay the clients' freight bills but with the specific intent that the funds would actually be used for Defendants' own improper purposes, including (but not limited to) to fund the spin-off of International and CX-IT, pay dividends to shareholders, pay bonuses to officers, fund the settlement with Ronald LaFleche, and pay freight bills from previous invoices of other clients.

161. Such acts constituted a scheme and artifice to defraud, conducted with the specific intent to deceive and defraud, and proximately causing pecuniary harm to the business and property of the Debtor and its clients, who

45

were so deceived and harmed as a result of the creation and employment of this Ponzi scheme. Defendants directed the Debtor to intentionally solicit money from its clients to pay for the debts of other clients. Management was prohibited from disclosing the true financial condition of the Debtor to the clients in order to induce the clients to submit funds to the Debtor in an attempt to keep the Debtor afloat and achieve the improper purposes set forth herein.

162. Defendants used, or caused to be used, both the United States mails and wires in the conduct of this scheme and artifice to defraud, all in violation of 18 U.S.C. §§ 1341 and 1343.

163. Each transaction using the mails and wires in the Ponzi scheme is a predicate act forming a pattern of racketeering activity directed by Defendants. Millions of these transactions were performed by the Debtor. Other predicate acts are described elsewhere in the complaint, including conduct that constitutes theft by deception under state law.

164. Defendants were aware at all times relevant to this scheme that the Debtor was insolvent.

165. Defendants invested the solicited client funds collected by means of the fraudulent Ponzi scheme to create

46

International and CX-IT, also enterprises engaged in interstate commerce.

166. Defendants' use of income derived from the pattern of racketeering described herein to invest in, establish, or operate an enterprise engaged in interstate commerce violates 18 U.S.C. § 1962(a).

167. Defendants' acquisition maintenance, and control through the pattern of racketeering described herein of an enterprise engaged in interstate commerce violates 18 U.S.C. § 1962(b).

168. Defendants' conduct of the Debtor's affairs through the pattern of racketeering described here violates 18 U.S.C. § 1962(c).

169. Defendants conspired to violate 18 U.S.C. § 1962(a), (b), and (c) by entering into an agreement to use the Debtor as a vehicle to carry out the fraudulent Ponzi scheme in violation of 18 U.S.C. § 1962(d) and by causing the overt acts described in this complaint to be taken in furtherance of that conspiracy.

170. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962, the Debtor suffered pecuniary injury to its business and property for which the Trustee is entitled to treble damages from Defendants, plus

47

his attorney fees and costs expended herein, all in accordance with 18 U.S.C. § 1964(c).

**COUNT SIX - NEGLIGENCE OF THE BOARD OF DIRECTORS**

171. Plaintiff incorporates all previous paragraphs.

172. K.R.S. 271B.6-400(3)(a) provides that a corporation shall not make a distribution if that corporation would not be able to pay its debts as they become due in the usual course of business.

173. K.R.S. 271B.6-400(3)(b) provides that a corporation shall not make a distribution if a corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

174. The Debtor's articles of incorporation do not permit a deviation in calculating liabilities provided in K.R.S. 271B.6-400.

175. The Board of Directors owed a duty to the Debtor to exercise the degree and skill of a reasonably prudent person serving in their respective capacities.

48

176. The continuation of the Debtor's business during insolvency based on the Ponzi scheme, the Ronald LaFleche settlement, the award of improper bonuses, the improper distribution of shareholder dividends in the form of cash and shares of stock in International and CX-IT, the acquiescence given to Debtor's counsel to represent the Debtor and parties having adverse interests with the Debtor in matters involving those parties, and the spin-off of International and CX-IT eventually led to the demise of the Debtor and was a predicate to the filing of the involuntary bankruptcy petition by five of the Debtor's creditors.

177. As members of the Board of Directors, Melinda Brown, Milton Cleve Collins, Peter LaFleche, Treffle LaFleche, Edward Lindquist, Ronald Schaupp, and Jonathon Wilfong breached this duty.

