UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO: 04 10685 WGY

MELINDA BROWN and )
TREFFLE LAFLECHE, )
                                        )
    Plaintiffs )
                                        )
VS. )
                                        )
AMERICAN INTERNATIONAL GROUP, )
INC. and NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PENNSYLVANIA, )
                                        )
    Defendants )

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

**A. Summary of Argument**

The Defendants, American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") oppose the Plaintiffs' Motion For Summary Judgment (the "Plaintiffs' Motion") on the basis that the Complaint brought against them and other officers and directors of Computrex, Inc. in the U. S. Bankruptcy Court (the "D&O Action") on its face discloses adequate facts warranting the conclusion made by these Defendants that:

      1. Coverage is excluded as a result of the fact that the Complaint alleges acts during the policy period (January 1, 2001 to January 1, 2002) which are excluded as "Related Wrongful Acts" under the "Prior Acts Exclusion" (Endorsement 8) to the policy issued by National Union (the "D&O Policy").

1

2. Unlike other liability policies which impose on the insurer a duty to defend, the D&O policy specifically provides: "The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them." (Clause 8, Pg. 11 of the D&O Policy). Thus any cases from either Kentucky or Massachusetts requiring an insurer to offer a defense under a reservation of rights while the application of an exclusion is determined are not on point. Having no duty to defend, National Union properly denied coverage on the basis of the factual allegations in the Complaint in the D&O Action;

3. The duty to defend under Clause 8 arises only on the request of the "Named Entity", defined in the D&O Policy (pg. 4) as "the organization stated in Item 1 of the Declarations" (in this case Computrex, Inc.) which must be exercised by the Named Entity "on behalf of all Insureds." (Emphasis added in view of Plaintiffs' misquoting of the provision in Paragraph 15 of its Statement of Material Facts). There is no evidence that Computrex, Inc. exercised the right to make such a request at any time let alone within the required 30 days of the time the claim was "first made" (Clause 8, pg. 11 of the D& O policy). As a result, the Plaintiffs are not entitled to the requested declaration that National Union is required to defend the action as requested in Par. 37 of its Complaint; and

4. Clause 8 of the D&O Policy provides that "in all events" the Insurer may "withhold consent to any . . . Defense Costs, or any portion thereof, to the extent such Loss (which includes Defense Costs in the definition of "Loss") is not covered under the terms of the policy." Since National Union has determined that the alleged Wrongful Acts are Related Wrongful Acts as defined in the D&O

Policy, the Plaintiffs are not entitled to an advance of defense costs as requested in Paragraph 37 of its Complaint;

    5. Plaintiffs' Motion should be denied or in the alternative the court should allow defendants Rule 56 (f) Motion to continue and permit a later Opposition and briefing schedule.

**B. The Claims for Coverage of Acts Occurring in the Policy Period Are Excluded Claims Because On The Face of the Complaint They Are Excluded by Endorsement #8 to the D&O Policy.**

The Complaint in the D&O Action brings a number of claims against these two Plaintiffs and the other officers and directors of Computrex, Inc. (the "Debtor")It is obvious from the allegations of that complaint that these Plaintiffs are being sued for breaches of their duties as officers and directors extending either over the entire period they held such positions or, at least, from some time in 2000, they were or should have been aware of the Debtor's financial condition and the practices it was following. Those acts were the direct cause of the Debtor's creditors putting it into Chapter 7 in 2001. All the pre-policy activities of Plaintiffs and the other officers and directors in office at the time are without question Related Wrongful Acts to those which occurred after the policy took effect on January 1, 2001.

Plaintiffs recognize that Magistrate Judge Dein's opinion in <u>Gateway Group Advantage, Inc. v. McCarthy</u>, 300 F. Supp.2d 236 (D.C. Mass, 2003) is "one of the only reported cases interpreting 'Related Wrongful Acts'" as set out in the D&O Policy. They also recognize Magistrate Dein interpreted the phrase according to its "plain and ordinary meaning." (Pg. 6, fn. 5, Plaintiffs' Memo). Given these plaudits for the opinion, it is surprising that Plaintiffs feel they can reject it in part as not having been adopted in

3

Kentucky without citation of any Kentucky authorities that might support the view it would not be followed there, if raised.

