UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, <br><br> Defendants. | C. A. No. 04-10685 WGY |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Melinda Brown and Treffle LaFleche ("Plaintiffs") hereby submit the following reply to the opposition to Plaintiffs' motion for summary judgment filed by American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") (collectively "Defendants").

**Argument**

Plaintiffs rely on and reassert the contentions contained in their Motion for Summary Judgment ("Plaintiffs' Motion"), and file this reply brief to specifically address certain claims raised by the Defendants in their opposition motion.

I.  **THE DEFENDANTS HAVE NOT ESTABLISHED THAT THERE IS ANY GENUINE ISSUE OF MATERIAL FACT CONCERNING THE DEFENDANTS' DUTY TO DEFEND AND/OR ADVANCE DEFENSE COSTS.**

In their Complaint, the Plaintiffs have asked this Court to enter a declaratory judgment ordering the Defendants to defend the Plaintiffs in the D&O Action and/or to advance the

Plaintiffs the proceeds of the D&O Policy to pay for the defense costs incurred by them in the D&O Action.  See Complaint ("Compl.") ¶ 1.  It should be emphasized, therefore, that the Plaintiffs seek an order requiring the Defendants to defend them in the D&O Action, and not an order requiring indemnification.  The distinction is relevant because the two duties are entirely separate, as the insurer's obligation under the former duty is broader and is implicated after a far more limited factual inquiry.  See John Beaudette, Inc. v. Sentry Ins. a Mut. Co., 94 F. Supp. 2d 77, 100 (D. Mass. 1999).  The duty to defend, for example, is implicated by the initiation of a lawsuit against an insured.  Id.

Furthermore, the case law unequivocally holds that an insurer's duty to defend depends solely on the language of the allegations contained in the underlying complaint, regardless of whether the claims are meritorious.  E.g., Vance v. Cincinnati Ins. Co., 1986 Ky. App. LEXIS 1231, *6 (Ky. App. Ct. 1986) ("The duty to defend is broader than the duty to pay. … [T]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action.") (internal citations and quotations omitted); accord Beaudette, 94 F. Supp. at 100 ("The contractual duty to defend is … measured by the allegations of the underlying complaint.") (internal quotation omitted).  In contrast, an insurer's duty to indemnify is measured by the facts as they unfold at trial or as are inherent in the settlement agreement.  Beaudette, 94 F. Supp. at 100.

Accordingly, contrary to their contention, the Defendants must defend the Plaintiffs in the D&O Action because the D&O Complaint contains allegations that "potentially, possibly, or might" fall within the D&O Policy's coverage.  James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991).  As more fully set forth in the Plaintiffs' Motion, the D&O Complaint contains ample allegations of conduct that could fall

2

within the D&O Policy's coverage.  These allegations include, for example, claims that the Plaintiffs improperly received dividends, see D&O Complaint ("D&O Compl.") ¶¶ 121, 130, 176 & 198, and improperly approved bonuses to Computrex, Inc. ("Computrex") executives, see id. ¶¶ 104, 121, 130, & 176, both alleged to have occurred during the Policy Period, see id. ¶¶ 87, 104.  Furthermore, the Defendants' argument is further undermined by the fact that they must defend even if this Court finds that the D&O Complaint contains some allegations of *excluded* conduct.  See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc., No. 03-20542, 2004 U.S. App. LEXIS 2694, *11 (5th Cir. 2004) ("[I]f a loss is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable.").

The Defendants have also filed a FED. R. CIV. P. 56(f) motion to continue, asking this Court to postpone the scheduled hearing of the Plaintiffs' Motion, on grounds that they need discovery to adequately oppose the Plaintiffs' Motion.[1]  The Defendants seek, among other items, 1) copies of corporate records or Minutes from meetings held by the Board of Directors of Computrex, Inc.; 2) documents produced in response to the Plaintiffs' document production request upon the Trustee in Bankruptcy dated March 9, 2004; and 3) to depose the Plaintiffs or issue interrogatory requests.[2]  See Affidavit of Counsel in Support of Defendants' Motion to Order a Continuance of Plaintiffs' Motion for Summary Judgment ("Ryan Aff.") ¶¶ 3-4.

