UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, <br><br> Defendants. | C. A. No. 04-10685 WGY |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Melinda Brown and Treffle LaFleche (collectively "Plaintiffs" or "Insured"), respectfully submit the following Proposed Findings of Fact and Conclusions of Law with respect to their claims for a declaratory judgment and breach of contract against American International Group, Inc. and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively "Defendants" or "Insurers").

**I.**

**Proposed Findings of Fact**

1. Plaintiffs Melinda Brown and Treffle LaFleche are residents of Massachusetts. Plaintiff Melinda Brown served as a Director of Computrex, Inc. ("Computrex") from December 1999 through March 10, 2001. Plaintiff Treffle LaFleche served as a Director of Computrex from at least 1996 through November 2001. Plaintiffs are direct beneficiaries of the Officers and Directors Liability Insurance Policy at issue in these proceedings.

2.      Defendant American International Group, Inc. ("AIG") is the parent company of certain member insurance companies. See Directors and Officers Corporate Liability Policy No. 872-35-08 and Run-Off Endorsement ("D&O Policy"), at ii; Trial Exh. 2. AIG is a corporation organized under the laws of Delaware with its principle place of business in New York, New York. The Policy identifies AIG as an insurer. See D&O Policy, at i.

3.      Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") is a subsidiary member of AIG and the named issuer of a Directors and Officers Corporate Liability Policy No. 872-35-08 and Run-Off Endorsement to Computrex's officers and directors, see D&O Policy, ii, iv, which includes the Plaintiffs. National Union is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principle place of business in New York, New York.

4.      Computrex was a company based in Louisville, Kentucky and in the business of auditing freight bills prior to its involuntary petition in bankruptcy. Computrex was a Kentucky corporation when the Policy was issued, but, on July 23, 2001, the company incorporated under the laws of the state of Delaware.

5.      Computrex is currently the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington, Case No. 01-53755 (the "Bankruptcy Proceeding").

6.      On January 30, 2004, the Insureds were served with a 63-page adversary complaint (the "D&O Action") filed by the Bankruptcy Trustee. The Trustee alleges a multitude of claims against several of Computrex's former Directors and Officers. Only a portion of the allegations and causes of action in the D&O Action are specifically directed at the Plaintiffs.

B0370360v2

7.     The Trustee seeks to recover damages specifically from the Plaintiffs based on the following causes of action: (1) Breach of Fiduciary Duty to the Corporation (Count I); (2) Breach of Fiduciary Duty to Creditors (Count II); (3) Fraudulent Conveyance (Count IV); (4) Racketeer Influenced and Corrupt Organizations (Count V); (5) Negligence of the Board of Directors (Count VI); (6) Return of Shareholder Dividends (Count VIII); and (7) Common Law Fraud (Count IX).  See Adversary Complaint, Case No. 01-53755 ("D&O Complaint"), 118-133; 146-179; 194-204; Trial Exh. 1.

8.     The allegations of wrongful conduct contained in the D&O Action that serve as the basis for the foregoing causes of action are:

(a)    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, continued operating Computrex's business during insolvency based on a Ponzi scheme; see D&O Complaint, ¶¶ 121,130, 160, & 176.

(b)    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, approved a settlement with Ronald LaFleche, a former Director, on September 6, 2000; Id. ¶¶ 56, 121, 130, 148, & 176.

(c)    allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc. Id. ¶¶ 121, 130, 151, & 176.  The "spin-off" of these corporations is alleged to have occurred on March 10, 2001; Id. ¶ 87.

(d)    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly received dividends in the form of both cash and stock in connection with the "spin-off." Id. ¶¶ 121, 130, 176, & 198.  The issuance of these dividends is alleged to have occurred on March 10, 2001; Id. ¶ 87.

(e)    Allegations that the Insureds, in their capacity as members of the Board of Directors, allowed Computrex's counsel to represent both Computrex and parties having interests adverse to Computrex; Id. ¶¶ 81, 121, & 176.

