UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO: 04 10685 WGY

| | |
|---|---|
| MELINDA BROWN AND TREFFLE LAFLECHE, | ) ) ) |
| PLAINTIFFS | ) ) |
| VS. | ) ) |
| AMERICAN INTERNATIONAL GROUP, INC. AND NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA | ) ) ) ) ) |
| DEFENDANTS | ) |

## DEFENDANTS' REQUEST FOR FINDINGS OF FACT

The defendants, American International Group, Inc. (AIG, Inc.) and National Union Fire Insurance Company of Pittsburgh Pennsylvania (National Union) request that the Court make the following findings of fact:

1. The National Union Directors and Officers insurance policy at issue in this case (the Policy) defines the following key terms:

> "Wrongful Act" means:
> (1) with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or employees of the Company; . . . (Policy, pg. 6).

> (p) "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action. (Policy, pg. 4).

2. The Policy also contains a Prior Acts Exclusion (Endorsement #8) which reads:

PRIOR ACTS EXCLUSION
(INCEPTION DATE OF THE POLICY PERIOD)

> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss arising from any Claim[s] alleging Wrongful Act[s] which occurred prior to the inception date of the Policy Period or after the end of the Policy Period. This policy only provides coverage for Loss arising from a Claim[s] for an alleged Wrongful Act[s] occurring on or after the inception date of the Policy Period and prior to the end of the Policy period and otherwise covered under this policy. Loss[es] arising out of the same or Related Wrongful Act[s] shall be deemed to arise from the first such same or Related Wrongful Act. (End #8).

3. The Policy defines Loss to include "Defense Costs." (Policy pg. 4). The inception date of the Policy was January 1, 2001 and by a Run-Off Endorsement (Endorsement #12) is entitled to report claims, otherwise covered, which occurred prior to January 31, 2002 up until January 31, 2005.

4. Treffle LaFleche (LaFleche) was a Director of Computrex, Inc., the Named Entity under the Policy from a date in 1996 to the filing of a bankruptcy petition in December, 2001. It appears he was also was Chairman of the Board in 1995. During that period of time, LaFleche had or should have had knowledge of all the events set out in Paragraphs 22 through 117 in the Bankruptcy Action in which the Trustee alleges that he and the other officers and directors are jointly and severally liable for all those acts and that such acts led to the demise of Computrex, Inc. constituted a raid on its coffers, and was a predicate to the filing of the involuntary bankruptcy provision by five Computrex, Inc. debtors.

5. Melinda Brown (Brown) was a Director of Computrex, Inc., the Named Entity under the Policy from a date in 1996 to a date in 2001. During that period of time, Brown had

or should have had knowledge of all the events set out in Paragraphs 22 through 117 in the Bankruptcy Action in which the Trustee alleges that she and the other officers and directors are jointly and severally liable for all those acts and that such acts led to the demise of Computrex, Inc. constituted a raid on its coffers, and was a predicate to the filing of the involuntary bankruptcy provision by five Computrex, Inc. creditors.

6. The acts allegedly performed by LaFleche and Brown or which occurred during the time each was a director as outlined in the Bankruptcy Complaint include misstatements as to the handling of funds received from clients (Par. 24), lending of funds from clients funds to Computrex Associates, Ltd. (CA) in which he was a limited partner (Par. 25) and paying from Computrex, Inc. monthly rents to CA that were some $12,000 a month above normal rental (Par.43), voting executive bonuses, declaring dividends and making insider loans including loans to LaFlech and his wife at a time Computrex, Inc. could not pay its debts (Par. 28), depleting an investment account of some $10 million beginning in August 1999 and continuing through January 2000 (Par. 32), bouncing checks on the BankOne account beginning in January 2000 (Par. 35), recognized in February, 2000 that "a major meltdown was under way" and "proper financial and management information tools were not in place (Par. 36), adopted a Restricted Stock Plan to dilute Ronald LaFleche's ownership (Par. 37), in May 2000 learned Computrex, Inc. was insolvent (Pars. 38 through 40), by June 30, 2000 learned that Computrex, Inc. had a net cash overdraft of some $16 million and a deficit net worth of some $12 million (Par. 48), knew in July 2000 that Computrex, Inc. never had retained earnings, all dividends were illegal and Computrex, Inc.'s assets were really client monies (Par. 49), by September 2000 the cash deficit was shown to be some $17 million (Par 54), in violation of Kentucky law (Par. 57)

voted to repurchase stock of Ronald LaFleche and to forgive his debt to the company in the amount of $581, 202 (Par. 56), used a pretense to avoid the appearance of a violation of Kentucky law in the repurchase of stock (Par. 60 and 61), voted bonuses in December 2000 when the Board knew of the true financial condition (Par. 65, 66 and 67), received a report from accountants in October, 2000 and again in December 2000 showing a cash deficit of $16 million, stating the accounting records were in considerable disarray and bank accounts had not been reconciled in many years and that the company was surviving on "float time" (Par. 68), the company solicited money from clients to pay other clients debts knowing the funds would be misapplied (Par. 74 and 75), proposed the spin-off--finally approved in 2001--by a memo dated December 14, 2000 (Par 76), and began a series of transactions which left Computrex, Inc. holding only the freight-pay division and the multi-million dollar cash deficit while LaFleche served as a director of both the spin-off and Computrex, Inc. (Pars. 78 through 89), thereafter there was a series of transactions between Computrex, Inc. and the spin-off designed to hide its condition (Par. 90), siphon funds from Computrex, Inc. to the new subsidiaries in which LaFleche participated (Pars. 90 to 96), also during this time in 2001 the company continued its use of funds of clients to pay debts of others (Pars. 101 through 111).

7. All acts of La Fleche or Brown which occurred after January 1, 2001 when the Policy took effect have been shown to be Related Wrongful Acts to the acts of which the Trustee complains as having occurred prior to January 1, 2001.

6. The Policy does not extend coverage to such acts and defendant has no duty to advance defense costs on behalf of La Fleche or Brown in the bankruptcy action.

7. There has been no tender of the defense of the claim to National Union by Computrex, Inc., the Named Entity thereof set out as a pre-condition to assumption of defense by National Union in the Defense Provisions of the Policy. (Policy, pg. 1 Clause, 1 and Policy, pg. 11, Clause 8).

8. AIG did not issue any policy to Computrex, Inc. and therefore has no duty to them.

9. The facts do not warrant a finding for the plaintiffs.

          The defendants,

          By their attorneys,

          FINNEGAN, UNDERWOOD,
          RYAN & TIERNEY

          /s/ John G. Ryan
          John G. Ryan
          22 Batterymarch St., 4th Floor
          Boston, MA 02109
          617-348-9200
          BBO #435560

June 29, 2004.