UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE, | ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) ) | C. A. No. 04-10685 WGY |
| AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) ) ) |  |

**PLAINTIFFS' POST-TRIAL MEMORANDUM OF LAW**

Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

Table of Contents

Page

Table of Authorities ........................................................................................... ii

1.    Overview of D&O Policies in General ...........................................................1

2.    D&O Policy at Issue in the Present Proceeding............................................8

      (a)    The Defendants are obligated to defend the Plaintiffs based upon the express
             terms of the D&O Policy at issue. ........................................................8
             i.     The D&O Policy contains a duty to defend provision...............9
             ii.    The Plaintiffs' tender of defense was proper under the circumstances. ......9
             iii.   The Defendants have a duty to defend the Plaintiffs in the D&O Action
                    because the D&O Complaint contains allegations that "potentially,
                    possibly, or might" fall within the Policy's coverage................12

      (b)    The Defendants are obligated to advance to the Plaintiffs the costs of defending
             the D&O Action prior to the final resolution of that action...................14
             i.     The Defendants duty to advance costs is triggered by the allegations
                    contained in the D&O Complaint. ..........................................14
             ii.    The "advancement" clause at issue requires the Defendants to pay Defense
                    Costs as incurred. ..................................................................15

      (c)    Neither the Trustee nor the other Insureds are necessary or indispensable parties
             under Fed. R. Civ. P. 19.......................................................................23
             i.     The Trustee and other Insureds are not "necessary."................25
             ii.    The Trustee and absentee Insureds are not "indispensable."....................31

      (d)    This Court should not make any present determination regarding whether the
             claims asserted against the Plaintiffs in the D&O Action fall within a Policy
             exclusion. ...........................................................................................34

# TABLE OF AUTHORITIES

**Cases**

Acton Co. v. Bachman Foods, Inc.,
  668 F.2d 76 (1st Cir. 1982) ................................................................................. 34

Am. Mut. Liability Ins. Co. v. Beatrice Cos., Inc.,
  924 F. Supp. 861 (N.D. Ill. 1996) ....................................................................... 12

Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,
  94 S.W.3d 381 (Ky. App. Ct. 2002) .................................................................... 20

Charter Oak Fire Ins. Co. v. Coleman,
  273 F. Supp. 2d 903 (W.D. Ky. 2003) ............................................................ 11, 12

City of Louisa v. Newland,
  705 S.W.2d 916 (Ky. 1986) ................................................................................. 20

Corabi v. CAN Ins. Cos.,
  No. C-2-87-674, 1988 U.S. LEXIS 18424 (S.D. Ohio June 21, 1988) .................... 7

Delta Fin. Corp. v. Comanduras & Assocs.,
  973 F.2d 301 (4th Cir. 1992) .......................................................................... 30, 31

Enzmeiler v. Fid. & Dep. Co.,
  No. 85-99, 1986 WL 20444 (E.D. Ky. May 13, 1986) ........................................... 7

FDIC v. Booth,
  824 F. Supp. 76 (M.D. La. 1993) ...................................................................... 7, 15

Fed. Ins. Co. v. Sheldon,
  150 B.R. 314 (S.D.N.Y. 1993) ........................................................................ 10, 11

Fight Against Coercive Tactics v. Coregis Ins. Co.,
  926 F. Supp. 1426 (D. Colo. 1996) ....................................................................... 4

Gardiner v. Virgin Islands Water & Power Auth.,
  145 F.3d 635 (3d Cir. 1998) ................................................................................ 32

Glenny v. Am. Metal Climax, Inc.,
  494 F.2d 651 (10th Cir. 1974) ............................................................................. 32

Gon v. First State Ins. Co.,
  871 F.2d 863 (9th Cir. 1989) ................................................................................. 7

In re Adelphi Comm. Corp.,
  302 B.R. 439 (S.D.N.Y. 2003) ............................................................................. 26

In re Kenai Corp. v. Nat'l Union Fire Ins. Co.,
  136 B.R. 59 (S.D.N.Y. 1992) ............................................................................. 4, 7

In re Youngstown Osteopathic Hosp. Ass'n,
  271 B.R. 544 (N.D. Ohio 2002) .......................................................................... 26

James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co.,
  814 S.W.2d 273 (Ky. 1991) ............................................................................. 4, 13

John Beaudette, Inc. v. Sentry Ins. a Mut. Co.,
  94 F. Supp. 2d 77 (D. Mass. 1999) ................................................................. 12, 13

Johnson Controls, Inc. v. Bowes,
  381 Mass. 278 (1980) ......................................................................................... 12

Little v. MCIC Indem. Corp.,
  649 F. Supp. 1460 (W.D. Pa. 1986) ....................................................................... 7

Little v. MGIC Indem. Corp.,
   836 F.2d 789 (3d Cir. 1987) ................................................................ 15

Lowy v. Travelers Prop. & Cas. Co.,
   2000 WL 526702, (S.D.N.Y. May 2, 2000) ............................... 4, 14, 35

McCuen v. Am. Cas. Co.,
   946 F.2d 1401 (8th Cir. 1991) .......................................... 7, 16, 20, 22

Md. Cas. Co. v. Chic. and N.W. Trans. Co.,
   466 N.E.2d 1091 (Ill. App. 1st Dist. 1984) ......................................... 26

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Hous. And Urban Renewal Auth.,
   2003 WL 22497996 ............................................................................ 14

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc.,
   No. 03-20542, 2004 U.S. App. LEXIS 2694 (5th Cir. 2004) ............... 13

Nat'l Union Fire Ins. Co. v. Mason, Perrin & Kanovsky,
   709 F. Supp. 411 (S.D.N.Y. 1989) ............................................... 28, 29

Nationwide Mut. Ins. Co. v. Simms,
   231 F. Supp. 787 (D.C. Md. 1964) .................................................... 26

NU-WAY ENVIRONMENTAL, INC. v. PLANET INS. CO.,
   1997 WL 462010 (S.D.N.Y. AUG. 12, 1997) ............................. 5, 17, 18

Okada v. MGIC Idemn. Corp.,
   608 F. Supp. 383, 386 (D. Haw. 1985),
   judgment aff'd in part, rev'd on alternative grounds, 795 F.2d 1450 (9th Cir. 1986),
   opinion superceded by, 823 F.2d 276 (9th Cir. 1987) ................... passim

Okada v. MGIC Indem. Corp.,
   823 F.2d 276 (9th Cir. 1987) .............................................................. 7

Owens-Illinois, Inc. v. Meade,
   186 F.3d 435 (4th Cir. 1999) ........................................................ 24, 25

PepsiCo., Inc. v. Cont'l Cas. Co.,
   640 F. Supp. 656 (S.D.N.Y. 1986) ............................................... 14, 35

Provident Tradesmens Bank & Tr. Co. v. Patterson,
   390 U.S. 102 (1968) ......................................................................... 24

Resolution Trust Corp. v. Miramon,
   No. 92-2672, 1993 U.S. Dist. LEXIS 8361 (E.D. La. May 27, 1993) ...... 7

Samples v. Cincinnati Ins. Co.,
   2003 WL 22871705 (Ky. App. Ct. 2003) ........................................... 22

State Farm Mut. Auto. Ins. Co. v. Univ. Underwriters Ins. Co.,
   601 F. Supp. 286 (S.D. Miss. 1984) ................................................. 11

Tell v. Trs. of Dartmouth Coll.,
   145 F.3d 417 (1st Cir. 1998) ........................................................ 28, 29

Transport Ins. Co. v. Ford,
   886 S.W.2d 901 (Ky. App. Ct. 1994) ................................................ 20

Vance v. Cincinnati Ins. Co.,
   1986 Ky. App. LEXIS 1231 (Ky. App. Ct. 1986) ....................... 13, 27, 35

W. Md. Ry. Co. v. Harbor Ins. Co.,
   910 F.2d 960 (D.D.C. 1990) ............................................................. 25

**Treatises**

12A Dan L. Goldwasser & Alan A. Harley, Directors' and Officers' Liability Insurance (1994) ................................................................................................................... passim
51 Joseph P. Monteleone and Nicholas J. Conca, The Business Lawyer, *Directors and Officers Indemnification and Liability Insurance: An Overview of Legal and Practical Issues* (May 1996) ...................................................................................................... passim
7 Charles Alan Wright, et al., Federal Practice and Procedure (3d ed. 2001) ...................... passim
D&O Maps, commentary on American International Group's D&O Policies ............... 6, 9, 15, 19
Insurance: Insuring Clauses and Major Provisions, LIABILITY OF CORPORATE OFFICERS AND DIRECTORS § 24.14 (2003) ............................................................................. 5
John F. Olson, et al., DIRECTOR & OFFICER LIABILITY: INDEMNIFICATION AND INSURANCE, (2003) ................................................................................................................... passim
Joseph W. Bishop II, LAW OF CORPORATE OFFICERS AND DIRECTORS: INDEMNIFICATION AND INSURANCE (FEBRUARY 2004) ......................................................................... 7
JULIE J. BISCEGLIA, COMMENT, PRACTICAL ASPECTS OF DIRECTORS' AND OFFICERS' LIABILITY INSURANCE—ALLOCATING AND ADVANCING LEGAL FEES AND THE DUTY TO DEFEND, 32 U.C.L.A. L. REV. 690 (FEBRUARY 1985) ............................................................... 4
The D&O Book, Coverage Format, at 3 (2002) .................................................................. 2, 5

**Trial Exhibits**

Tr. Exh. 1, D&O Complaint ............................................................................................ 13, 24
TR. EXH. 2, D&O POLICY ............................................................................................... passim
Tr. Exh. 3, 2/6/04 Letter from Daniel J. Kelly, Esq ............................................................ 11
Tr. Exh. 5, Varley Letter, 4/5/04 ....................................................................................... 34
Tr. Exh. 8, 3/3/04 Letter from Trustee to John Varley ........................................................ 10

## Introduction

Melinda Brown and Treffle LaFleche (collectively "Plaintiffs" or "Insureds"),

respectfully submit the following Post-Trial Memorandum of Law with respect to their claims

for a declaratory judgment and breach of contract against American International Group, Inc. and

National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively "Defendants"

or "Insurers").