178. The Board's actions caused direct, proximate, and foreseeable damage to the Debtor's creditors.

179. Each member of the Board of Directors approving these acts is jointly and severally liable to the corporation for the loss caused by this breach as follows:

(a) the continuation of the Debtor's business during times of insolvency based on the Ponzi scheme - $25,419,257.36;

(b) the Ronald LaFleche settlement - $981,202.00;

49

(c) the award of improper bonuses - $711,895.00;

(d) the improper distribution of shareholder dividends in the form of cash - $561,651.21;

(e) the improper distribution of shareholder dividends in the form of shares of stock in International and CX-IT - $947,197.20;

(f) the spin-off of International - $789,197.20;

(g) the spin-off of CX-IT - $158,000.00.

### COUNT SEVEN - NEGLIGENCE OF OFFICERS

180. Plaintiff incorporates all previous paragraphs.

181. As officers of the Debtor, Milton Cleve Collins, Edward Lindquist, and Ronald Schaupp owed a duty to the Debtor to exercise the degree and skill of a reasonably prudent man serving in their respective capacities.

182. These officers at all times relevant had knowledge of the true financial condition of the Debtor during their respective tenures.

183. The officers failed to perform their respective duties when they did not adequately supervise and direct other company executives who reported to them directly and indirectly.

184. The officers failed to prevent the considerable disarray of the Debtor's accounting records or to rectify accounting deficiencies after having been informed of same.

50

These failures resulted in huge losses of cash of the Debtor.

185. The officers failed to prevent or take action to correct double billings and unsupported financial transactions involving client accounts resulting in huge write-offs of the Debtor's account receivables.

186. The officers failed to take action to prevent overdrafts of millions of dollars or take action to limit or decrease the overdrafts after becoming aware of same.

187. The officers failed to take action as to client contracts having unprofitable pricing because the float income was necessary from those clients to delay the inevitable bankruptcy of the Debtor.

188. The officers failed to timely recommend or pursue bankruptcy protection on behalf of the Debtor upon becoming undeniably aware of the Debtor's insolvency.

189. Edward Lindquist failed to properly supervise the approval of American Express expenses and personal expenses for which Milton Cleve Collins sought payment.

190. The officers' actions caused direct, proximate, and foreseeable pecuniary damage to the Debtor and its creditors.

191. Milton Cleve Collins, Edward Lindquist, and Ronald Schaupp are jointly and severally liable to the

corporation and its creditors for the loss caused by this breach in the following amounts:

(a) the continuation of the Debtor's business during times of insolvency based on the Ponzi scheme - $25,419,257.36;

(b) the award of improper bonuses - $711,895.00;

(c) the spin-off of International - $789,197.20;

(e) the spin-off of CX-IT - $158,000.00.

192. Milton Cleve Collins and Edward Lindquist are jointly and severally liable to the corporation and its creditors for the loss caused by the abuse of Collins' American Express and personal expense accounts in the following amounts:

(a) the American Express account - $324,883.78;

(b) the personal expense account - $79,818.22.

193. Milton Cleve Collins is liable to the corporation and its creditors for the loss caused by the improper receipt of a car allowance in the amount of $3,650.00 while driving a company Mercedes.

**COUNT EIGHT - RETURN OF SHAREHOLDER DIVIDENDS FROM MELINDA BROWN, MILTON CLEVE COLLINS, TREFFLE LAFLECHE, & RONALD SCHAUPP**

194. Plaintiff incorporates all previous paragraphs.

195. K.R.S. 271B.6-400(3)(a) provides that a corporation shall not make a distribution if that

corporation would not be able to pay its debts as they become due in the usual course of business.

196. K.R.S. 271B.6-400(3)(b) provides that a corporation shall not make a distribution if a corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

197. The Debtor's articles of incorporation do not permit a deviation in calculating liabilities provided in K.R.S. 271B.6-400.

198. At the time Melinda Brown, Milton Cleve Collins Treffle LaFleche, and Ronald Schaupp received the dividends described above, the Debtor could not pay its debts as they became due in the usual course of business, and the Debtor's total assets were less that the sum of its total liabilities plus the satisfaction of the preferential rights upon dissolution of shareholders whose rights are superior to Brown, Collins, LaFleche, and Schaupp.