As to factual matters, the Complaint itself in the D&O Action alleges that (1) the Plaintiffs were directors of Computrex, Inc. as least as early as 1999 and perhaps earlier (Pars. 9, 13 and 34); (2) a memo of June 22, 2000 (not contained in the copy of the D&O Action complaint served upon the Defendants) declared that Computrex, Inc. was insolvent (Par. 47); and (3) it is alleged that on June 30, 2000 had a deficit net worth of $12,386,783.00 (Par. 48). Standing alone and without other facts, these allegations are adequate in themselves to require at least an Affidavit of a knowledgeable person that they are untrue. Otherwise, they clearly describe information the officers and directors either had or should have had before undertaking any of the actions described as occurring after that date. All such later acts, including those set out in Paragraphs 31 through 34 of the Complaint of the Plaintiffs in this action are therefore Related Wrongful Acts to those acts which pre-dated the effective date of the D&O Policy.

Plaintiffs' contend that the asserted violations in the D&O Action are narrowly described so as to include them only in events which happened after the effective date of the D&O Policy on January 1, 2001. They contain broad allegations of breaches of the duties the named Plaintiffs had to both the corporation and creditors of the corporation as a result of their roles as officers and directors. Those actions led to insolvency and machinations to hide the insolvency for which the Bankruptcy Trustee seeks remedies.

Among the allegations which stand on this record as unrebutted by Affidavit or otherwise are: violations of Kentucky statutes relative to the September 14, 2000 repurchase of stock while the corporation was insolvent (par. 57), acceptance by the

4

named Plaintiffs and others of improper dividends from 1997 to 1999 (Par. 112), approval of a settlement with Ronald LaFleche in September , 2000 paying $400,000.00 for purchase of his stock and forgiving $581,202.00 in debt (Par 56), and receipt by the named Plaintiffs themselves of the December 14, 2000 memorandum titled "Project Merlin" ( also not included with the copy of the complaint in the D&O Action served upon defendants)  discussing events which would occur in the future (par. 76). Finally, as noted in the D&O Action's complaint the very "continuation of business during insolvency" made every other act which occurred after the officers and directors either knew or should have known that as of June 30, 2000 Computrex, Inc. had a deficit net worth of over $12 million "Related Wrongful Acts" to all that occurred thereafter.

The policy describes "Related Wrongful Acts" as:

> "Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise out of a common nucleus of facts."

It is important to note that the key terms are set out in the alternative. Thus a Related Wrongful Act which is either "related" or "arises out of a common nucleus of facts" from another Wrongful Act need not be either "the same" or "continuous" with other acts to trip off the exclusion.

a. <u>The Acts Are Related</u>.

The Acts described in the D&O Action's complaint as occurring prior to the effective date of the D&O Policy are clearly related to the discrete acts described by these Plaintiffs in Paragraph 8 of their Statement of Material Facts. As noted in <u>Gateway Group Advantage</u>, *id*.  300 F.Supp. 2d at 344 acts can be "related" if they constitute "interdependent components of a single plan" or where there is a "logical or causal connection" between two events. Where officers and directors of a corporation engage in

5

the types of acts set out in the complaint in the D&O Action as having occurred after the corporation was clearly insolvent with a negative deficit of $12 million, those acts which attempt to insulate the business and its officers and directors from financial loss are part of a single plan and are both logically and causally connected. In such circumstances, the very continuation of business was a Wrongful Act and that began at least as of June, 2000 when any officer or director including these Plaintiffs can properly be held to have knowledge of the precarious financial condition of the corporation and obliged to act accordingly.

      b. The Acts Arise Out of a Common Nucleus of Facts.