The Court should not permit additional discovery because, as noted, the language of the D&O Complaint, when read in conjunction with the terms and provisions of the Policy, controls

---

[1] The Court denied said Motion in an order entered on June 2, 2004.  In their Motion, the Defendants also maintain that they need discovery so that they can obtain facts necessary to draft their own Motion for Summary Judgment and/or Motion to Dismiss for Failure to Join Required Parties.  See Defendants' Motion to Order a Continuance of Plaintiffs' Motion for Summary Judgment ("Defs' Mot. to Cont.") at 1.  Whether the Defendants need additional time and/or discovery to draft motions other than their opposition, however, is irrelevant to the issue of whether discovery is needed to adjudicate the Plaintiffs pending Motion.

[2] The Defendants also sought the exhibits attached to the D&O Complaint, which Plaintiffs' counsel inadvertently failed to include with their Complaint in the instant proceedings.  Plaintiffs' counsel has since forwarded said exhibits to defense counsel.

B0365991v1

whether or not the Defendants have a duty to defend.  The Defendants, themselves, even appear to recognize this legal principle in their opposition because they state that their denial of coverage was "proper" since it was premised on the "*factual allegations in the Complaint in the D&O Action[.]*"  See Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs' Mem.") at 2 (emphasis added.)  The items and information that the Defendants now seek through additional discovery are extraneous to the complaint and, therefore, cannot engender any facts that might raise a genuine issue regarding the Defendants' duty to defend and/or advance costs.  See Mowbray v. Waste Mgmt. Holdings, Inc., 45 F. Supp. 2d 132, 142 (D. Mass. 1999) (Young, C.J.) (denying defendant's Rule 56(f) motion for a continuance where the defendant sought facts to support issue of reliance, which was not an element of the claim, and thus the facts obtained would be irrelevant).  Accordingly, this Court should grant the Plaintiffs' Motion because the Defendants have failed to establish a genuine issue of material fact, and, as discussed more fully elsewhere, the Plaintiffs are entitled to judgment as a matter of law.

**II.     THE DEFENDANTS HAVE A DUTY TO DEFEND AND/OR ADVANCE DEFENSE COSTS AS A MATTER OF LAW.**

**A. The Policy imposes a duty to defend.**

As a threshold issue, the Defendants assert that they properly denied coverage because the Policy does not impose a duty to defend.  See Defs' Mem. at 2, 7.  For support, they quote clause 8 of the Policy, which states "[t]he Insurer does not assume any duty to defend."  See D&O Policy cl. 8, p. 11.  The Defendants' position is premised on a narrow reading of the Policy and fails to recognize that the Policy imposes a duty to defend in the next paragraph.

The Plaintiffs concede that the provision quoted by the Defendants, when viewed in isolation, sets forth a general limitation on the Defendants' duty to defend.  The Policy, however,

further states that "[n]otwithstanding the foregoing, … *the Insurer shall be obligated to assume the defense of the Claim*, even if such Claim is groundless, false, or fraudulent." See D&O Policy, cl. 8, p. 11 (emphasis added.)  Accordingly, the Policy does impose a duty to defend, and, as further discussed herein, the Plaintiffs' Motion should be granted because their tender of defense was proper and the claims are covered under the Policy.

### B. The Plaintiffs tender of defense was proper under the circumstances.

The Defendants do not dispute that the Policy grants the Plaintiffs a substantive right to tender the defense of the D&O Action.  The Policy expressly grants this right when it states that the "Insureds *shall have the right* to tender the defense of the Claim to the Insurer." See D&O Policy, cl. 8, p. 11 (emphasis added).  Rather, the Defendants raise a procedural, hyper-technical defense as the basis for denying the defense of the Plaintiffs' claims.  Specifically, the Defendants assert that they do not have a duty to defend because the Plaintiffs' tender of defense was improper.  See Defs' Mem. at 2, 7.  Under the circumstances, however, such procedural hurdles should not bar the Plaintiffs' entitlement to the defense.