(f)    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly approved bonuses to Computrex executives. Id. ¶¶ 121, 130, & 176.  The approval of bonuses is alleged to have occurred in December 2000, id. ¶ 65, July 2001, and August 2001, id. ¶ 104; and

B0370360v2

    (g)    allegations that the Insureds, in their capacity as members of the Board of Directors of Computrex, improperly received fees for their service on the Board of Directors while Computrex experienced financial difficulties. Id. ¶¶ 113, 125.

9.     The D&O Action contains allegations of wrongful conduct by the Plaintiffs that fall within the scope of the D&O Policy. These allegations include:

    (a)    allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, continued operating Computrex's business during insolvency based on a Ponzi scheme; see D&O Compl. ¶¶ 121, 130, 160, & 176.

    (b)    allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc., which is alleged to have occurred on March 10, 2001; Id. ¶¶ 87, 121, 130, 151, & 176.

    (c)    allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly received dividends in the form of both cash and stock in connection with the "spin-off." Id. ¶¶ 121, 130, 176, & 198. The issuance of these dividends is alleged to have occurred on March 10, 2001; Id. ¶ 87.

    (d)    allegations that the Plaintiffs, in their capacity as members of the Board of Directors, allowed Computrex's counsel to represent both Computrex and parties having interests adverse to Computrex; Id. ¶¶ 81, 121, & 176.

    (e)    allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly approved bonuses to Computrex executives. Id. ¶¶ 121, 130, & 176. The approval of bonuses is alleged to have occurred in July 2001 and August 2001, id. ¶ 104; and

    (f)    allegations that the Plaintiffs, in their capacity as members of the Board of Directors of Computrex, improperly received fees for their service on the Board of Directors while Computrex experienced financial difficulties. Id. ¶ 113, 125.

10.     The D&O Policy was in effect with respect to the claims set forth in the Complaint at the time the Trustee filed the D&O Action.

11.     The initial term of the D&O Policy spanned from January 1, 2001 to January 1, 2002. See D&O Policy, at ii.

4

12. In consideration for payment by Computrex of an additional $19,800, the parties executed a "Run-Off Endorsement." See D&O Policy, at Endorsement #12. Pursuant to the Run-Off Endorsement, Computrex:

> Shall have the right to a period of three (3) years following the Effective Time… in which to give written notice to the Insurer of any Claim(s) first made against any Insured(s) during said three (3) year period for any Wrongful acts occurring on or prior to the Effective Time and otherwise covered by the policy.

Id.

13. Consequently, the Insureds may make a claim under the D&O Policy until January 1, 2005.

14. The D&O Policy contains two types of coverage, A and B. See D&O Policy, at 1. Coverage A, entitled "Individual Insured Insurance," requires the Defendants to:

> [P]ay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers, or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

Id.

15. Thus, the D&O Policy obligates the Defendants to pay the Loss of each and every Director arising from a claim if the claim falls within the scope of the Policy and is properly tendered by the Insureds. See D&O Policy, at 1. The Policy also obligates the Defendants to advance the Defense Costs incurred by the Insureds defending such claims, before the claims against the Insureds are resolved, subject to certain limitations set forth in Clause 8 of the Policy. See id.

16. Clause 8 of the D&O Policy states, in pertinent part:

B0370360v2

> [T]he Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy.
>
> …
>
> Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent.
>
> …
>
> When the Insurer has not assumed the defense of the claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the even and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

Id. at 11-12.

17. In consideration for payment by Computrex of $8,932 for the initial term and $19,800 for the run-off endorsement, the Defendants assumed the risk that Insureds would make a claim on the D&O Policy and they would be required to assume the defense of or advance defense costs pursuant to such a claim.

18. Included in the definition of a "Claim" under the Policy is a "civil…. proceeding for monetary or non-monetary relief which is commenced by… the service of a complaint." See D&O Policy, at 2.

19. Included in the definition of "Loss" are "Defense Costs" which are defined as "reasonable and necessary fees, costs and expenses… resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds." See D&O Policy, at 4.

6

20. Included in the definition of "Wrongful Acts" are "any breach of duty, neglect, error, misstatement, misleading statement, omission, or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company." See D&O Policy, at 6.