## Argument

The following memorandum will: 1) set forth a general overview of Directors' and

Officers' Liability Policies ("D&O Policies"); 2) discuss the nature and construction of the

specific D&O Policy at issue; 3) argue that the Policy in dispute imposes upon the Defendants a

duty to defend, as well as a mandatory duty to advance defense costs as incurred by the Plaintiffs

in defense of the D&O Action; 4) assert that neither the Trustee in Bankruptcy nor the other

Insureds are "necessary" or "indispensable" parties under FED. R. CIV. P. 19; and 5) conclude

that this Court should order the Defendants to advance the defense costs to the Plaintiffs without

making any present determination as to whether the claims asserted in the D&O Action fall

within a Policy exclusion.

## 1.    Overview of D&O Policies in General

A brief overview of the nature and construction of D&O Policies generally will aid this

Court's analysis and resolution of the issues presented in the case at bar.  Drafters of directors'

and officers' liability insurance (hereinafter referred to as "D&O insurance") designed the

coverage to protect corporate officers and directors from certain claims asserted against them by

third-parties arising out of their service in their corporate capacity.  See 12A DAN L.

GOLDWASSER & ALAN A. HARLEY, DIRECTORS' AND OFFICERS' LIABILITY INSURANCE §

12A.01[2] (1994) (hereinafter "GOLDWASSER at __"). A copy of relevant portions is attached hereto as Exh. A. D&O insurance has been available since the late 1930s, but an appreciable demand for such insurance did not arise until the mid-1960s.[1] See id. As might be expected, the increased demand for D&O insurance has led to a corresponding increase in litigation, which has been aimed at both testing and ascertaining the language of existing policies. See id.

D&O insurance differs from other types of liability insurance, such as commercial general liability, automobile liability, and many types of property insurance, in many fundamental respects. See id. at § 12A.05[1]. First, D&O insurance policy forms are rarely standardized and wording among policies varies dramatically. See THE D&O BOOK, COVERAGE FORMAT, (2002) ("As with most aspects of D&O insurance policy language, insuring agreements are not standardized.") (hereinafter "THE D&O BOOK at__") A copy of relevant portions is attached hereto as Exh. B.[2] This fact, coupled with increased litigation, has inspired insurers to constantly revise their policy language in an effort to close any judicially-created loop-holes. See GOLDWASSER at § 12A.01[2]. Ultimately, purchasers of D&O Policies are placed at a competitive disadvantage because, without industry-wide, standardized policy language, the case law interpreting certain policies provisions is inconsistent and, as a result, insureds are unable to rely upon any type of valuable precedent that would enable them to fully understand or appreciate the scope of coverage provided, as the policy language continues to remain in a constant state of flux and is often circuitous and internally inconsistent. See THE D&O BOOK at 1. These factors all contribute to judicial findings of ambiguity among D&O policy provisions.

---

[1] The impetus for the increased demand for D&O insurance was a nationwide enhancement of shareholder derivative lawsuits, a concomitant erosion of the business judgment rule, and an increase in the use of federal securities law against corporate directors and officers. See GOLDWASSER at § 12A.01[2].

[2] The pages of THE D&O BOOK are not numbered. Numbers have been assigned for this Court's convenience.

Second, unlike other forms of liability insurance, "standard" D&O insurance, if such insurance can even be characterized as such, is comprised of two distinct types of coverage. 51 JOSEPH P. MONTELEONE AND NICHOLAS J. CONCA, THE BUSINESS LAWYER, *Directors and Officers Indemnification and Liability Insurance: An Overview of Legal and Practical Issues*, 587 (May 1996) (hereinafter "MONTELEONE at __"). A copy is attached hereto as Exh. C. See, also, e.g., Tr. Exh. 2, D&O Policy at 1, Coverage A ("Individual Insured Insurance") and Coverage B ("Private Company Insurance"). The first type of coverage, the corporate reimbursement policy, repays the corporation any money it may give its directors or officers as indemnification. See Tr. Exh. 2, D&O Policy at 1, Coverage B. The second type of coverage, and the coverage specifically at issue in the case at bar, covers the directors and officers themselves. See id. at 1, Coverage A.[3] This coverage seeks to cover and reimburse for loss, within the terms of the policy, incurred by the directors and officers, which the corporation has not indemnified and that the insured incurs through claims against them in their official corporate capacities. Under this type of coverage, the insurance company must reimburse or advance defense costs to the insured prior to the final disposition of a claim unless and until it is determined that the insured's situation or behavior falls under one of the exclusions contained within the policy.[4] See Julie J. Bisceglia, Comment, *Practical Aspects of Directors' and*

---

[3] For example, Coverage A, in the Policy at issue, provides in relevant part:

> This Policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discover Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities … except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to is final disposition.

[4] The foregoing two-part format is an outgrowth of the limitations imposed by corporate laws regarding the indemnification of corporate officers and directors. See GOLDWASSER at § 12A.05[1].

*Officers' Liability Insurance—Allocating and Advancing Legal Fees and the Duty to Defend*, 32 U.C.L.A. L. Rev. 690, 699-700 (February 1985).  A copy is attached hereto as Exh. D.

The last notable distinction between D&O insurance and other types of liability insurance concerns the insurance company's duty to defend.  Admittedly, most D&O insurance does not impose a duty to defend upon the insurer, but only the duty to reimburse or advance the costs of defense.[5]  See GOLDWASSER at § 12A.05[7].  The underlying rationale for these two separate and distinct types of defense obligations (hereinafter referred to as the "duty to pay" and the "duty to defend") is largely historical and specific to D&O insurance.  See id.  For many years, corporations did not want to relinquish defense and control of claims against them to an insurance company.[6]  See MONTELEONE at 593.  In a similar vein, insurance companies were initially disposed to giving up any defense obligation because, before the "explosion" in litigation involving directors and officers, lawsuits and defense costs were rather modest and

---

[5] As such, the duty to pay defense costs is a separate duty from the duty to defend.  See Fight Against Coercive Tactics v. Coregis Ins. Co., 926 F. Supp. 1426, 1432 (D. Colo. 1996).  The scope of an insurer's monetary obligation to an insured under the duty to defend may be more expansive than that required under their duty to pay defense costs.  Typically, under a "duty to defend" policy, the insurer has an obligation to provide a defense for *all* claims against the insureds as long as there is at least one claim against each insured that is potentially covered by the policy.  See James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991).  Thus, an insurer can refuse to defend an action only if there is *no* claim in the complaint that could conceivably be covered, and the insurer cannot recover *any* defense costs from the insured even if the ultimate judgment is based on an excluded claim.  By contrast, under a "duty to pay" policy, an insurer is obligated to pay, but is entitled to reimbursement for that portion of the costs of defense not attributable to potentially covered claims.  See In re Kenai Corp. v. Nat'l Union Fire Ins. Co., 136 B.R. 59, 64 (S.D.N.Y. 1992).  Notwithstanding this distinction, however, *both* duties are triggered by the allegations contained in the underlying complaint and, therefore, an insurer must pay an insured's defense expenses if the complaint contains *any* allegations which might bring the claims within the policy.  Lowy v. Travelers Prop. & Cas. Co., 2000 WL 526702, *2, n.1 (S.D.N.Y. May 2, 2000).  A copy is attached hereto as Exh. E.

[6] The rationale for this has been further explained as follows: traditionally, D&O policies were issued to large corporations with established relationships with their own outside counsel.  See GOLDWASSER at § 12A.05[7].  These corporations, therefore, wanted to use their own counsel in their defense.  See id.  Changing times and circumstances, however, have rendered this rationale obsolete.  In recent years, for example, smaller corporations, which often do not have their own outside counsel and which often have substantially less bargaining power vis a vis the insurance company to insist upon their own counsel, have begun purchasing these policies.  See id.  In response to this larger and more diverse market, insurance companies are now marketing D&O Policies containing a duty to defend.  See id.

insurers were able to maintain some control over defense costs by requiring that they be "reasonable and necessary." See GOLDWASSER at § 12A.05[7]. The current increase in lawsuits against directors and officers, however, has inspired some insurers to begin marketing policies with "duty to defend" provisions.[7] See id.; see also THE D&O BOOK at 15 (noting that "some D&O policy forms do contain an affirmative duty to defend").

The existence or nonexistence of a contractual duty to defend, however, has often proven secondary to the issue of primary concern to most D&O policy holders, i.e., the insurer's duty to advance and/or pay the costs incurred in defending the underlying action. See JOHN F. OLSON, ET AL., *Director & Officer Liability: Indemnification and Insurance*, § 12:25 (2003) (hereinafter "OLSON at __"). As a general rule, insurers are obligated to pay the defense costs and expenses incurred by an insured because most D&O policies include reasonable and necessary defense costs within the definition of "Loss" under the policy.[8] See INSURANCE: INSURING CLAUSES AND MAJOR PROVISIONS, *Liability of Corporate Officers and Directors* § 24.14 (2003) (hereinafter "INSURING CLAUSES at § __"); see also Nu-Way Environmental, Inc. v. Planet Ins. Co., 1997 WL 462010, *2 (S.D.N.Y. Aug. 12, 1997) ("The general rule … is that absent express language to the contrary, an insurer that does not undertake the duty to defend the insured has a duty to pay

---

[7] Mr. Goldwasser cites "The Home Insurance Group" as one insurance company that has begun to market such a policy. An example of such a provision is as follows:

> As part of and subject to the limit of liability stated in ITEM 3 of the Declarations, the Underwriter will have the right and duty to defend any **Claim** as described in INSURING AGREEMENTS (A) AND (B)(1) (and, if it is stated in the Declarations that coverage has been made available thereunder, INSURING AGREEMENT (B)(2)), even if such **Claim** is groundless, false or fraudulent.