199. The dividends received by these defendants are property of the bankruptcy estate and must be returned to the Trustee as follows:

(a) Melinda Brown and Treffle LaFleche jointly and severally - $33,722.50;

(b) Milton Cleve Collins - $29,700.00;

(c) Treffle LaFleche - $12,727.20;

(d) Ronald Schaupp - $470.00.

### COUNT NINE - FRAUD UNDER KENTUCKY COMMON LAW

200. Plaintiff incorporates all previous paragraphs.

201. Defendants falsely represented to the Debtor's clients that the solicited funds would be used to pay the clients' freight carriers less any fee to which the Debtor was entitled. These representations were material to the solicitation.

202. Defendants knew that at the time these representations were made, the solicited funds would be used for purposes other than those represented to the clients. The statements made were reckless and for the purpose of inducing the clients to deliver payment to the Debtor.

203. The clients relied on Defendants' statements and were pecuniarily harmed in that they were left owing their

54

freight carriers over $23,000,000.00 despite having made payments to the Debtor.

204. Defendants' fraudulent acts entitle Plaintiff to punitive damages.

### COUNT TEN - RETURN OF AMERICAN EXPRESS PAYMENTS AND EXPENSE REIMBURSEMENTS FROM MILTON CLEVE COLLINS

205. Plaintiff incorporates all previous paragraphs.

206. Collins charged $324,883.78 in improper expenses on his American Express card, and the Debtor unknowingly paid American Express or Collins for same.

207. Collins received improper reimbursements from the Debtor in the amount of $79,828.33 for personal non-legitimate expenses or expenses lacking proper receipts or support.

208. Collins improperly received $3,650.00 in car allowances to be applied to his car lease while driving a company Mercedes in which the Debtor directly paid the lease.

209. Collins' actions constitute employee theft, and he is liable to the Trustee for $408,352.00 in damages.

### COUNT ELEVEN - RETURN OF IMPROPER BONUSES FROM MILTON CLEVE COLLINS, EDWARD LINDQUIST, & RONALD SCHAUPP

210. Plaintiff incorporates all previous paragraphs.

211. From 1999 through 2001, the management of the Debtor, including officers Milton Cleve Collins, Edward

Lindquist, and Ronald Schaupp during their relevant times of employment, directed or permitted the preparation of false or inflated revenues.

212. Collins, Lindquist, and Schaupp intended to create the false impression as to these revenues in order to obtain bonuses from the Debtor.

213. As a result of the false or inflated revenues, Collins received bonuses in the amount of $131,496.00; Lindquist received a bonus in the amount of $46,250.00; and Schaupp received a bonus in the amount of $144,149.00.

214. The actions of the officers violate K.R.S. 514.040 governing theft by deception.

215. This statute has been made applicable to corporate employees.

216. The Trustee is entitled to the return of these respective bonus payments from Collins, Lindquist, and Schaupp.

217. Collins and Lindquist also each received a bonus of $195,000.00 for the orchestration of the spin-off of International despite their knowledge of the true financial condition of the Debtor and the harm which would inevitably befall the Debtor, its shareholders, and its clients.

218. Although the bonuses were paid by International, the money to pay the bonuses came from the Debtor.

219. The actions of Collins and Lindquist violated the duties imposed on them by law and by the nature of their positions to cause no financial harm to the Debtor.

220. As a result, the Trustee is entitled to the return of these bonus payments from Collins and Lindquist.

WHEREFORE, Plaintiff seeks the following relief:

A. Judgment against Defendants on all counts asserted against them in this adversary complaint;

B. Joint and several liability against Melinda Brown, Milton Cleve Collins, Peter LaFleche, Treffle LaFleche, Edward Lindquist, Ronald Schaupp, and Jonathon Wilfong for the breaches of fiduciary duty to the corporation and to the creditors in the following amounts:

(1) the continuation of the Debtor's business during times of insolvency based on the Ponzi scheme - $25,19,257.36;

(2) the Ronald LaFleche settlement - $981,202.00;

(3) the award of improper bonuses - $711,895.00;

(4) the improper distribution of shareholder dividends in the form of cash - $561,651.21;

(5) the improper distribution of shareholder dividends in the form of shares of stock in International and CX-IT - $947,197.50;

57