The acts after January 1, 2001 of which complaint is made also "arise from a common nucleus of facts" with the other acts pre-dating the policy inception date. Regardless of the "level of causation" applied, Gateway Group Advantage, *id*. 300 F. Supp.2d at 245, a prohibited repurchase of stock during insolvency, the receipt of dividends in such circumstances, a nearly million dollar settlement with a former officer while insolvent, the receipt of material describing the plan for a later spin-off and the very continuation of business after the June 2000 report on the financial condition of the corporation are the actions that brought about the conditions of which the Trustee complains and therefore are caused by them. The acts after January 1, 2001 arise out of a common nucleus of facts with those which occurred before that date.

      c. Conclusion.

The D&O Action describes Wrongful Acts going back at least to June, 2000 which are both related and arise out of a common nucleus of facts with the later Wrongful Acts of which it complains. Thus all of those Wrongful Acts "are deemed to arise from

the first such same or Related Wrongful Act" and are excluded from the coverage of the policy by the terms of Endorsement #8.

**C**. **This Case Does Not Require the Insurer to Provide a Defense or Advance Defense Costs.**

The policy language on the insurer's duty to defend an insured is: "The Insurer does not assume any duty to defend. The Insureds shall defend and contest any claim made against them." (Clause 8, Pg. 11 of the D&O Policy).

The term "Insureds" is defined to mean both the individual officers, directors and employees and the entity insured. (D&O Policy, pg.4).

Two exceptions are made upon described conditions:

> 1. The insureds can tender the defense to the Insurer but only at the written request of the "Named Entity" which is made "on behalf of all insureds;" and
>
> 2. Where the defense has not been assumed by the Insurer, it shall advance defense costs to an Insured on written request of an Insured, provided further that "in all events the Insurer may withhold consent to . . . any Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms" of the policy. ("Loss" is defined to include Defense Costs).

Here, the "Named Entity" is Computrex, Inc. and there is no evidence that it tendered defense of the two Plaintiffs or any other officers and directors named in the D&O Action for defense by National Union. Thus, there is no duty to defend and no

7

related duty to have the propriety of a claimed exclusion decided while a defense is offered.

Similarly, having determined that the claimed Loss is not covered under the terms of the policy, there is no duty to advance defense costs.

There are, of course, sound reasons for requiring the tender of defense to be made on behalf of <u>all</u> insureds since any other provision would permit a single director or officer to use up an entire policy where, as here defense costs are part of the total limits of coverage available. (Clause 5, Pg. 9 of the D&O Policy) (emphasis added as a result of Plaintiffs' misquotation of the provision in Par. 15 of its Statement of Material Facts). In the same way, any advance of defense costs for uncovered loss would diminish the asset which may be required in connection with other claims not barred by the Prior Acts Endorsement.

**D. <u>The Court Should Deny Plaintiffs' Motion For Summary Judgment or Alternatively Allow Defendants' Motion For Continuance Under Rule 56 (f).</u>**

Defendants have filed a Motion To Continue under Rule 56 (f) so as to conduct limited discovery specified in their Motion. As explained, it is expected that the discovery will enable defendants to provide facts by Affidavit of proper affiants to uphold their position that this Motion For Summary Judgment should be denied and that defendants should be granted Summary Judgment themselves or the claims denied after a Motion To Dismiss for failure to join indispensable parties. Plaintiffs filed their Motion For Summary Judgment on the day defendants filed their Answer. While such a practice may technically comply with the Rules and makes sense where there is a straight-forward claim that cannot be rebutted, it should not be permitted where the facts are as full as is

the case here and the supporting Affidavits so slim as to be almost meaningless. A just result can be reached more surely on a more developed record.

WHEREFORE, defendants request that Plaintiffs' Motion For Summary Judgment be denied or in the alternative defendants Motion To Continue under Rule 56 (f) be allowed with appropriate scheduling of discovery and briefs.

By their attorneys,

FINNEGAN, UNDERWOOD,
RYAN & TIERNEY

/s/ John G. Ryan
John G. Ryan
22 Batterymarch St., 4th Floor
Boston, MA 02109
617-348-9200
BBO #435560

May 25, 2004.