The Policy provides that the tender of defense "shall be exercised in writing by the Named Entity on behalf of all Insureds…."[3]  On February 6, 2004, the Plaintiffs exercised their right to tender the defense under the Policy in a letter to the Defendants.  See 2/6/04 Letter from Daniel J. Kelly, Esq., at 1.  The Defendants observe that this letter does not comply with the Policy's exact tender requirements because it was not made by Computrex, which the Policy defines as the "Named Entity," on behalf of all the Insureds.  See Defs' Mem. at 7.  A defective, insufficient, or untimely tender of defense, however, does not, per se, abrogate an insurance company's duty to defend.  See State Farm Mut. Auto. Ins. Co. v. Univ. Underwriters Ins. Co.,

---

[3] The Plaintiffs acknowledge that they misquoted this provision in their Complaint by unintentionally omitting the word "all." See Compl. ¶ 14.

5

601 F. Supp. 286, 290 (S.D. Miss. 1984) (holding that an insurer upon whom there had been no demand to defend could nevertheless incur liability where it had notice of an event potentially within the policy's coverage).

Kentucky law recognizes the doctrine of substantial compliance with respect to the duties owed under insurance contracts. Charter Oak Fire Ins. Co. v. Coleman, 273 F. Supp. 2d 903, 907 (W.D. Ky. 2003). The Plaintiffs February 6, 2004 letter substantially complied with the Policy's technical tender of defense requirements. See id. (holding insured substantially complied with notice provision as a matter of law by informing his local insurance agent rather than the named insurer). Under the circumstances of this case, the notice requirements were rendered meaningless when Computrex was placed into bankruptcy. The very claims for which the plaintiffs seek a defense were brought by the successor-in-interest to the "Named Entity," i.e., Computrex. Under the circumstances, requiring Computrex to tender the defense would be irrational, elevate form over substance, and unfairly deprive the Plaintiffs of their substantive rights under the Policy.

Furthermore, the Defendants have not demonstrated that they were prejudiced by the Plaintiffs' purportedly defective tender of defense. See id. ("Under Kentucky law, an insurance provider must show prejudice in order to defeat liability based on a breach of a notice provision."); accord Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980) (adopting the "modern approach" to interpreting insurance contracts, which "eschew[s] [technical notice requirements] unless the insurer has been materially prejudiced by virtue of late notification"); see also Am. Mut. Liability Ins. Co. v. Beatrice Cos., Inc., 924 F. Supp. 861, 870 (N.D. Ill. 1996) (observing that, under Massachusetts law, "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance

6

company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim … unless the insurance company has been prejudiced thereby.").

### C. The Defendants must advance Defense Costs for the claims against the Plaintiffs in the D&O Action.

In two successive paragraphs, clause 8 of the Policy clearly distinguishes between the insurer's absolute duty to advance Defense Costs and the insurer's right to withhold consent to Defense Costs after a determination has been made that certain claims are not covered under the Policy. See D&O Policy, cl. 8, p. 12. The first paragraph states, in relevant part:

> When the Insurer has not assumed the defense of a Claim … the Insurer *shall advance* nevertheless, *at the written request of the Insured*, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds … in the event and to the extent that the Insureds … shall not be entitled under the terms and conditions of this policy to payment of such Loss.

See id. (emphasis added). This language unequivocally confers the Defendants with an absolute duty to advance costs, prior to any final adjudication as to coverage or the Plaintiffs' liability on the underlying claims, when, as here, they refuse to assume the defense of a claim and the Insureds have made a written request.[4] See id. As the aforementioned language states, the Defendants have a right to be "repaid" *if* a subsequent determination finds that that the Policy does not cover the claims, but their duty to advance Defense Costs is absolute. See id.