21. "Related Wrongful Act" is defined as "Wrongful Acts which are the same, related or continuous, or wrongful acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action." See D&O Policy, at 4.

22. On February 6, 2004, the Insureds, through counsel, via letter properly tendered the defense of the D&O Action to the Defendants and demanded that they assume the defense of the D&O Action within the time and manner prescribed in the D&O Policy. See 2/6/04 Letter from Daniel J. Kelly ("Kelly Letter, 2/6/04"), at 1; Trial Exh. 3.

23. On February 24, 2004, counsel for the Insureds wrote to Mr. Varley notifying him that counsel would be entering an appearance on behalf of the Insureds in the D&O Action and requesting that the Defendants provide the Insured with a detailed explanation of their reasons for denying coverage under the Policy. See 2/24/04 Letter from Daniel J. Kelly ("Kelly Letter, 2/24/04"), at 1; Trial Exh. 4.

24. Mr. Varley responded to the Insureds request in a letter dated April 5, 2004. See 4/5/04 Letter from John F. Varley, III ("Varley Letter, 4/5/04"), at 1-3; Trial Exh. 5. In the letter, Mr. Varley stated that the Defendants intended to deny coverage based on the "Prior Acts Exclusion," as set forth in "Endorsement 8" of the D&O Policy. Id. at 2.

25. Endorsement #8, the "Prior Acts Exclusion," provides, in relevant part, as follows:

7

> In consideration of the premium being charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss arising from any Claim(s) alleging Wrongful Act(s) which occurred prior to the inception date of the Policy Period or after the end of the Policy Period. This policy only provides coverage for Loss arising from a Claim(s) for an alleged Wrongful Act(s) occurring on or after the inception date of the Policy period and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or Related Wrongful Act(s) shall be deemed to arise from the first such same or Related Wrongful Act.

See D&O Policy, at Endorsement #8.

26. As of June 28, 2004, the Plaintiffs have incurred $51,651.00 in defense of the D&O Action. The Plaintiffs continue to incur legal fees in connection with this action, and will continue to incur fees as said action proceeds.

## II.

## Proposed Conclusions of Law

**I. Kentucky law governs resolution of the instant proceeding.**

1. Jurisdiction in this case is based on diversity of citizenship, and a federal district court sitting in diversity applies the substantive law of the forum state, which includes the forum's choice of law tenets. Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998). Massachusetts has adopted a functional choice-of-law approach guided by the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ("RESTATEMENT"). Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631, 473 N.E.2d 662 (1985); see Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 496, 803 N.E.2d 75 (2004). Section 193 of the RESTATEMENT governs conflict of law questions involving insurance contracts. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971).

2. Kentucky law applies in this case because Kentucky is the state where the parties understood the "principal location" of the "insured risk" would be located. See id. The "insured

8

risk" was the "Loss of each … Director … for … alleged Wrongful Act[s]." See D&O Policy, at 1, Coverage A; see also Aetna Cas. & Sur. Co. v. Clasby, 788 F. Supp. 61, 64 (D. Mass. 1991) (holding the insured risk of a fiduciary responsibility policy were claims made against the Insured for wrongful acts committed by the insured). This risk was "principally located" in Kentucky because Computrex has always been located and operated in Kentucky, and the Policy expressly insures against alleged Wrongful Acts committed by Insureds while acting in their respective corporate capacities, see D&O Policy, at 1, Coverage A. See RESTATEMENT § 193 cmt. b.

**II.     The Defendants have a duty to defend under the terms of the Policy.**

3.    Clause 8 of the Policy imposes a duty upon the Defendants to defend the Plaintiffs in the D&O Action as a matter of law. Clause 8 provides, in pertinent part, that "[t]he Insurer *shall be obligated* to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent" provided the Insureds comply with certain conditions. See D&O Policy, at 11 (emphasis added).