See THE D&O BOOK at 15 (referencing Executive Risk policy). As noted infra, and discussed in greater detail in other documents previously submitted to this Court by the Plaintiffs, the Plaintiffs contend that clause 8, p. 11 of the Policy issued by the Defendants does in fact include such a duty to defend.

[8] The Policy at issue in the present proceeding, for example, defines "Loss" to include "damages … judgments, settlements, … and Defense Costs …." See Tr. Exh. 2, D&O Policy, cl. 2(k), p. 4.

the insured's defense costs as they come due."). Perhaps of little surprise, however, provisions governing the payment of Loss and, therefore, defense costs, vary greatly among prevalent policies. See MONTELEONE at 593; see also D&O MAPS, commentary on American International Group's D&O Policies, at 17 (hereinafter "D&O Maps at __") ("There is little similarity between policy forms as respects [sic] the issue of expense advancement."). A copy is attached hereto as Exh. F.[9] Some policies, for example, merely provide, either expressly or by their silence, for *reimbursement*, or payment after the fact, of defense costs as part of the general payment of Loss under the policy, while others, like in this case, provide for the *advance payment* of defense costs.[10]

Ultimately, regardless of the type of clause, the critical issue, and the issue in the case at bar, becomes *when* the insurer's obligation to pay these costs attaches. See MONTELEONE at 593. That is, must the insurer pay defense costs as they are incurred or can the insurer wait until the final disposition of the underlying claims? To resolve this issue, courts must look to the specific language of the policy provision at issue and make a determination on a case-by-case basis. While many decisions on the issue exist among state and federal jurisdictions, the decisions are split between those holding for contemporaneous payment of defense expenses and those permitting the insurer to defer making any payments until the conclusion of the underlying

---

[9] D&O Maps is a publishing company that analyzes D&O policies issued by certain D&O insurance providers. The treatise analyzes and commentates on each clause and the "standard" language used by each D&O provider. The commentary, however, makes clear that the views expressed are not a legal opinion and not necessarily concurred in by the underwriter. Although not binding on the Court, the commentary may aid this Court better understand and interpret the provisions in the D&O Policy at bar.

[10] Just as provisions governing the general payment of Loss vary, provisions governing the advancement of defense costs often differ. Some policies phrase the insurer's obligation as mandatory, while others leave the decision to the insurer's discretion. Compare, e.g., Tr. Exh. 2, D&O Policy, cl. 8, p. 12 ("[T]he Insurer *shall* advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim.") (emphasis added), with, e.g. D&O Policy for Fidelity & Deposit Company of Maryland, cl. 5(c) ("The Company *may at its option* and upon request, advance on behalf of the Directors and Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims[.]") (emphasis added).

claim.[11]  See OLSON at § 12:25, nn. 7-8.  The fact that some courts interpret virtually identical policy language in an inconsistent fashion complicates resolution of the matter even further.  See MONTELEONE at 594.

Commentators have observed that decisions regarding the payment of defense costs are occurring less frequently for several reasons.  See id.  First, many insurance companies have revised their policy language in direct response to early judicial decisions, which held that the insurer had a contemporaneous obligation to pay defense expenses as incurred.  See MONTELEONE at 595; OLSON at § 12:25.  These insurers have now adopted one of two divergent approaches.  See generally JOSEPH W. BISHOP II, *Law of Corporate Officers and Directors: Indemnification and Insurance* § 8:31 (February 2004) (hereinafter "BISHOP at § __").  The first approach is to provide that (1) the insurer has no obligation to advance defense costs, or (2) that advancement is at their option and in their discretion.[12]  See MONTELEONE at 595-96.  Conversely, the second approach is to provide that the insurer shall automatically advance defense costs to the directors and/or officers, unless such costs have been advanced by the company.  See OLSON at § 12:25.[13]

---

[11] A number of decisions have held in favor of a contemporaneous duty to pay.  See, e.g., McCuen v. Am. Cas. Co., 946 F.2d 1401 (8th Cir. 1991); Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989); Okada v. MGIC Indem. Corp., 823 F.2d 276 (9th Cir. 1987); FDIC v. Booth, 824 F. Supp. 76 (M.D. La. 1993); Little v. MCIC Indem. Corp., 649 F. Supp. 1460 (W.D. Pa. 1986).  A number of other decisions, however, have held that the D&O Insurer has no obligation to pay defense expenses at the time they are incurred.  See, e.g., Resolution Trust Corp. v. Miramon, No. 92-2672, 1993 U.S. Dist. LEXIS 8361 (E.D. La. May 27, 1993); In re Kenai Corp. v. Nat'l Union Fire Ins. Co., 136 B.R. 59 (S.D.N.Y. 1992); Corabi v. CAN Ins. Cos., No. C-2-87-674, 1988 U.S. LEXIS 18424 (S.D. Ohio June 21, 1988); Enzmeiler v. Fid. & Dep. Co., No. 85-99, 1986 WL 20444 (E.D. Ky. May 13, 1986).

[12] At least one court has stated that a policy that specifically excludes the advancement of defense costs would be unconscionable.  See Little v. MGIC Indem. Corp., 649 F. Supp. 1460 (W.D. Pa. 1986), *judgment aff'd*, 836 F.2d 789 (3d Cir. 1987).

[13] As discussed more fully, infra, the Defendants in this case have adopted the latter approach with respect to the Policy at issue.  In earlier policies, National Union "took pains" to make it clear that it had no obligation to make payment for defense costs under Coverage B, which provides for payments incurred for defense costs by the company.  See MONTELEONE at 596 (noting that Clause 9 of the National Union 1988 policy form stated that "*the Insurer assumes no duty to reimburse Defense Costs prior to the final disposition of the claim*") (emphasis in original).  In a form introduced in April 1995, which replaced the aforementioned 1988 form, National Union now

A second reason that decisions in this area are occurring less frequently is that many insurance companies have determined that the advancement of defense expenses may be mutually beneficial to the insurer and insured.  See MONTELEONE at 596.  First, often claims against an insured are not resolved until years after their inception and awaiting a final resolution of the claims would place a "tremendous financial strain" on the insured to pay the expenses and await future reimbursement.[14]  See id.  Second, if the defense costs are advanced as incurred, the parties can presumably address the reasonableness of the costs incrementally, which would become much more difficult if the process is deferred to the conclusion of the claims.  See id.  As such, both sides benefit from interim assessments of the reasonableness of the fees as they are incurred.

2.     **D&O Policy at Issue in the Present Proceeding**

(a)     **The Defendants are obligated to defend the Plaintiffs based upon the express terms of the D&O Policy at issue.**

The Defendants have argued that the D&O Policy in dispute (1) does not require them to defend the Plaintiffs in the D&O Action and (2) any duty to defend was not triggered because the Plaintiffs did not comply with the notice provisions.  The Defendants' argument, however, is premised on a narrow reading of the Policy, contrary to the Policy's express terms when viewed in its entirety, and unreasonable under the unique circumstances of this case.

---

provides for contemporaneous payment of defense expenses under all aspects of the policy.  See id. at n.113.  This point is further supported by the fact that Mr. Olson, the Senior Vice-President and Chief Underwriting Officer of National Union Fire Insurance Company, cites, in his treatise on the matter, National Union's 1995 D&O Policy form as an example of a policy that grants mandatory advancement of defense costs under all aspects of their D&O policies.  See OLSON at § 12:25.

[14] In this regard, the claims departments of most insurers have concluded that it is in their best interest to advance costs to individual directors and officers when failure to do so meant that the director and officer could not afford to mount a competent defense.  See OLSON at § 12:25.

### i.    The D&O Policy contains a duty to defend provision.

The first issue presented is whether the Policy can be interpreted to impose a duty to defend upon the Defendants.  As noted supra, changes within the D&O liability industry have encouraged an increasing number of insurance companies to include an affirmative duty to defend in their D&O Policies.  See GOLDWASSER at § 12A.05[7].  The Policy in the case at bar is one such example.  The Policy's "Declaration Page" expressly states, in bold all capital typeface, that "**THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM.**"  See Tr. Exh. 2, D&O Policy, Declarations Page.  The "certain conditions" referred to are those contained in Clauses 7 and 8 of the Policy.  See D&O Maps at 1.

Clause 8 provides, in pertinent part, that notwithstanding the prefatory language that the "Insurer does not assume any duty to defend. … [T]he Insureds shall have the right to tender the defense of the Claim to the Insurer …."  See Tr. Exh. 2, D&O Policy, cl. 8, p. 11.  The Policy concludes, in unambiguous terms, that "the Insurer *shall* be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent" provided the Insured complies with the notice requirements.  See id. (emphasis added).  Accordingly, contrary to the Defendants' contentions, the Policy does, in fact, impose a duty upon the Defendants to defend the Plaintiffs in the D&O Action, provided the notice provisions set forth in Clauses 7 and 8 are satisfied.

### ii.    The Plaintiffs' tender of defense was proper under the circumstances.

This Court should hold that the Plaintiffs' tender of defense was proper under the circumstances and therefore sufficient to trigger the Defendants' duty to defend.  The Policy's tender requirement is stated as follows: the tender of defense of a claim must be exercised "in writing, by the Named Entity on behalf of all Insureds to the Insurer" pursuant to the provisions

of Clause 7.  See Tr. Exh. 2, D&O Policy, cl. 8, p. 11.  Clause 7 provides, in pertinent part, that

either the "Company *or the Insureds* shall, as a condition precedent to the obligations of the

Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured

…."  See id. at cl. 7, p. 11 (emphasis added).