The Defendants assert that they have no duty to advance Defense Costs because the claims against the Plaintiffs in the D&O Action are excluded under the Policy's Prior Acts exclusion, and clause 8 of the Policy allows them to withhold consent to Defense Costs for claims not covered under the Policy. See Defs' Mem. at 3-7. The Defendants, however, misconstrue clause 8 of the Policy by ignoring the above-quoted language creating an absolute

---

[4] It should be emphasized that the Policy expressly provides that the insurer's duty to advance costs is triggered at the written request of the "Insured" rather than the "Named Entity." See D&O Policy, cl. 8, p. 12. The Defendants do not dispute that they received written notice.

duty to advance costs and erroneously focusing this Court's attention on a subsequent paragraph that allows the Insurer to withhold consent to Defense Costs only after a determination has been made that the Policy does not cover the claims. See Defs' Mem. at 7. Under the Policy's plain language, the Defendants' duty to advance costs is separate and distinct from their ability to withhold consent for costs incurred once it has been determined that the claims do not fall within the Policy.

Furthermore, as more fully discussed in the Plaintiffs' Motion, the Policy does cover the allegations made in the D&O Action, contrary to the Defendants' contentions. The Defendants confuse the coverage issue by grouping all the allegations of misconduct in the D&O Action together and then summarily asserting that the allegations "clearly relate[]" to pre-policy Wrongful Acts under the Policy because they are part of a "single plan" to insulate Computrex and its officers from financial loss.[5] See Defs' Mem. at 5-6. Relatedness, however, does not turn on whether the pre-Policy conduct and conduct allegedly occurring during the Policy Period are part of a single plan. See, e.g., F.D.I.C. v. Mmahat, 907 F.2d 546, 553 (5th Cir. 1990) (holding attorney's conduct was separate where the loss resulted from three discrete acts of malpractice that resulted in discrete losses on several loans); Eureka Fed. Sav. and Loan Assoc. v. Am. Cas. Co. of Reading, Pa., 873 F.2d 229, 234-35 (9th Cir. 1989) ("[M]ere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with the issuance of loans to over 200 unrelated borrowers

---

[5] The Defendants rely on Magistrate Judge Dein's opinion in Gateway Group Advantage, Inc. v. McCarthy, 300 F. Supp. 2d 236 (D. Mass. 2003), as the only legal authority in support of their position. See Defs' Mem. at 3, 5-6. The Gateway decision, however, is not binding on this Court because Kentucky law controls the instant proceedings. Although Kentucky has not dealt with the precise issue at bar, Kentucky courts have interpreted similar phrases in other types of insurance contracts more narrowly than the Gateway court's more expansive interpretation. As noted in Plaintiffs' Motion, in Kentucky School Boards Insurance Trust v. Board of Education of Woodward County, Kentucky, 2003 WL 22520018, *1 (Ky. Ct. App. Nov. 7, 2003), the Kentucky Appeals Court interpreted the phrase "arising out of" narrowly, as meaning to "directly relate from," and rejected a broad construction that might encompass "but for" causation. This suggests that Kentucky courts, if faced with the issue, might reject Gateway and interpret "relate(d)" with similar constriction.

B0365991v1

into a single loss."). The D&O Complaint contains allegations, occurring during the Policy Period, that are separate and independent from pre-Policy conduct because the allegations involve conduct that required independent, intervening business decisions, which severed any chain of causation or relatedness. See Eureka, 873 F.2d at 235.

WHEREFORE, Melinda Brown and Treffle LaFleche respectfully request that this Court grant their motion for summary judgment.

                                              Respectfully submitted,
MELINDA BROWN AND TREFFLE LAFLECHE
By their attorneys,

/s/ Daniel J. Kelly
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110

Dated: June 4, 2004                                    (617) 345-7000

B0365991v1
B0360801v