4.    The Plaintiffs have asked this Court to enter a declaratory judgment ordering the Defendants to defend the Plaintiffs in the D&O Action pursuant to the aforementioned Clause 8 of the Policy. See Complaint ("Compl.") ¶ 1. The Plaintiffs, therefore, seek an order requiring the Defendants to defend them in the D&O Action, and not an order requiring indemnification. The distinction is relevant because the two duties are entirely separate, as the insurer's obligation under the former duty is broader and is implicated after a far more limited factual inquiry. See John Beaudette, Inc. v. Sentry Ins. a Mut. Co., 94 F. Supp. 2d 77, 100 (D. Mass. 1999).

5.    The duty to defend is implicated by the initiation of a lawsuit against an insured. Id. Moreover, this duty depends solely on the language of the allegations contained in the underlying complaint, regardless of whether the claims are meritorious. E.g., Vance v.

Cincinnati Ins. Co., 1986 Ky. App. LEXIS 1231, *6 (Ky. App. Ct. 1986) ("The duty to defend is broader than the duty to pay. … [T]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action.") (internal citations and quotations omitted); accord Beaudette, 94 F. Supp. at 100 ("The contractual duty to defend is … measured by the allegations of the underlying complaint.") (internal quotation omitted).

6. An insurer must defend an insured if the underlying complaint contains any allegations that "potentially, possibly, or might" fall within the D&O Policy's coverage. James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991). Furthermore, an insurer must undertake the defense even if the D&O Complaint contains some allegations of *excluded* conduct. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc., No. 03-20542, 2004 U.S. App. LEXIS 2694, *11 (5th Cir. 2004) ("[I]f a loss is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable.").

7. This Court holds that, as a matter of law, the D&O Complaint in the instant case contains allegations of conduct against the Plaintiffs that could fall within the Policy's coverage. These allegations include, but are not limited to, allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc., which is alleged to have occurred on March 10, 2001; Id. ¶¶ 87, 121, 130, 151, & 176. These allegations further include claims that the Plaintiffs improperly received dividends, see D&O Compl. ¶¶ 121, 130, 176 & 198, and improperly approved bonuses to Computrex executives, see id. ¶¶ 104, 121, 130, & 176, both alleged to have occurred during the Policy Period, see id. ¶¶ 87, 104.

8.      This Court also holds that the Plaintiffs' tender of defense was proper under the circumstances. The Policy provides that the tender of defense "shall be exercised in writing by the Named Entity on behalf of all Insureds…." On February 6, 2004, the Plaintiffs exercised their right to tender the defense under the Policy in a letter to the Defendants. See 2/6/04 Letter from Daniel J. Kelly, Esq., at 1. Although the letter may not adhere strictly to the Policy's exact tender requirements because it was not offered by the "Named Entity" on behalf of all the Insureds, a defective, insufficient, or untimely tender of defense does not, per se, abrogate an insurance company's duty to defend. See State Farm Mut. Auto. Ins. Co. v. Univ. Underwriters Ins. Co., 601 F. Supp. 286, 290 (S.D. Miss. 1984) (holding that an insurer upon whom there had been no demand to defend could nevertheless incur liability where it had notice of an event potentially within the policy's coverage).

9.      Kentucky law recognizes the doctrine of substantial compliance with respect to the duties owed under insurance contracts. Charter Oak Fire Ins. Co. v. Coleman, 273 F. Supp. 2d 903, 907 (W.D. Ky. 2003). The Plaintiffs February 6, 2004 letter substantially complied with the Policy's technical tender of defense requirements. See id. (holding insured substantially complied with notice provision as a matter of law by informing his local insurance agent rather than the named insurer). Under the circumstances of this case, therefore, the notice requirements were rendered meaningless when Computrex was placed into bankruptcy. The very claims for which the Plaintiffs seek a defense were brought by the successor-in-interest to the "Named Entity," i.e., Computrex. Under the circumstances, requiring Computrex to tender the defense would be irrational, elevate form over substance, and unfairly deprive the Plaintiffs of their substantive rights under the Policy.