The Defendants contend that their duty to defend was not triggered because the tender

was not made by Computrex, the Policy's "Named Entity," on behalf of all the Insureds as

required by the Policy.  Contrary to the Defendants' position, however, the tender was proper

under the circumstances of this case.  As a threshold matter, this Court must view the Plaintiffs'

tender in light of the totality of the circumstances.  In this case, the Named Entity was no longer

a viable, legal entity once the Trustee filed the bankruptcy petition in December 2001, and, as

such, was rendered unable to strictly adhere to the Policy's tender requirements.  As a result, the

exact terms of the tender requirement were rendered meaningless or, at a minimum, impractical

when the Trustee filed the bankruptcy petition.

Notwithstanding the company's bankruptcy, however, the Plaintiffs' tender was still

sufficient under the circumstances.  First, the "company" complied with the Clause 7 notice

requirements when the Trustee gave the Defendants written notice of claims and provided them

with the D&O Complaint via letter dated March 3, 2004.  See Tr. Exh. 8, 3/3/04 Letter from

Trustee to John Varley;[15] see also Fed. Ins. Co. v. Sheldon, 150 B.R. 314, 316-17 (S.D.N.Y.

1993) (noting that a trustee's notice of claims sent on behalf of bankrupt company was sufficient

under D&O policy).[16]  Second, the Plaintiffs, as Insureds, complied with the spirit and meaning

---

[15] In the letter, the Trustee enclosed the D&O Complaint and notified the Defendants that the Complaint concerned an action "pending against various former directors & officers of Computrex, Inc.  See Tr. Exh. 8, 3/3/04 Letter from Trustee to John Varley.

[16] In Sheldon, Donald Sheldon & Co., Inc. ("Debtor") was a broker/dealer of securities, which was liquidated after a Securities and Exchange Commission investigation.  Id. at 316.  A trustee was appointed by the Court, who commenced an adversary proceeding against Sheldon, the Debtor's former President, for breach of fiduciary duties

of the Policy when they tendered the defense, via letter dated February 6, 2004, to the

Defendants.  See Tr. Exh. 3, 2/6/04 Letter from Daniel J. Kelly, Esq., at 1.

The Defendants argue that this tender was insufficient because it was not exercised by the

Named Entity on behalf of all the Insureds.  Under the circumstances, however, this argument

elevates form over substance and, if accepted, would unfairly deprive the Plaintiffs of their

contractually-granted substantive right to a defense.  First, it is logical, and perhaps expected,

that the individual Insureds would tender the defense either independently from or in addition to

the Trustee in this case because the Trustee was the party asserting the claims for which the

Plaintiffs now seek the Defendants to defend.  A rule requiring the Plaintiffs to wait for the

Trustee, their adversary in the underlying proceeding, to tender the defense on Plaintiffs' behalf

would be irrational.

Moreover, even if the Plaintiffs did not adhere strictly to the Policy's tender

requirements, a defective, insufficient, or untimely tender of defense does not, per se abrogate an

insurance company's duty to defend.  See State Farm Mut. Auto. Ins. Co. v. Univ. Underwriters

Ins. Co., 601 F. Supp. 286, 290 (S.D. Miss. 1984) (holding that an insurer upon whom there had

been no demand to defend could nevertheless incur liability where it had notice of an event

potentially within the applicable policy's coverage).  Instead, Kentucky law recognizes the

doctrine of substantial compliance with respect to the duties owed under insurance contracts.

Charter Oak Fire Ins. Co. v. Coleman, 273 F. Supp. 2d 903, 907 (W.D. Ky. 2003).  Both the

Trustee's notice of claims and the Plaintiffs' February 6, 2004 letter, when taken in isolation

and/or when viewed together, represent substantial compliance with the Policy's technical

---

in relation to certain securities laws violations.  Id.  The Debtor and Sheldon were both Insureds under a D&O
Policy issued by The Chubb Group.  Id.  The case supports the proposition that a trustee can give notice to an insurer
under a D&O policy because, in that case, there was no issue that the trustee's written communication of the claims
against Sheldon was sufficient.  See id. at 317-18.  The only issue was whether the notice was timely.  See id.

requirements.  See id. (holding insured substantially complied with notice provision as a matter

of law by informing his local insurance agent rather than the named insurer).

Finally, the Defendants have not demonstrated that they were prejudiced by the

Plaintiffs' purported defective tender.  See Charter Oak, 273 F. Supp. 2d at 907 ("Under

Kentucky law, an insurance provider must show prejudice in order to defeat liability based on a

breach of a notice provision."); accord Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980)

(adopting the "modern approach" to interpreting insurance contracts, which "eschew[s]

[technical notice requirements] unless the insurer has been materially prejudiced by virtue of late

notification"); see also Am. Mut. Liability Ins. Co. v. Beatrice Cos., Inc., 924 F. Supp. 861, 870

(N.D. Ill. 1996) (observing that, under Massachusetts law, "[a]n insurance company shall not

deny insurance coverage to an insured because of failure of an insured to seasonably notify an

insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence,

incident or claim … unless the insurance company has been prejudiced thereby.").  There is no

dispute that the notice and tender were timely made.  The only issue of prejudice raised at trial

was possible prejudice to the other Insureds.  This Court, however, should disregard this

argument because, by imposing a duty to defend on the Defendants, the other Insureds covered

under the Policy who also made timely demands would likewise be entitled to a Defense and the

only issue left to be resolved would be the allocation of Defense Costs under the Policy.

### iii. The Defendants have a duty to defend the Plaintiffs in the D&O Action because the D&O Complaint contains allegations that "potentially, possibly, or might" fall within the Policy's coverage.

The duty to defend is implicated by the initiation of a lawsuit against an insured.  See

John Beaudette, Inc. v. Sentry Ins. a Mut. Co., 94 F. Supp. 2d 77, 100 (D. Mass. 1999).

Moreover, this duty depends solely on the language of the allegations contained in the

underlying complaint, regardless of whether the claims are meritorious.  E.g., Vance v.

12

Cincinnati Ins. Co., 1986 Ky. App. LEXIS 1231, *6 (Ky. App. Ct. 1986) ("The duty to defend is broader than the duty to pay. … [T]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action.") (internal citations and quotations omitted); accord Beaudette, 94 F. Supp. at 100 ("The contractual duty to defend is … measured by the allegations of the underlying complaint.") (internal quotation omitted).

An insurer must defend an insured if the underlying complaint contains any allegations that "potentially, possibly, or might" fall within the D&O Policy's coverage. James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991). Furthermore, an insurer must undertake the defense even if the D&O Complaint contains some allegations of *excluded* conduct. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Liquids, Inc., No. 03-20542, 2004 U.S. App. LEXIS 2694, *11 (5th Cir. 2004) ("[I]f a loss is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable.").

This Court should hold that the D&O Complaint in the instant case contains allegations of conduct against the Plaintiffs that could fall within the Policy's coverage. These allegations include, but are not limited to, allegations relating to Computrex's decision to "spin-off" two corporations, Computrex International, Inc. and CX/IT, Inc., which is alleged to have occurred on March 10, 2001; see Tr. Exh. 1, D&O Compl. ¶¶ 87, 121, 130, 151, & 176. These allegations further include claims that the Plaintiffs improperly received dividends, see id. ¶¶ 121, 130, 176 & 198, and improperly approved bonuses to Computrex executives, see id. ¶¶ 104, 121, 130, & 176, both alleged to have occurred during the Policy Period, see id. ¶¶ 87, 104.

    **(b)**      **The Defendants are obligated to advance to the Plaintiffs the costs of defending the D&O Action prior to the final resolution of that action.**

The second issue concerns the Defendants' duty to pay Defense Costs.  As noted, the Defendants' duty to pay is separate from their duty to defend.  Resolution of this issue requires this Court to (1) analyze the standard that triggers a duty to pay, (2) identify the type of clause at issue, and (3) analyze that clause to determine when the Defendants' duty to pay attaches.

    **i.**      <u>**The Defendants duty to advance costs is triggered by the allegations contained in the D&O Complaint.**</u>

This Court should hold that the Defendants' have a duty to advance the Defense Costs incurred by the Plaintiffs in defending the underlying action.  A threshold issue is the standard that this Court must rely upon to assess the Defendants' duty to pay Defense Costs.  Courts have held that the insurer's duty to advance costs is triggered by the same mechanism that triggers the insurer's duty to defend.  <u>E.g.</u>, <u>Lowy v. Travelers Prop. & Cas. Co.</u>, 2000 WL 526702, *2, n.1 (S.D.N.Y. May 2, 2000) (citing <u>PepsiCo., Inc. v. Cont'l Cas. Co.</u>, 640 F. Supp. 656, 660 (S.D.N.Y. 1986) (applying standard that governs duty to defend to a case that concerns only payment of defense expenses)).  That is, "[a]n insurance company is required to pay an insured's defense expenses if the complaint contains any allegations which bring the claim even potentially within the protection purchased."  <u>Lowy</u>, 2000 WL 526702, *2 (internal quotation omitted); <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Hous. And Urban Renewal Auth.</u>, 2003 WL 22497996, *5 (Guam. Terr. Nov. 4, 2003) ("In determining whether National Union was required to pay defense costs, we review the allegations in the third-party complaint and compare it with the coverage afforded under the Policy.  If the allegations in the underlying complaints stated a claim for which there was a possibility of coverage under the Policy, National Union was obligated to pay defense costs.").  A copy of <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Hous. And Urban Renewal Authority</u> is attached hereto as <u>Exh.</u>

G.  As noted <u>supra</u>, the D&O Complaint in this case contains ample facts and allegations which might, potentially, or arguably bring the claims within the Policy's coverage.  Accordingly, the Defendants have a duty to pay and, therefore, the central issue before this Court is *when* the Defendants' duty attaches.