10. Furthermore, the Defendants have not demonstrated that they were prejudiced by the Plaintiffs' purportedly defective tender of defense. See id. ("Under Kentucky law, an insurance provider must show prejudice in order to defeat liability based on a breach of a notice provision."); accord Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980) (adopting the "modern approach" to interpreting insurance contracts, which "eschew[s] [technical notice requirements] unless the insurer has been materially prejudiced by virtue of late notification"); see also Am. Mut. Liability Ins. Co. v. Beatrice Cos., Inc., 924 F. Supp. 861, 870 (N.D. Ill. 1996) (observing that, under Massachusetts law, "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim … unless the insurance company has been prejudiced thereby.").

### III. The Defendants have a duty to advance the costs incurred by the Plaintiffs in defense of the D&O Action.

11. The Policy provides, in pertinent part, that:

> When the Insurer has not assumed the defense of a Claim … the Insurer *shall advance* nevertheless, *at the written request of the Insured*, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds … in the event and to the extent that the Insureds … shall not be entitled under the terms and conditions of this policy to payment of such Loss.

See D&O Policy, cl. 8, p. 12 (emphasis added).

12. The Insurer's duty to advance costs is triggered at the written request of the "Insured" rather than at the written request of the "Named Entity." See id.

13. As a matter of law, therefore, the Policy confers the Defendants with an absolute duty to advance the costs incurred by the Plaintiffs in defense of the D&O Action, prior to any final adjudication as to coverage or as to the Plaintiffs' liability on the underlying claims when,

as here, they refuse to assume the defense of a claim and the Insureds have made a written request.

**IV.    The Prior Acts exclusion does not apply as a matter of law.**

14.    The insurer has the burden of proving the applicability of a policy exclusion. See Colker v. Ct. Fire Ins. Co., 7 S.W.2d 502, 504 (Ky. 1928). Courts construe coverage exclusions strictly against the insurer "[b]ecause coverage exclusions are contrary to the fundamental protective purpose of insurance[.]" Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 873-74 (Ky. 2002).

15.    The Prior Acts exclusion at issue provides, in part, that the Defendants are only liable:

> [F]or Loss arising from a Claim(s) for an alleged Wrongful Act(s) occurring on or after the inception date of the Policy period and prior to the end of the Policy Period and otherwise covered by this policy. *Loss(es) arising out of the same or Related Wrongful Act(s) shall be deemed to arise from the first such same or Related Wrongful Act.*

See D&O Policy at Endorsement #8 (emphasis added).

16.    The Defendants' ability to invoke this exclusion predominately turns on the meaning of "related" and/or "Related Wrongful Act(s)" as contained in the exclusion's last sentence.

17.    The Policy defines "Related Wrongful Acts," in part, as "Wrongful Acts which are the same, related or continuous[.]" See D&O Policy, at 4, Cl. 2(p). Courts construe the substantive meaning of "related" as used in other insurance-policy clauses with divergent results. E.g., Gregory v. Home Ins. Co., 876 F.2d 602, 606 (7th Cir. 1989) (interpreting whether claims were "related" in an attorney liability policy). Some courts have construed the terms "related" and/or "Related Wrongful Acts" broadly to include even relationships with a mere logical

13

connection. E.g., Gregory, 876 F.2d at 606; Gateway Group Advantage, Inc. v. McCarthy, C.A. No. 02-10322-JGD, 2003 WL 23194597, at *3-4 (D. Mass. Dec. 4, 2003). Other courts reject mere logical relationships and require a direct—or causal—connection. E.g., Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Holmes & Graven, 23 F. Supp. 2d 1057, 1069-70 (D. Minn. 1998).

18.   The term "related" cannot and does not "encompass every conceivable logical relationship" because such claims or conduct might be "so attenuated or unusual that an objectively reasonable insured could not have expected that they would be treated" as related under the policy. Brown v. Nat'l Union Ins. Co. of Pittsburgh, Pa., Civ. No. 02-4724 (DWF/SRN), 2004 U.S. Dist. LEXIS 2224, (D. Minn. Feb. 11, 2004). Key factors to be considered are whether the acts are connected by "time, place, opportunity, pattern, and most importantly, method or modus operandi." Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire and Cas. Co., 551 N.W.2d 224, 231 (Minn. 1996); see also, e.g., Sigma Fin. Co. v. Am. Int'l Spec. Lines Ins. Co., 200 F. Supp. 2d 697 (E.D. Mich. 2001) (holding sale of company products were separate where each sale involved different sales representatives and different purchasers); F.D.I.C. v. Mmahat, 907 F.2d 546, 553 (5th Cir. 1990) (holding attorney's conduct was separate where the loss resulted from three discrete acts of malpractice that resulted in discrete losses on several loans); Eureka Fed. Sav. and Loan Assoc v. Am. Cas. Co. of Reading, Pa., 873 F.2d 229, 234-35 (9th Cir. 1989) (holding the mere existence of a single "aggressive" loan policy did not "transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss").