### ii.      The "advancement" clause at issue requires the Defendants to pay Defense Costs as incurred.

The Policy at issue contains an "advancement" clause that requires the Defendants to pay Defense Costs as incurred.  Jurisdictions are split between those holding for contemporaneous payment of defense expenses and those permitting the insurer to defer making any payments until the conclusion of the underlying claims.  This split is due in large measure to the fact that "advancement provisions" vary considerably from policy to policy, <u>see</u> D&O Maps, at p. 1, and, in making their determination, courts must look to the terms of the specific policy at issue and the facts of each particular case, <u>see</u> <u>Fed. Dep. Ins. Corp. v. Booth</u>, 824 F. Supp. 76, 80 (M.D. La. 1993).  Notwithstanding the lack of uniformity among provisions, advancement clauses generally fall within one of the following three categories: (1) clauses that require contemporaneous advancement; (2) clauses that give the insurer the option to advance; and (3) clauses that are silent as to advancement.  <u>See</u> INSURING CLAUSES at § 24.14; D&O Maps at 16-17.

Many advance provisions are "option" clauses.  <u>See</u> D&O Maps at 17; <u>see, e.g.</u>, <u>Little v. MGIC Indem. Corp.</u>, 836 F.2d 789 (3d Cir. 1987) (finding ambiguities in the policy's attempt to give the insurer an "option" to reimburse expenses and interpreting the policy to require contemporaneous reimbursement of defense costs); <u>Okada v. MGIC Idemn. Corp.</u>, 608 F. Supp. 383, 386 (D. Haw. 1985), <u>judgment aff'd in part, rev'd on alternative grounds</u>, 795 F.2d 1450 (9th Cir. 1986), <u>opinion superceded by</u>, 823 F.2d 276 (9th Cir. 1987) (holding the existence of an

express clause giving the insurer the option to advance defense costs did not preclude the existence of a mandatory obligation to pay expenses as incurred and before the final disposition of the underlying claim).

In Okada, the primary issue was whether an insurer had to pay the attorneys' fees that the directors and officers incurred in defending an underlying action pursuant to the D&O policy. Okada, 608 F. Supp. at 385. The policy's definition of "loss" included the "defense of legal actions, claims or proceedings," but did not expressly provide when the insurer was obligated to pay "loss." Id. The insurer argued that it was not obligated to pay legal fees when billed, as alleged by the insureds, but only after final judgment or settlement. Id.

In support of its argument, the insurer relied on the following "option" clause:

> The Insurer *may at its option and upon request*, advance on behalf of the Directors and Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to the disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

Okada, 608 F. Supp. at 386 (emphasis added). The court, however, held in favor of the insureds and found that the legal fees were payable when they were incurred because the fees were "losses" within the meaning of the policy, notwithstanding that the policy did not state when losses were to be paid. Id. Moreover, the court found that application of the option clause, on the facts presented, created an ambiguity in the policy, which must be construed against the insurer as the drafter of the policy.[17] Id.

---

[17] Courts from other jurisdictions have similarly interpreted "option" clauses to require advance payment of fees contemporaneously on grounds that reading the "option" language in connection with other policy provisions creates an ambiguity and that denying advancement would frustrate the reasonable expectations of the insured. E.g., McCuen v. Am. Cas. Co., 946 F.2d 1401, 1407 (8th Cir. 1991).

The balance of D&O policies appear to fall within the third category of policies that are completely silent with respect to the advance payment of expenses and defense costs.  See, e.g., Nu-Way, 1997 WL 462010, *2.  In Nu-Way, the court interpreted a "Contractor's Pollution Legal Liability" insurance policy.  Nu-Way, 1997 WL 462010, *1.  The policy provided that the insurance company would indemnify the insureds for "loss," which included, inter alia, "costs, charges, and expenses incurred in the … defense of claims for [] compensatory damages."  Id. The insurance company argued that it did not have to pay the insurer's defense costs as incurred, but rather only after the covered claim was finally adjudicated or settled.  Id. at *2.  The court rejected the insurance company's argument, however, and held that "where the insurance policy … provides for payment of defense costs, and is silent as to the timing of payment of such costs, the insurer has a duty of contemporaneous payment of defense costs."  Id.

This Court should hold that the Policy in the case at bar requires the Defendants to advance Defense Costs to the Plaintiffs as they are incurred in defense of the D&O Action.  The Policy states, in pertinent part, that:

> When the Insurer has not assumed the defense of a Claim … the Insurer *shall advance* nevertheless, at the written request of the Insured, Defense Costs *prior to the final disposition of a Claim*.  Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

See D&O Policy, cl. 8, at 12.

This clause is neither optional nor silent with respect to the Defendants' duty to advance Defense Costs.  Rather, the clause is unambiguous and unequivocal in stating that the Defendants *must* advance Defense Costs to the Plaintiffs before the underlying action is resolved.[18]  This

---

[18] The Defendants do not dispute that the Plaintiffs provided the requisite "written request" for advance payment of said costs.

language is stronger and goes one step further than the polices at issue in Okada and Nu-Way because the verbiage does not leave advancement to the insurer's discretion, see Okada, and is not silent as to payment of Defense Costs, see Nu-Way. Rather, this particular clause expressly abrogates the Defendants' right or discretion to withhold the payment of costs.

Further support exists for the Plaintiffs' argument that the clause at issue requires the Defendants to advance Defense Costs before the underlying dispute is resolved. First, this Court should look to the historical evolution of these provisions in D&O policies in general. Prior to Okada, supra, D&O insurers were largely successful in arguing that they had no duty to advance defense costs until their liability under the policy was finally determined. See INSURING CLAUSES at § 24.14. In response to Okada and its progeny, however, insurers took affirmative steps to clarify their policies. Three approaches emerged: (1) some *insurers chose* to state expressly that the insurer had no obligation to advance defense costs, (2) other *chose* to provide that advancement of defense costs was at the insured's option and, perhaps most notably, (3) *some insurers* began to create automatic advancement provisions under the rationale that the Okada decision accurately reflected the expectation and needs of the individual directors and officers.[19] See OLSON at § 12:25. The clause in the case at bar is an example of the third approach. See id.

Second, as noted supra, Mr. Olson, the Senior Vice-President and Chief Underwriting Officer of National Union, cites the exact language from the clause in the Policy at issue as an example of the great lengths that some insurance companies have taken, post Okada, to ensure directors and officers receive defense costs as incurred. See id. Finally, D&O Maps, in its

---

[19] The emphasis is intended to further highlight the fact that the insurance companies were the parties having control over and making the policy changes.

commentary on this exact Policy, states that the "policy *promises* to pay Loss on behalf of the Insureds, and also provides for payment of defense costs *as they are incurred*."  D&O Maps, at 2 (emphasis added).

The Defendants have focused this Court's attention to the paragraph immediately following the aforementioned advancement provision for support of their argument that they do not have to "advance" Defense Costs unless they "consent" to the costs beforehand.  The relevant clause states:

> The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer.  Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy.  The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.

See D&O Policy, cl. 8, at 12.

Plaintiffs have been unable to find any case law that expressly discusses the interrelation between the "advance" and "consent" clauses now before this Court.[20]  Nevertheless, this Court should disregard the Defendants' interpretation of these two clauses because it renders the Policy—when viewed, as it should be, in its entirety—ambiguous, irrational, and internally

---

[20] At trial, the Court expressed its concern over reconciling these facially inconsistent "advance" and "consent" clauses and, therefore, requested that the parties submit Post-Trial Memoranda with further briefing on the issue. The paucity of case law discussing these exact clauses in the same policy should suggest that these clauses are rarely used within the same policy or for the same purpose and, therefore, are, perhaps, internally inconsistent.  In an attempt to aid this Court's analysis of the Policy, however, the Plaintiffs offer the following historical rationale for why "consent" clauses are generally included in an attempt to demonstrate their inapplicability to mandatory, advance clauses such as the one at issue here.  Conversely, the Defendants have relied upon a narrow reading of the Policy by focusing solely on the language of the consent clause without offering any explanation on how the consent clause may or may not be related to the mandatory advancement clause.

inconsistent with the plain meaning of the words "advance," "repaid," and "consent." See Transport Ins. Co. v. Ford, 886 S.W.2d 901, 905 (Ky. App. Ct. 1994) ("A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."); see also City of Louisa v. Newland, 705 S.W.2d 916, 919 (Ky. 1986) ("Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible.").  As a result of the ambiguity, this Court should construe the Policy against the Defendants, and the Defendants' interpretation should be rejected as contrary to the parties' reasonable expectations. See McCuen, 946 F.2d at 1407 (interpreting option clause to require advance payment of fees contemporaneously on grounds that reading the clause in connection with other policy provisions creates an ambiguity and that denying advancement would frustrate the reasonable expectations of the insureds).

The consent clause does not apply to the advancement clause in the instant case because the consent clause serves an entirely different purpose and this purpose is best understood in light of the historical evolution and context of D&O policies generally.  See generally Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. App. Ct. 2002) ("Where a contract is ambiguous … a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties.").  Historically, D&O insurers have manifestly disclaimed any duty to defend.  See GOLDWASSER at § 12A.05[7].  Insurers, however, have found it necessary to include safeguards to retain some control over the litigation because "Loss" is defined to include "Defense Costs."  See OLSON at § 12:24.  In order to control Defense Costs, therefore, many policies include "consent" provisions as one mechanism to retain

control over the litigation and the fees incurred in connection with the defense of the underlying litigation.  See id.