19.   In addition to "Wrongful Acts" that are the "same, related, or continuous," the D&O Policy in this case further defines "Related Wrongful Acts" to include "Wrongful Acts which *arise from* a common nucleus of facts." See D&O Policy, at 4, Cl. 2(p) (emphasis added).

14

Kentucky courts interpret the phrase "arise from" or "arising out of" narrowly—akin to "directly results from"—and reject a broad construction that includes "but for" causation. See Ky. Sch. Bds. Ins. Trust v. Bd. of Ed. of Woodward Cty, Ky., 2003 WL 22520018, *1 (Ky. Ct. App. Nov. 7, 2003) (holding negligent hiring claim did not "arise out of" mental or emotional injury because the two allegations were not "directly related"); cf. Merchants Ins. Co. of N.H., Inc. v. USF & G, 143 F.3d 5, 9 (1st Cir. 1998) ("[U]nder Massachusetts law the phrase 'arising out of' denotes a level of causation that lies between proximate and actual causation[.]").

20. The Prior Acts exclusion does not apply in the instant case because the allegations contained in the D&O Policy do not "relate" either casually or logically to "Wrongful Acts" alleged to have occurred before the Policy Period's inception date.

21. The D&O Complaint does not clearly indicate when Computrex's directors and officers began the alleged Ponzi scheme. The complaint merely alleges that the directors and officers began to solicit funds through the mail from clients to "delay [Computrex's] financial collapse" and that this enabled the corporation to continue during insolvency. See D&O Compl. ¶¶ 74-75, ¶ 121. Even if the alleged Ponzi scheme commenced before the Policy's inception date, however, any pre-Policy Period conduct was unrelated because each solicitation was a separate and distinct act that resulted in separate and distinct losses to different Computrex customers. See Mmahat, 907 F.2d 553 (finding three acts of legal malpractice regarding legal advice all devised pursuant to a common plan "resulted in discrete losses on seven loans" and thus were unrelated); Eureka, 873 F.2d at 234-35 ("[T]he mere existence of an aggressive loan policy is insufficient … to transform disparate acts and omissions made by five directors in connection with the issuance of loans to over 200 unrelated borrowers into a single loss.").

22. The complaint alleges that Computrex's decision to "spin-off" Computrex International, Inc. and CX-IT, Inc. officially occurred on March 10, 2001, which is during the Policy Period. See D&O Compl. ¶ 87.

23. The complaint alleges the directors improperly awarded bonuses to Computrex executives in July and August 2001, which is during the Policy Period. See D&O Compl. ¶ 104. These bonus awards were not "related" to bonuses that the directors allegedly awarded in July 1999, see id. ¶ 28, and December 2000, see id. ¶ 65, before the Policy Period's inception date, because each decision by the Board to award bonuses is severable and unrelated, and, moreover, each award required separate Board action, which constituted an "intervening business decision." See Eureka, 873 F.2d at 235. The severability of each subsequent decision to award bonuses is further bolstered by the fact that the membership of Computrex's Board of Directors had changed between 2000 and 2001. See D&O Compl. ¶ 89 (noting that Computrex's Board consisted of only two members after the "spin-off").

<div style="margin-left: 50%;">
Respectfully submitted,
MELINDA BROWN AND TREFFLE LAFLECHE
By their attorneys,

/s/ Daniel J. Kelly
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110

(617) 345-7000
</div>

Dated:  June 29, 2004