For all intents and purposes, therefore, inserting such consent provisions essentially represents the insurance industry's attempt to carve out, or retain, a "de facto" duty to defend because, by requiring prior written consent, insurers can exercise a degree of control over the litigation while simultaneously avoiding responsibility for paying defense costs if it is ultimately determined that there is no coverage under the Policy.  Without such a provision, insureds would arguably be free to incur excessive Defense Costs which would qualify as Loss and for which the insurer would not be entitled to any reimbursement.  When viewed from this perspective, therefore, the consent clause is exposed primarily as a safeguard or mechanism for the insurance industry to maintain an association in the defense of the underlying litigation for the ultimate purpose of keeping "Loss" reasonable, and not to address the advancement of Defense Costs which do not yet qualify as "Loss" because they are subject to repayment.

Second, the consent clause is inapplicable to the advancement clause because advancing Defense Costs subject to repayment is a concept that is separate, distinct, and mutually exclusive from "consenting" to defense costs.  The stark distinction between the advance clause and the consent clause is exposed when one examines the plain meaning of the words "advance," "repaid," and "consent" as used in each provision.  An "advance" is defined as "supply[ing] or furnish[ing] in expectation of repayment," see MERRIAM-WEBSTER DICTIONARY, and is synonymous with a temporary disbursement of funds over which the insured does not have legal title.  Thus, an advance lacks finality because it may ultimately be determined not to qualify as Loss.[21]

---

[21] The Okada court also noted the lack of finality in an advance.  The court stated that an advance is "intended to cover payment and recovery of defense costs in cases where the initial claim rested on dubious grounds and the facts

21

"Consent," on the other hand, is defined as the giving of "assent or approval," and represents the insurer's complete waiver of its right to funds. The giving of consent, therefore, would place finality on the advance. Reading the Policy as requiring the insurer's "consent" to a mandatory "advance," however, creates an inherent inconsistency between the two provisions because the insurer relinquishes any "expectation of repayment" once it "consents" to the payment. Such a reading renders the portion of the advancement provision concerning "repaying" the funds to the insurer wholly unreasonable because if the Defendants are required to consent, i.e., give up their right to defense costs, there would be no situation pursuant to which the Plaintiffs would have to "repay" such costs. Cf. Samples v. Cincinnati Ins. Co., 2003 WL 22871705, *4 (Ky. App. Ct. 2003) ("[Courts] are required to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion.") (internal quotation omitted).

Moreover, interpreting the Policy in this way does not prejudice the Defendants and comports with the Plaintiffs' reasonable expectation of coverage under the Policy. See McCuen, 946 F.2d at 1407 (interpreting option clause to require advance payment of fees contemporaneously on grounds that reading the clause in connection with other policy provisions creates an ambiguity and that denying advancement would frustrate the reasonable expectations of the insureds). If the history of D&O insurance is any indication, the Defendants are likely primarily concerned that they will have no control over the Defense Costs if this Court does not interpret the Policy to require their consent to costs before making any advancements. This concern, however, is unwarranted under the circumstances of this case and the terms of the Policy. The fact that the Plaintiffs must repay a portion of any Defense Costs ultimately

_____

ultimately established indicate[] that coverage d[oes] not exist …." Okada, 608 F. Supp. at 386. Thus, an advance may ultimately not qualify as a Loss.

determined not to be covered is itself a protection afforded to the insurers under the Policy and, therefore, any additional protection that the Defendants may gain pursuant to the "consent" requirement is unnecessary.

Finally, even if this Court chooses not to disregard the consent clause and attempts to reconcile the two clauses, the clause should not be construed to permit the Defendants to withhold consent from advancing the Plaintiffs' Defense Costs in the D&O Action. The consent clause does not give the Defendants an absolute right to withhold consent of Plaintiffs' Defense Costs. See Tr. Exh. 2, D&O Policy, cl. 8, at 12. To the contrary, the clause expressly requires that the Defendants' consent "shall not be unreasonably withheld." See id. Plaintiffs contend that it would be unreasonable to withhold consent from advancing Defense Costs pursuant to a non-discretionary, mandatory advancement provision. This argument is bolstered by the fact that the Plaintiffs are not asking the Defendants to consent to, i.e., accept, the costs and relinquish a right to reimbursement if and when the Claims are found not to be covered under the Policy. Rather, the Plaintiffs merely seek to enforce their right to what amounts to a contingent advance of Defense Costs incurred subject to the Defendants' right to reimbursement.

    **(c)**    **Neither the Trustee nor the other Insureds are necessary or indispensable parties under FED. R. CIV. P. 19.**

The D&O Policy at issue insures, inter alia, individuals who served as directors and/or officers of Computrex during the Policy Period, see Tr. Exh. 2, D&O Policy, cl. 2(i), at 3 (defining "Individual Insured(s)"), as well as the Company, see id. cl. 2(j), at 4 (defining "Insured(s)"). The only persons falling within that category, who are not parties to the instant proceeding, are Milton Cleve Collins, Edward Lindquist, and the Trustee in Bankruptcy.[22] The

---

[22] Collins and Lindquist are the only other Insureds named in the D&O Complaint against whom the Trustee has brought claims based on conduct alleged to have occurred during the Policy Period. See Tr. Exh. 1, D&O

Defendants have argued, rather obliquely, that these absentee Insureds are necessary and/or indispensable to the instant proceedings pursuant to FED. R. CIV. P. 19 (the "Rule"). The Defendants, however, have not offered any legal justification or support for their argument, other than that they are necessary simply by virtue of their status as parties to the insurance contract. Contrary to the Defendants' argument, and as discussed herein, neither the Trustee nor the other Insureds are necessary or indispensable within the meaning of the Rule.

Rule 19 governs the joinder of persons necessary for the just adjudication of an action. See FED. R. CIV. P. 19. The question of joinder under the Rule has arisen in a variety of cases involving insurance claims. 7 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1618, p. 290 (3d ed. 2001) (hereinafter "WRIGHT at § __"). Courts resolve the issue on a case-by-case basis, and in the context of the particular litigation. Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102 (1968) ("Whether a person is 'indispensable' … can only be determined in the context of particular litigation.").

Regardless of the particular context, however, under the Rule, the Court must determine first whether a party is "necessary" and second whether the party is "indispensable." See WRIGHT at § 1604, p. 39. The first inquiry involves an analysis of "whether a party is necessary to a proceeding because of its relationship to the matter under consideration" pursuant to section (a). Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). If the party is deemed "necessary," the Court will order the party to join the action. Id. When a necessary party cannot be joined because, for example, the party is not subject to service of process, the Court must then determine whether the proceeding can continue in the party's absence, or whether the party is "indispensable" pursuant to section (b). Id. If the party is deemed "indispensable," the Court

---

Complaint, ¶¶ 10, 14-15. These individuals are not Massachusetts residents, and the D&O Complaint makes no reference to any contacts that the individuals may have with the Commonwealth. See id.

may order the action dismissed, but "only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Id. (noting that courts are "loathe" to dismiss cases based on non-joinder of a party). Ultimately, the party raising the defense of failure to join a necessary party bears the burden of demonstrating that the absentee is in fact needed for a just adjudication of the dispute. WRIGHT at § 1609, p. 129.[23]

### i.    The Trustee and other Insureds are not "necessary."

This Court should find that the Defendants have not met their burden of demonstrating that the Trustee and/or other Insureds are necessary to the instant proceeding because the Plaintiffs seek limited relief that depends on specific allegations against them.[24] Section (a) sets forth several factors relevant to the initial decision of whether an absentee should be joined. WRIGHT at § 1604, p. 38 ("There is no precise formula for determining whether a particular nonparty must be joined under [the] Rule[.]"). Under section (a), a party is necessary only if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).

---

[23] Accordingly, this Court must engage in the following analysis: (1) whether the absentee is necessary and, thus, should be joined; (2) if the absentee should be joined, whether the absentee can be joined; and, finally, (3) if the absentee cannot be joined, whether the lawsuit should proceed nonetheless. W. Md. Ry. Co. v. Harbor Ins. Co., 910 F.2d 960, 961 (D.D.C. 1990) (Thomas, J.).

[24] The Court need not reach the "indispensability" issue should it find that the absentee Insureds are not "necessary" under section (a). See WRIGHT at § 1604, pp. 40-41; § 1607, p. 84 ("Of course, if the absentee is not found to be a person whose joinder is desirable under Rule 19(a), the court need not engage in the Rule 19(b) analysis.").

In this case, the Trustee and the absentee Insureds are not necessary for the following reasons.[25]  First, as the aforementioned text suggests, the Rule does not state that an absentee is per se necessary simply by virtue of the fact that they are a party to an insurance contract.  <u>See id.</u>; <u>see also</u>, e.g., <u>Nationwide Mut. Ins. Co. v. Simms</u>, 231 F. Supp. 787, 792 (D.C. Md. 1964) (holding insured named in automobile-liability policy was not indispensable to a declaratory-judgment action to determine whether the driver was an additional insured); <u>Md. Cas. Co. v. Chic. and N.W. Trans. Co.</u>, 466 N.E.2d 1091 (Ill. App. 1st Dist. 1984) (allowing insurer to litigate coverage issue with respect to an additional insured without requiring joinder of an absentee insured).  Rather, and to the contrary, section (a) establishes a practical framework for the Court to consider, with no one factor as dispositive.  <u>See</u> WRIGHT at § 1601, p. 16 ("Pragmatic considerations are controlling[.]").  The factors, therefore, are not exclusive, and the Court must balance the rights of the absentees as well as the parties to the litigation.  <u>Id.</u> at § 1602, pp. 20-21.

Second, this Court can grant complete relief among the existing parties.  The Plaintiffs stress the specific nature of the relief that they request and the limited inquiry this Court must entertain to make the determination.  The Plaintiffs simply seek a judicial determination as to whether the Policy issued by the Defendants requires the Defendants (1) to defend *the Plaintiffs* in the D&O Action and/or (2) to advance Defense Costs as they are incurred in defense of that

---

[25] The majority of the Plaintiffs' analysis of this issue will focus on whether Collins and Lindquist should be joined, and not on the Trustee.  The Trustee is not a necessary party because the Trustee possesses *no* interest in the current proceeding.  The Trustee is the plaintiff and not a defendant in the D&O Action, and he asserts no claims against the Defendants for Defense Costs or indemnification.  Courts generally hold that D&O policies are property of a bankrupt corporation's estate only when the policy provides indemnity and entity coverage.  <u>E.g.</u>, <u>In re Adelphi Comm. Corp.</u>, 302 B.R. 439 (S.D.N.Y. 2003) (noting that D&O policy was property of estate because policy proceeds could provide a source of funding for the debtor's reorganization).  Although the D&O Policy in this case does provide such coverage, <u>see</u> <u>Tr. Exh.</u> 2, D&O Policy, Coverage B, the sole issue before the Court involves liability coverage for the directors and officers under Coverage A, and, therefore, the bankruptcy estate will not be affected by this Court's ruling.  <u>See</u> <u>In re Youngstown Osteopathic Hosp. Ass'n</u>, 271 B.R. 544, 550-51 (N.D. Ohio 2002) (noting the distinction between the individual liability and the reimbursement portions of a D&O policy).  As such, the Policy is not property of the bankruptcy estate and, therefore, the Trustee is not a necessary party.

action. The first prayer is entirely specific to the parties named in the current proceeding, and the second, although the absentees could arguably benefit from a favorable ruling, does not require their presence.

To make the first determination, for example, the Court must look solely to the allegations in the D&O Complaint that are directed at *the Plaintiffs'* conduct. See Vance, 1986 Ky. App. LEXIS 1231, at *6 (noting that the Court must examine the language in the underlying complaint when resolving duty to defend issues). This Court, therefore, need not (and should not) concern itself with any allegations made against the absentee Insureds because those claims are irrelevant to whether the D&O Complaint contains allegations of *the Plaintiffs'* conduct that might fall within the Policy's coverage and require the Defendants to provide a defense. This point is bolstered by the Policy's express terms, which provide that the conduct of one Insured "shall not be imputed to any other Insured" for purpose of determining the applicability of the "Personal Profit" and "Crime/Fraud" exclusions. See Tr. Exh. 2, D&O Policy, cl. 4, p. 6. The presence of the absentee Insureds, therefore, will complicate the Court's task by needlessly adding allegations that cloud the issue concerning the Plaintiffs' conduct.

Moreover, the second prayer, i.e., the advancement of Defense Costs, is an issue of contract interpretation, which this Court will resolve as a matter of law and, therefore, the absentee parties are not necessary to grant relief. Hence, in this case, the conduct or presence of the absentee Insureds is extraneous, tangential, and not necessary to the narrow issues before the Court and the limited inquiries required to resolve those issues.

Third, the absentee Insureds are not necessary parties because they have the same interest with respect to the Plaintiffs' claims for an order that the Defendants must advance Defense Costs. A named insured is not a necessary party when other named insureds under the policy

27

adequately represent the absentee named insured. Nat'l Union Fire Ins. Co. v. Mason, Perrin & Kanovsky, 709 F. Supp. 411, 414 (S.D.N.Y. 1989); see also Tell v. Trs. of Dartmouth Coll., 145 F.3d 417, 419 (1st Cir. 1998) ("If an absent party's interests are the same as those of an existing party, and the existing party will adequately represent those interests, this bears on whether the absent party's interest will be impaired by its absence from the litigation.").

In Mason, National Union, the insurer, brought an action seeking to rescind a lawyer's professional liability insurance policy. Mason, 709 F. Supp. at 413. The policy at issue named seven individuals and the law firm as "Insureds." Id. One of the Defendant-Insureds moved to dismiss the action on grounds that National Union failed to join other Insureds who were indispensable parties to the proceeding. Id. The Defendant argued that the absentee's presence was necessary because if National Union was successful, the Policy would be invalid and the insurer would owe no duty to defend the other insureds. See id.

The Mason court rejected the Defendant's argument, however, and held that the absentee Insureds were not necessary parties because they "[had] no interest or argument different from the present defendants with respect to the coverage of the policies." Id. at 415. The court noted that several courts have held that an absentee's interests are adequately represented where the existing defendants raise arguments that the absent party would raise. Id. at 414. Thus, even though the absentee's interest under the policy might be affected by the Court's ruling, they were not necessary because those interests were sufficiently analogous to the named Insureds' interests. See id. Thus, the Mason court read the language in the Rule dealing with whether the absentee's absence may be impaired or impeded "*as a practical matter*" rather expansively. See id.[26]

---

[26] Interestingly, in Mason, National Union, the named Defendant in the case at bar, argued just the opposite of the argument they currently make to this Court, i.e., that the absentee Insureds were not necessary parties.

In this case, the Plaintiffs' interests are in perfect identity with the absentee Insureds with respect to the relief requested by the Plaintiffs.  See Tell, 145 F.3d at 419 (noting that "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party").  Preliminarily, the absentee Insureds should not derive any legitimate interest in whether the D&O Complaint alleges *any* facts that might oblige the Defendants to provide a defense *to these Plaintiffs*.  That determination, as noted supra, is specific to the Plaintiffs and irrelevant to the absentee Insureds.  Nevertheless, the absentee Insureds could be incidentally affected by this Court's ruling with respect to whether the Defendants owe a general duty to defend under the Policy, and, moreover, whether they are obligated to advance Defense Costs as incurred.

Like in Mason, the Plaintiffs adequately represent the absentee Insureds on both points.  Both the absentees and the Plaintiffs would prefer a finding that the Defendants have a general duty to defend under the terms and provisions of the Policy.  Similarly, both the absentees and the Plaintiffs would prefer a finding that the Defendants have an absolute, mandatory duty to advance Defense Costs as incurred.  Accordingly, like in Mason, the absent Insureds have no interest or argument different from the present Plaintiffs with respect to these limited requests for relief.  Mason, 709 F. Supp. at 415.

Moreover, practical concerns and policy matters should direct this Court to this result.  A rule requiring the presence of all named insureds to a policy would be burdensome and superfluous when, as in this case, the litigation seeks to determine the rights of one class of Insureds.  This rationale becomes evident on the facts of this case when the absentee's presence would needlessly complicate the dispute and when the absentee insureds have the exact same interests at stake as the party insureds.

Finally, the Defendants will likely argue that they will be susceptible to incurring double, multiple, or inconsistent obligations if the absentee Insureds are not joined. See FED. R. CIV. P. 19(a)(2)(ii). They will likely argue that if this Court orders them to advance Defense Costs to the Plaintiffs, those proceeds will deplete the proceeds available to the absentee Insureds to the extent that the D&O Claims against the absentee Insureds are covered under the Policy. Admittedly, "[w]hen a particular fund or property right is involved in litigation, federal courts must be especially sensitive to the danger of contradictory judicial orders relating to that fund or right." WRIGHT at § 1618, pp. 274-75; e.g., Delta Fin. Corp. v. Comanduras & Assocs., 973 F.2d 301, 305-06 (4th Cir. 1992) (holding that in suits arising out of disputes between multiple claimants to a common fund, all such claimants must be joined if feasible). These concerns are not present in the instant case.

In Delta, a limited partner, Delta, brought suit against a general partner seeking dissolution of the partnership. Delta, 973 F.2d at 302-03. Delta, however, did not name a third party, Timothy Cranch, to the action. Id. at 305. Delta contended that Cranch was not a necessary party because, it was argued, he did not qualify as a limited partner under the partnership agreement and, therefore, he did not possess any interest in the partnership. Id. The court disagreed with the Delta's argument and held that Cranch must be joined to the dispute. Id. The court noted that, although Cranch's status as a limited partner was disputed, he was necessary to the present action if it was found that he was in fact a limited partner because the partnership agreement provided that upon dissolution of the partnership each partner was entitled to a share of the distributions. Id. The court's holding was premised upon the fact that Delta sought an order to compel the liquidation of the "common, finite properties which are the

30

partnership assets" and that Cranch's joinder was necessary because any liquidation would be final and Cranch's interest in those funds would be irrevocably lost. <u>See</u> <u>Delta</u>, 973 F.2d at 306.

Unlike in <u>Delta</u>, these concerns, however, are not present in the instant case because the Policy expressly provides that any advanced payments by the Insurer to the Plaintiffs must "be repaid to the Insurer … severally according to *their respective interests,* in the event and to the extent that the Insureds … shall not be entitled under the terms and conditions of [the] policy …." <u>See</u> <u>Tr. Exh.</u> 2, D&O Policy, cl. 8, p. 12 (emphasis added). Hence, this Court can afford complete relief in this case because any advanced payment to which the Plaintiffs are subsequently found not to be entitled to will be repaid and reallocated among the remaining absentee Insureds should the absent parties make a similar demand on the Defendants. Accordingly, this Court should find that the absentee Insureds are not necessary to the present proceeding and make a present ruling on the Plaintiffs' prayers for relief.

### ii.    The Trustee and absentee Insureds are not "indispensable."

If this Court determines that the Trustee and absentee Insureds are necessary under section (a), the next question this Court must address is whether they are "indispensable" under section (b).[27]

In determining whether a party is indispensable, the Court must engage in highly deferential "equity and good conscience" analysis. <u>See</u> Fed. R. Civ. P. 19(b). This analysis requires the Court to consider the following four factors:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief,

---

[27] As noted <u>supra</u>, note 21, the absentee Insureds are not Massachusetts residents and the Defendants have offered no evidence of sufficient minimum contacts such that they are subject to service of process. This fact, however, does not alter the Court's analysis of the "indispensability" prong of Rule 19. <u>See</u> Fed. R. Civ. P. 19(b) ("If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it …."); <u>see also</u> Wright at § 1607, p. 84.

> or other measures, the prejudice can be lessened or avoided; third, whether
> a judgment rendered in the person's absence will be adequate; fourth,
> whether the plaintiff will have an adequate remedy if the action is
> dismissed for nonjoinder.

Id.  As with the "necessary party" analysis, the trial court possesses considerable discretion in

weighing these factors, which are non-exclusive and tailored to the particular facts of each case.

WRIGHT at § 1608, p. 91; e.g., Glenny v. Am. Metal Climax, Inc., 494 F.2d 651, 653 (10th Cir.

1974) ("The criteria … are vague, and in the final analysis the court must determine whether in

equity and good conscience the action should proceed among the parties before or, or should be

dismissed, the absent party being thus regarded as indispensable.") (internal quotations omitted).

The factors enunciated in section (b) largely mirror those considered by the court in making the

"necessary" party determination under section (a) and, therefore, the analyses inevitably overlap.

E.g., Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 641 n.4 (3d Cir. 1998)

(noting, for example, that the first factor under Rule 19(b) overlaps considerably with the Rule

19(a) analysis).

Application of the preceding four factors demonstrates that the Trustee and absentee

Insureds are not "indispensable" parties to the instant proceedings.  First, a judgment rendered by

this Court in the other Insureds' absence is neither prejudicial to the absentee Insureds nor to

named parties to this action.  This factor is a "reiteration of" the Rule 19(a)(2) criteria for

determining whether the absentees are "necessary" and, therefore, the analysis is likewise

analogous.  See WRIGHT at § 1608, p. 92.  As noted supra, therefore, no prejudice will result

from an order of this Court that the Defendants have or do not have a duty to defend the

Plaintiffs in the D&O Action and/or advance Defense Costs to the Plaintiffs.  A ruling in either

direction would not preclude the absentee Insureds from initiating an action against the

Defendants in order to determine whether the D&O Complaint contains allegations against them

32

that fall within the Policy and obligate the Defendants to defend them in that action.  See id. at §
1604, pp. 60-61 ("[E]xcept in very special circumstances it is impossible to impair the rights of
nonparties in any legal sense under the principles of claim or issue preclusion.").

The second factor considers whether this Court can fashion a remedy that would
minimize or eliminate any potential prejudicial effect of proceeding without the absentee
Insureds.  See FED. R. CIV. P. 19(b).  This factor "places the court *under an obligation* to seek
out an alternative to dismissing the action …."  WRIGHT at § 1608, p. 105 (emphasis added).  As
noted under the section (a) discussion, this Court can craft an order specifically tailored to the
Plaintiffs and Defendants in the instant proceeding.  The Plaintiffs have asked this Court to
determine specifically whether the D&O Complaint contains any allegations *against the
Plaintiffs* that might fall within the Policy's scope of coverage.  This prayer for relief is limited to
the Plaintiffs, and, therefore, the conduct of the absentee Insureds is irrelevant to this
determination.

The third factor considers whether a judgment rendered in the non-named party's absence
will be adequate or, alternatively, whether the court must render "hollow or incomplete" relief in
order to avoid prejudice to the absent party.  WRIGHT at § 1608, p. 114.  If, for example, the
named Plaintiff must resort to additional litigation in order to gain complete relief, the court will
likely be hesitant to proceed with the absent party.  See id. § 1608, p. 115-18.  Here, however,
further litigation will be unnecessary because the Court can tailor its order to the allegations
concerning the Plaintiffs.

The fourth and final factor concerns the adequacy of the remedy if this action is
dismissed for non-joinder of the absentee Insureds.  See FED. R. CIV. P. 19(b).  In some cases,
dismissal of the action does not impose any hardship on the named parties, particularly the

33

Plaintiffs, because the Plaintiff can bring the action in another court and include the absentee parties. WRIGHT at § 1608, pp. 119-122; see, e.g., Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 81 (1st Cir. 1982) (holding that dismissal was proper because an adequate state proceeding existed to which all interested parties had been joined). Here, however, the Plaintiffs' interests and their available recourse will be substantially impaired, prejudiced, and undermined should the Court dismiss the current action. Unlike in Acton, there is no existing proceeding, in any forum, in which all interested parties have been joined. Moreover, no evidence exists in this record that the absentee Insureds have filed, or intend to file, demands against the Defendants to defend and/or advance payments incurred in defending the underlying D&O Action.

Accordingly, the Defendants have failed to meet their burden of demonstrating that "in equity and good conscience" that the absentee Insureds are "indispensable" and that this Court should dismiss the current proceeding.

**(d)     This Court should not make any present determination regarding whether the claims asserted against the Plaintiffs in the D&O Action fall within a Policy exclusion.**

The Defendants have rejected the Plaintiffs' tender of defense, in part, based upon the following three Policy exclusions: 1) the "Prior Acts" exclusion contained in endorsement #8; 2) the "Personal Profit" exclusion contained in Clause 4(a); and 3) the "Crime/Fraud" exclusion contained in Clause 4(c).[28] See Tr. Exh. 5, Varley Letter, 4/5/04, at 1-3. In order to rule on the Plaintiffs' requested relief, however, this Court need not make any present determination regarding whether the claims asserted against the Plaintiffs in the D&O Action fall within any of the exclusions raised by the Defendants. Rather, this Court can and should delay ruling on the applicability of the exclusions until a final resolution of the underlying claims.

---

[28] At trial and in their submissions to the Court, the Defendants have solely relied upon the "Prior Acts" exclusion.

34

First, this Court can afford complete relief without making any present determination regarding the exclusions. The Plaintiffs seek a Court order limited to the Defendants' duty to defend them in the D&O Action and/or advance Defense Costs incurred in that Action. To resolve these narrow issues, the Court must look solely to the allegations contained in the D&O Complaint to determine whether any claim might fall within the Policy's scope of coverage. E.g., Vance, 1986 Ky. App. LEXIS 1231, *6 ("The duty to defend is broader than the duty to pay. … [T]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action.") (internal citations and quotations omitted); Lowy, 2000 WL 526702, *2, n.1 (citing PepsiCo., Inc. v. Cont'l Cas. Co., 640 F. Supp. 656, 660 (S.D.N.Y. 1986) (applying standard that governs duty to defend to a case that concerns only payment of defense expenses)).

Under this narrow inquiry, the Defendants have a duty to defend and a duty to advance Defense Costs if *any* claim *could* fall within the Policy's coverage. The advance payment provision's plain language contemplates that advance payments will be made *before* a determination as to the applicability of an exclusion because it expressly provides that the "Insurer shall advance … Defense Costs *prior to the final disposition of a Claim*" and that the Insured must reimburse the Insurer for payments made in connection with the defense of non-covered claims. See Tr. Exh. 2, D&O Policy, cl. 8, p. 12. The applicability of an exclusion is therefore not relevant at this stage of the proceedings.

Second, the Defendants have offered scarce evidence regarding the applicability of any exclusion. The three exclusions respectively provide in relevant part:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (a) arising out of, based upon or attributable to the gaining *in fact* of any profit or advantage to which an insured was not legally entitled;

35

…

> (c) arising out of, based upon or attributable to the committing *in fact* of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law

See <u>Tr. Exh.</u> 2, D&O Policy, cl. 4(a), (c), p. 6 (emphasis added).

> [T]he Insurer shall not be liable to make any payment for Loss arising from any Claim(s) alleging Wrongful Act(s) which occurred prior to the inception date of the Policy Period or after the end of the Policy Period. This policy only provides coverage for Loss arising from a Claim(s) for an alleged Wrongful Act(s) occurring on or after the inception date of the Policy Period and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or Related Wrongful Act(s) shall be deemed to arise from the first such same or Related Wrongful Act.

See <u>id.</u>, Endorsement #8.

No evidence was offered that the Plaintiffs *in fact* gained any illegal profit or committed any criminal, fraudulent or dishonest act, such that the "Personal Profit" or "Crime/Fraud" exceptions might bar coverage. Moreover, the Defendants offered little evidence regarding whether the Plaintiffs committed any "Wrongful Acts," or whether any "Wrongful Acts" committed during the Policy Period were "related" to pre-Policy Period "Wrongful Acts." Thus, this Court should limit its inquiry into whether the D&O Complaint contains *any* allegations that *could* fall within the Policy's scope of coverage to determine solely if the Defendants have duties to defend and/or advance Defense Costs.

Finally, this Court and the parties will certainly benefit from a delay, and no party will be prejudiced. The Court, for example, can avoid consideration of whether any absentee Insureds are necessary parties by postponing any present determination on the applicability of an exclusion and ruling solely on the Defendants' duties to defend and/or advance costs. As noted, <u>supra</u>, the Defendants' duty to defend is specific to the claims made against the Plaintiffs in the D&O Action, and, therefore, joinder of the absentee Insureds is not necessary to resolve that

36

issue.  Moreover, ordering the Defendants to advance Defense Costs to the Plaintiffs similarly

circumvents the necessary-party issue because any advance to which the Plaintiffs are

subsequently found not to be entitled will be repaid and reallocated among the remaining

absentee Insureds should they make a similar demand on the Defendants.

### Conclusion

The Defendants have a duty to defend the Plaintiffs in the D&O Action because the D&O

Complaint contains allegation that, at an absolute minimum, "potentially, possibly, or might" be

covered under the Policy.  Furthermore, the Policy imposes a mandatory duty upon the

Defendants to advance Defense Costs as incurred by the Plaintiffs in defense of the D&O Action.

Finally, the absentee Insureds are not "necessary" and/or "indispensable" parties under FED. R.

CIV. P. 19 and, therefore, this Court must not dismiss the action.

Respectfully submitted,
MELINDA BROWN AND TREFFLE LAFLECHE
By their attorneys,

/s/  Daniel J. Kelly

Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
B. Michael Ortwein, III BBO# 654836
bortwein@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

38