UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,<br><br>Defendants. | C. A. No. 04-10685 WGY |

**PLAINTIFFS' POST-TRIAL MEMORANDUM OF LAW**

**EXHIBIT B**

**THE D&O BOOK**



# Coverage Format

**U**nlike some insurance policies, such as commercial general liability, automobile liability and many types of property insurance, D&O insurance policy forms are not standardized and wording can vary dramatically among policies. Because of this, the coverage provided by a particular policy may not be understood thoroughly by those responsible for purchasing or recommending coverage. The coverage format of D&O insurance is sometimes circuitous, and many people experience difficulty in interpreting the grant of coverage, exclusions and other terms and conditions.

While claims-made policy forms have been in use for many years, a review of the claims-made concept as it pertains to D&O insurance is provided in this section. Also contained in this section are discussions on D&O insuring agreements, duty-to-defend conditions, policy limits, retentions and coinsurance provisions, all of which contain elements unique to D&O insurance.



# Insuring Agreements

The insuring agreements of D&O policies set forth the insurer's grant of coverage. A D&O policy may contain one or more separate insuring clauses, each providing coverage to distinct interests. The most common include:

**Directors and Officers Liability**, or **Individual Liability**, coverage is intended to pay loss, as reimbursement or on behalf of the individual directors and officers, when the corporation is not permitted to or in some cases does not provide indemnification.

**Corporate**, or **Company Reimbursement** coverage is intended to pay loss, either on behalf of or as reimbursement to the corporation, associated with claims made against the individual directors and officers for whom the corporation has legally provided indemnification.

**Entity** coverage, previously only available as part of or by endorsement to some not-for-profit and association D&O policy forms, provides coverage for claims made against the organization as a result of wrongful acts committed or allegedly committed by the organization's directors, officers or other insured individuals. Some insurers also cover for-profit corporations, but this is usually limited to specific types of claims, such as those related to alleged violations of securities laws. More recently, entity coverage has been expanded by some insurers to cover other types of claims, such as those related to employment practices, as well.

### Directors and Officers Individual-Liability Coverage Part

Most corporate bylaws and state statutes provide that the corporation indemnify directors and officers under certain circumstances for certain losses. The individual-liability coverage section of D&O policies is intended to provide protection for insured individuals when the corporation cannot or in some cases chooses not to defend and indemnify the director, officer or other insured individual. Although the corporation may be legally allowed or be required to indemnify its directors and officers for many acts and omissions, there are important circumstances for which corporate indemnification may not be available.

- Corporate indemnification of officers and directors for settlements and judgements in derivative actions brought by shareholders on behalf of the corporation is prohibited by many state indemnification laws.



* Corporate indemnification may not be permitted for loss associated with claims based on certain securities law violations.

* In the event of bankruptcy, the corporation may be unable to provide indemnification or may be able to indemnify for only part of the loss.

* In some instances, indemnification may be discretionary and the board may choose not to provide indemnification for certain directors or officers even though the corporation is legally permitted to do so. This problem could arise when a major change in control of the board has occurred.

Because legal fees incurred in defending claims against directors and officers can cost hundreds of thousands or even millions of dollars, the financial resources of corporate executives might be exhausted if they were unable to rely on either the corporation or an insurer to assume or promptly reimburse these costs.

As with most aspects of D&O insurance policy language, insuring agreements are not standardized. Two examples are shown below.

*London Market*

To reimburse the Directors and Officers for Loss not exceeding the Limit of Liability in excess of the applicable Retention set forth in Item D. of the Declarations sustained by such Directors and Officers resulting from any Claim first made during the Policy Period or the Optional Extension Period, if applicable, against any of them for a Wrongful Act, except for such Loss which the Company actually pays to the Directors and Officers as indemnification, and except for such Loss which the Company is required or permitted by law to indemnify the Directors and Officers unless and to the extent that the Company is unable to make actual indemnification solely by reason of its financial insolvency.

*Domestic U.S. Market*

I.  **Insuring Agreement**

Subject to the limit of liability, the Insurer shall pay loss arising solely by reason of any wrongful act on or after the policy retroactive date alleged in a claim first made against the assureds and reported in writing to the Insurer during the policy period.

**(B) Directors and Officers Liability:**

**on behalf of the assureds** but only when the company is not legally permitted or required to pay such loss as indemnity to the assureds or when the company is legally required or permitted to pay such loss as indemnity to the assureds but cannot in fact pay such loss due solely to the financial insolvency of the company.

Both of these examples make liberal use of words, terms and phrases that are defined elsewhere in the policy. Most policy forms define *claim, loss, wrongful acts* and many other terms. It is important to know the meaning of these special terms as they often restrict or modify the coverage grant.

### Right of Association

Many D&O policy forms contain language reserving the insurer's right to participate and associate with the insured in the conduct of the insured's defense. This provision also may require the insurer's approval of the lawyers the insureds intend to employ. In all cases where the insurer has no duty to defend, the insurer retains the right of association. However, some policies go further and contain language that gives the insurer the right to assume the defense at any time. Such action by the insurer may be necessary if the insured retains unqualified counsel or engages in questionable or unsound defense strategies.

### Advancement and Timing of Defense Expense Payments

The right of an insured to be reimbursed for defense expenses under a D&O policy *as these expenses are incurred* is a valuable feature. Litigation involving alleged wrongdoing by directors and officers is often expensive, complex and protracted. Defense costs are said to be "advanced" when they are paid contemporaneously, either on behalf of the insured or as prompt reimbursement.

When defense costs are advanced, the insurer often does so without certainty that coverage under the policy will apply. An example is when claim alleging dishonesty of a director or officer is made. Claims arising out of dishonest acts generally are excluded by D&O insurance. However, coverage may apply under some policies unless and until the dishonesty is proven, which amounts to coverage for expenses incurred in the successful defense of a claim based on dishonesty.

*See* Exclusions section, *"Dishonest, Fraudulent and Criminal Acts."*

When defense costs are advanced unless and until a director or officer is proven to have acted dishonestly, the interests of the insurer often will conflict with those of the insured. While insureds normally want defense expenses to be paid as they are incurred, the insurer likely will prefer to await the conclusion of the lawsuit before paying. Also, if the insurer pays expenses as they are incurred, it may be difficult or impossible for the insurer to recoup such amounts if the insured's actions are ultimately found to be excluded by the policy. Most policies contain an "undertaking" provision, which requires the insured agree in writing to repay any advanced amounts if it is ultimately established that the insurer has no obligation to pay a claim under the policy. The following is an example of an "undertaking" provision:



*Genesis Insurance Co., GIC-7418 (9/97)*

> B. The **Insurer** shall, upon request, advance **Defense Costs** prior to the final disposition of a **Claim**, subject to an allocation, if any, determined in accordance with Sections V.F. and V.G., and subject further to prior satisfaction of the applicable Retention. Any agreement by the **Insurer** to advance **Defense Costs** shall be on the condition that the parties for whom the **Defense Costs** are advanced provide a written undertaking satisfactory to the **Insurer** which states than in the event it is finally established that the **Insurer** has no liability under the Policy to the **Directors, Officers** or the **Company**, or any of them separately, for such **Claim**, they agree to repay to the Insurer upon demand all **Defense Costs** advanced on their behalf.

A problem with some D&O insurance policy forms is that the language is not always clear regarding whether the insurer has an affirmative obligation to advance defense expenses. Early D&O policy forms often contained no reference to who was responsible for tendering a defense — the insured or the insurer. As a practical matter, it was the corporation that usually assumed defense on behalf of its directors and officers, and insurers took the position that no obligation existed to pay expenses until claims and litigation had ultimately been concluded. Although insurers frequently did advance costs when there were no apparent coverage disputes, these payments often were made as an accommodation to the insured rather than as a duty of the insurer.

In 1987, on appeal, a federal court in *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276, held that the insurer of a D&O policy was indeed responsible for the payment of defense expenses as they were incurred. In *Okada*, the policy in question, like earlier policy forms, was silent regarding the duty to defend, yet contained other provisions that were found to be pivotal to the case. The policy contained language promising to pay expenses when such expenses were agreed to by the insurer, yet did not specify when such expenses were to be paid. The policy also contained a clause that allowed the insurer to advance expenses at its option. The court found these clauses ambiguous and further noted that because the definition of *loss* included amounts the insured was *legally obligated to pay*, the policy should be viewed as a liability form. As such the policy was construed by this court to obligate the insurer to pay expenses on an interim basis.

Possibly as a result of the *Okada* case, most policy forms now include specific provisions regarding advancement of defense expenses. These policies generally state that there is no obligation by the insurer to advance costs and expenses prior to a final determination of liability. Some policies, however, do contain an affirmative promise by an insurer to provide contemporaneous



reimbursement or payment on behalf of an insured. Such a promise is highly desirable, as illustrated in the following examples.

> Under Coverage A, except as hereinafter stated, the **Insurer** shall advance Defense Costs prior to the final disposition of the claim, unless such Defense Costs have been advanced by the Company. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this policy to payment of such Loss. Notwithstanding the foregoing, if the Company is required or permitted to advance such Defense Costs in accordance with the fullest application of law, common or statutory, or contract, or the Charter or By-laws of the Company, then the **Insurer** assumes no duty to advance Defense Costs prior to the final disposition of the claim and the retention amount as stated in item 5 of the Declarations shall apply to such Loss. In such case, however, the **Insurer** may, in its absolute discretion, advance all or any part of such Defense Costs prior to the final disposition of the claim and in such event the advance payments by the **Insurer** shall be repaid to the **Insurer** by the Company or the **Insureds**, severally according to their respective interest, in the event and to the extent that the Company or the **Insureds** shall not be entitled under the terms and conditions of this policy to payment of such Loss.

*National Union,*
*47353 (8/88)*

Note the insurer's express promise to advance defense expenses prior to a final disposition of the claim. In the example, taken from an old National Union policy form, this obligation extends only to Coverage A, the individual-liability section. The insurer is not obligated to advance expenses when the corporation is required or permitted to do so but is unable or chooses not to. Advancement of expenses in such situations is left as an option of the insurer.

The following defense-cost-advancement provision is not limited to a specific coverage part. It is subject only to the condition that there is no contribution with other insurance policies.

> Under all Coverages of this Policy, except as hereinafter stated, the **Insurer** shall advance, at the written request of the **Insured, Costs of Defense** prior to the final disposition of a **Claim.** Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this Policy to payment of such Loss.

*Admiral Insurance*
*Co., DO 1200*
*(07-96)*

The example that follows (from a policy providing only individual-liability coverage) also contains an affirmative duty to advance expenses with limited conditions. This clause provides advancement of loss costs in instances where the corporation either refuses or is financially unable to do so. This is a desirable policy feature.



The insuring agreements may provide for "reimbursement" or may agree to "pay on behalf." The examples above illustrate both approaches. A third approach, used by some insurers, is to "pay the loss" of the insured persons. The term *pay the loss* is ambiguous in that it is not clear if the loss is paid to the insureds as reimbursement or to the plaintiff on behalf of the insureds. As a practical matter, however, most insurers who promise to "pay the loss" do so and actually pay claimants and expenses on behalf of the insureds.

The insurer's agreement to pay claims and costs on behalf of the insureds usually is preferable to an insuring agreement that promises to indemnify or reimburse the insureds, or to pay the loss of the insureds. Obviously, any insured would prefer that the insurer pay all settlements, judgments and costs as they are incurred. The concept of pay-on-behalf coverage is illustrated in the following example.



*Loss paid on behalf of directors and officers when corporation does not indemnify*

① Claim against individual insured.
② Corporation does not provide indemnification.
③ Insurer pays covered expenses on behalf of insureds.
④ Insurer pays covered judgements or settlements on behalf of insureds.

Often, however, pay-on-behalf language in D&O policies is deceptive, confusing or ambiguous, particularly regarding defense costs. The term *defense costs* may be separately defined or there may be separate conditions applicable to the payment of such costs. These definitions and conditions often conflict with the insurer's promise in the insuring agreement to pay on behalf of the insureds. Careful analysis may reveal that the policy does not provide an affirmative duty to actually pay or advance defense costs prior to the final adjudication of a claim even though the insuring agreement promises to pay on behalf.



This underscores the need by insureds and agents and brokers to undertake a careful, deliberate and complete reading of any D&O policy (including applications and endorsements) in order to avoid disappointment and possible coverage litigation.

*Loss paid directly to directors and officers as reimbursement when corporation does not indemnify*



① Claim against individual insured.
② Legal expenses incurred in defense.
③ Judgement or settlement paid.
④ Corporation does not provide indemnification.
⑤ Covered loss paid directly to individual insureds.

Many insuring agreements also contain language barring coverage to the insured individual when the corporation is "required or permitted to pay" indemnification. The distinction between amounts actually indemnified and amounts the corporation is "required or permitted to pay" is significant. When the corporation is permitted or required to provide indemnification but does not do so, language in the policy may preclude any payment under the individual-liability coverage section. These clauses sometimes state the assumption that the corporation has amended its bylaws to provide indemnification to the full extent allowed by law. Some language may provide insurance for individual insureds but subject the loss to the relatively large deductible applicable to the corporate-reimbursement section of the policy. These provisions are sometimes referred to as *presumptive indemnity clauses*. When these provisions are in the policy, they normally do not apply when the corporation is unable to indemnify directors and officers due to financial insolvency.

### Corporate Reimbursement

The corporate-reimbursement coverage part of the D&O policy may also reimburse for or pay on behalf of the corporation a loss that the corporation has paid or is obligated to pay as indemnification to the directors and officers. Due to the broad scope of indemnification laws, most D&O insurance claims are covered under the corporate-reimbursement part of the policy. Although it is possible that a claim might be made under both coverage parts, this would not increase the limit of liability. As a practical matter, a claim usually will fall within the individual-liability coverage part, the corporate-reimbursement coverage part or will fall partially or entirely outside the scope of coverage.

The following examples illustrate both pay-on-behalf and indemnity wording in insuring agreements.

> The Insurer shall pay on behalf of the Directors and Officers such Loss which the Insured Company is required or permitted to pay as indemnification to the Directors and Officers and which the Directors and Officers become legally obligated to pay as a result of any Claim first made against any of the Directors and Officers during the policy period or the Discovery Period, if purchased, and reported pursuant to Section IX, for a Wrongful Act.

*Safeco Insurance, SR 1765 (11/98)*

> The Insurer, . . . agrees as follows:
>
> With the Company that if during the Policy Period any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will indemnify, in accordance with the terms of this policy, the Company all Loss for which the Company may be required or permitted by law to indemnify such Directors and Officers.

*Old Republic, ORUG-17 (2/86)*

The concept of the corporate-reimbursement coverage part is illustrated in the following example.



*Loss paid to corporation on a reimbursement basis*



① Claim against individual insureds.
② Legal expenses incurred in defense.
③ Judgements or settlements paid.
④ Corporation indemnification of directors and officers.
⑤ Insurer pays corporation for indemnification of loss.

### Entity Coverage
### (Not-For-Profit and Association Liability Policies)

Claims made against the organization arising out of wrongful acts of its directors and officers may be covered, either within the policy's insuring agreements or in an attached endorsement. The following wording appears as an optional coverage part in an endorsement to a policy form designed for not-for-profit entities.

*Chubb, Entity Relative Exposure Endorsement*

It is agreed that:

1. This policy is amended by adding the following:

**Organization Coverage**

**Insuring Clause 3**

The Company shall pay on behalf of the **Organization** all **Loss** for which it becomes legally obligated to pay on account of any **Claim** first made against it during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by an **Insured Person** or the **Organization** before or during the **Policy Period**.

The following example illustrates how a claim might be paid on behalf of the corporation when the entity coverage has been purchased.



*Loss paid on behalf of entity*

① Claim against corporation for wrongful acts of individual insureds.
② Policy provides advancement of legal expenses on pay-on-behalf basis.
③ Legal liability of corporation to claimant paid by entity on behalf of corporation.

Entity coverage can provide important protection to the organization when the entity is named directly or as a codefendant with the individual insureds.

While entity coverage may provide protection not otherwise available to the corporation, there are three potential major drawbacks. First, the additional premium for the extension of coverage can be substantial—sometimes 50% or more of the D&O policy premium. Second, the limit of liability available under the corporate-reimbursement and individual-liability sections could be eroded by claims paid under the entity coverage. Lastly, some insurers only provide entity coverage for not-for-profit, association or public-entity programs or limit the coverage available to for-profit corporations to claims related to alleged violations of securities laws.

### Entity Coverage (For-profit Corporations)

Once exclusively available to not-for-profit organizations, healthcare providers and associations, entity coverage has become available in recent years for some for-profit corporations. Entity coverage available for corporations is normally written to cover one or more specific well-defined types of claims as opposed to the broad coverage grant usually offered non-profits.

For example, National Union was one of the first insurers to develop and introduce a form of entity coverage endorsement covering the corporate entity for "open market securities" claims alleging wrongful acts made by the corporation in connection with the purchase or sale of securities. Such coverage addresses a potentially catastrophic exposure faced by many insureds, which in large part was previously uninsurable.

**Open Market Securities Claim** *means any claim which alleges a Wrongful Act in connection with the purchase or sale of securities of the Company other than a transaction in which the Company or an Affiliate of the Company is the purchaser or seller of the securities, either directly or indirectly. [National Union, Entity Coverage Endorsement 55996 (1/94)]*



A particularly problematic exposure for publicly held corporations which has developed in recent years is that of being targeted by groups specializing in class action securities litigation. Such groups often involve law firms that contrive and bring class action suits based on conclusory theories regarding fluctuations in the price of the target company's stock. While some claims are brought by legitimately aggrieved shareholders, some plaintiffs make unsubstantiated claims contending that management knew of events likely to affect stock prices and purposely or negligently withheld releasing such information. Because such suits invariably name both the corporation and one or more directors or officers, all sorts of problems can arise. Allocation of loss between the insured directors and officers and the uninsured corporation is particularly problematic. And even where small variations in stock price occur, because of the potentially large size of the plaintiff class, claimed damages are often astronomical. Just mounting a defense to a class-action suit can be quite expensive and creates pressure to settle even when claims are obviously bogus. National Union's "Entity Coverage Endorsement," shown below, was designed to address these problems by adding the following wording to the insuring agreement.

*National Union,*
*Entity Coverage*
*Endorsement 55996*
*(1/94)*

**COVERAGE C: COMPANY INSURANCE**

This policy shall reimburse the Loss of the Company arising from any Open Market Securities Claim first made against the Company and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Entity Wrongful Act of the Company provided that such Open Market Securities Claim is also first made against one or more Directors or Officers for a Wrongful Act(s) by such Directors or Officers in their respective capacities as Directors or Officers of the Company.

Such coverage extensions may be expanded to include claims made against the corporation as issuer of securities pursuant to specified registration statements.

Entity coverage wording can be lengthy and add or amend many policy terms, definitions and conditions. While such coverage enhancements can be expensive, have limited availability and are often subject to a variety of limitations, the nature of entity coverage provides protection not normally available from any other source of insurance.

When reviewing D&O insurance policies, it should be noted that some incorporate the term *legally obligated to pay* within the insuring agreement. The following wording is an example.

> I.   **INSURING AGREEMENT**
>
> Subject to the Limit of Liability, we shall pay all **Loss** which the **Insured** is legally obligated to pay arising solely by reason of any **Wrongful Act** on or after this Policy Retroactive Date alleged in a **Claim** first made against the **Insured** and reported to us in writing during this **Policy Period.**
>
> A.  We shall pay on behalf of each **Insured** all **Loss** for which the **Insured** is not indemnified by the **Company** which the **Insured** becomes legally obligated to pay because of any **Claim** first made against the **Insured**, individually or otherwise, during this **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured** after the Policy Retroactive Date as shown in Item 7 of the Declarations.
>
> B.  We shall pay on behalf of the **Company** all **Loss** for which the Company grants indemnification to each **Insured,** as permitted or required by law, which the **Insured** becomes legally obligated to pay because of any **Claim** first made against the **Insured,** individually or otherwise, during this **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured** after the Policy Retroactive Date as shown in Item 7 of the Declarations.

*TIG Insurance, 24507 (4/96)*

The term *legally obligated to pay*, or similar language, also is sometimes found in the policy definition of *loss*.

*See* Definitions section, *"Loss."*

Policies that do not use legally-obligated-to-pay language may be preferable to those that do, because the language may preclude coverage for equitable relief. However, the court in the *Okada v. MGIC Indemnity* case concluded that the insurer was responsible to make contemporaneous payment of defense costs partly because the definition of *loss* included amounts the insured was legally obligated to pay.

*See* Coverage Format *section*, *page DUTDEF-1.*

In addition to coverage for securities-related claims, some policy forms developed in the past few years offer entity coverage for fiduciary liability and employment practices liability claims.

### Employment Practices Liability (EPL) Entity Coverage (For-Profit and Not-For-Profit Corporations)

In recent years, some D&O insurers have offered employment practices liability (EPL) coverage for the business entity either as part of the individual liability and company reimbursement insuring agreements or in a separate inruing agreement. An example of each approach is shown below.

| | |
|---|---|
| *Executive Risk,*<br>*B 22130 (1/96)* | **Entity Insuring Agreement**<br><br>(B) The Underwriter will pay of behalf of the Company:<br><br>(1) (OPTIONAL COVERAGE) if it is stated in the Declarations that coverage has been made available under this INSURING AGREEMENT (B)(2), Loss from Claims first made against the Company during the Policy Period for Wrongful Acts, including Employment Practices Wrongful Acts. |
| *Zurich-American*<br>*Insurance Group,*<br>*U-DO-111-A*<br>*(CW)(2/97)* | **Separate EPL Insuring Agreement**<br><br>I. INSURING CLAUSES<br><br>C. EMPLOYMENT PRACTICES COMPANY LIABILITY COVERAGE (IF GRANTED)<br><br>If Employment Practices Company Liability Coverage is granted as set forth in Item 11 of the Declarations, the Underwriter shall pay on behalf of the Company all **Loss** for which the **Company** becomes legally obligated to pay on account of any **Employment Practices Claim** first made against it during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**. |

Other insurers may offer entity coverage for EPL claims by adding a special endorsement to the D&O policy. Since the directors and officers are typically insureds under EPL entity coverage clauses, there is usually no need to add separate coverage to the policy for these individuals.

EPL entity coverage typically extends coverage under the D&O policy for claims that involve allegations of employment-related discrimination, sexual harassment, wrongful termination and other employment-related offenses. These coverage extensions are often created by deleting the exclusions for bodily injury, emotional distress, libel, slander, defamation and other personal injury offenses or by broadening the definition of *wrongful act* to include these offenses. The definition of *insured* is also usually broadened to include employees. In addition, the insured-versus-insured exclusion is often modified to make it inapplicable as respects EPL claims.

When provided within the scope of a D&O policy, however, EPL coverage may have the following limitations:

* Because many D&O policies do not contain a duty to defend, any endorsement to provide EPL coverage under such a policy is likely to also not contain such a duty. In contrast, most stand-alone EPL policies do provide an affirmative duty to defend.

* The entity, corporation or organization may not be an insured.

* There may be no coverage for persons who are not directors or officers or who are not otherwise individually insured under the policy.

* Where the definition of *insured* or *insured persons* has been broadened to include employees, it is often necessary to eliminate or modify the insured-versus-insured exclusion.

* There typically is no third-party liability coverage for discrimination or harassment.

* Claims under an EPL coverage extension may erode the limits of liability of the core D&O policy. Some D&O insurers provide a separate limit of liability for EPL claims, often for additional premium.

* In the absence of a duty to defend, the insurer may require an allocation of defense costs between covered and uncovered persons or allegations.

For the above reasons, many insureds have in the past elected to obtain coverage for employment practices claims through purchase of a separate EPL policy. However, because the cost of combining D&O and EPL coverage in a single policy in the late 1990s was often less expensive than the cost of purchasing separate policies, insureds found themselves seriously considering combination policies. Today, with the rising cost of both D&O (partly as a result of the Enron and Tyco debacles) and EPL coverage, insureds may be faced with a difficult decision regarding monoline versus combination policies.

# Duty to Defend

**M**ost D&O policy forms are clear regarding the duty to defend — specifically that it is the insured's duty and not the duty of the insurer to undertake defense of a claim against an insured.

> The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

*National Union,*
*68462 (8/97)*

A duty to defend normally only arises when the policy contains an affirmative statement or promise that the insurer will defend the insured.

While uncommon, some D&O policy forms do contain an affirmative duty to defend, as shown in the example below. An affirmative duty-to-defend provision is most often found in policies designed for not-for-profits and associations. However, some insurers are including the provision in policies designed for for-profit organizations as well. An example is shown below.

> (C) As part of and subject to the limit of liability stated in ITEM 3 of the Declarations, the Underwriter will have the right and duty to defend any **Claim** as described in INSURING AGREEMENTS (A) AND (B)(1) (and, if it is stated in the Declarations that coverage has been made available thereunder, INSURING AGREEMENT (B)(2)), even if such **Claim** is groundless, false or fraudulent.

*Executive Risk,*
*B22130 (1/96)*

Even when a D&O policy does not contain an affirmative duty to defend, the insurer may still retain a good deal of control over defense by imposing certain requirements and restrictions upon the insured.

### Consent for Settlement

Most policy forms that do not provide a duty to defend require the insurer's consent for settlement of claims with the proviso that such consent shall not be unreasonably withheld. It also is not uncommon for D&O policies to contain language giving the insurer the right to recommend settlement, with refusal by the insured to settle resulting in restrictions on the amounts recoverable under the policy. Such language is commonly known as a "hammer" clause.

In the following example, if the insured rejects the insurer's recommendation to settle a claim and instead chooses to litigate, the insurer's liability is limited to

the amount for which the claim could have been settled, including defense costs incurred prior to the date such a settlement is refused.

*Philadelphia Insurance Co., PI-ES-1560 (12/96)*

> If the **Insured** and/or the **Company** shall refuse to consent to a settlement which the **Insurer** has recommended in writing, and elects to contest the **Claim** or continue any legal proceedings in connection with such **Claim,** then the **Insurer's** liability for such **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Defense Costs** incurred up to the date of such refusal.

Innocent officers and directors may feel that a settlement, rather than adjudication by the court, will not fully absolve them of the alleged wrongdoings. They may also believe a successful defense in court may prevent or reduce the likelihood of future similar actions. Insureds might argue that "hammer" clauses like the example above make it difficult to pursue a decision to litigate because the insured will have to bear any loss and/or defense costs excess of the recommended settlement. Insurers argue that without such clauses, they may be subjected to loss far in excess of what a claim might otherwise be settled for in the absence of adjudication.

### Consent to Incur Costs

A more severe consequence facing insureds that choose to incur costs or settle claims without insurer consent is illustrated in the following consent clause.

*Gulf Insurance Co., 73001 (8/96)*

> The **Insureds** agree not to any **Claim,** incur **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect any **Claim** without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Defense Costs,** assumed obligation or admission to which it has not consented.

The above language means that any settlement of claims or defense expenses incurred without the insurer's prior consent are not covered by the policy. Although most policies stipulate that consent to incur such costs shall not be unreasonably withheld, it may be arguable what "unreasonably withheld" means. What is reasonable is sometimes a question that reasonable people cannot agree upon. The effect of such wording is that if the insurer withholds consent, the insured may have little recourse other than litigation. Because a claim of bad faith might be brought when consent is unreasonably withheld, insurers may often yield to the insureds short of such action.



*CODA 01 (05/96)*

> Except in those instances when the INSURER has denied liability for the CLAIM because of the application of one or more exclusions, or other coverage issues, if the COMPANY refuses or is financially unable to advance DEFENSE COSTS, the INSURER shall, upon request and if proper documentation accompanies the request, advance on behalf of the INSUREDS, or any of them, DEFENSE COSTS that they have incurred in connection with a CLAIM, prior to disposition of such CLAIM. In the event that the INSURER so advances DEFENSE COSTS and it is finally established that the INSURER has no liability hereunder, such INSUREDS on whose behalf advances have been made and the COMPANY, to the full extent legally permitted, agree to repay to the INSURER, upon demand, all monies advanced.

Only a few policy forms provide the affirmative advancement provisions of the above examples. Most forms allow the insurer the option to advance expenses, as in the following example:

*RLI Insurance Co., CDO 30011 (8/95)*

> However, the Company may it its option under Insuring Clause II.A., and upon request, advance on behalf of the Insureds defense costs, charges or expenses incurred in connection with Claims against them prior to final disposition of such Claim; provided always that in the event it is finally established the Company has no liability hereunder such Insureds agree to repay the Company upon demand all sums so advanced.

Some policy forms do not specifically address the issue of expense advancement but provide that the insurer shall pay expenses, costs, settlements, etc. when consent has been given by the insurer to incur such amounts. The following is an example of this approach.

*Old Republic, ORUG-17 (2/86)*

> No costs, charges or expenses shall be incurred, or settlements made without the Insurer's consent, which consent, once given, may be withdrawn at any time but may not be unreasonably withheld; however, in the event of such consent being given and not withdrawn, the Insurer will pay, subject to the provisions of Clause V, such costs, settlements, charges or expenses.

The problem with provisions like the one immediately above is that although the policy promises to pay costs, settlements charges and expenses, it does not state when it will pay nor are costs and expenses always specifically defined to include defense. In addition, the consent of the insurer may be withdrawn at any time, thereby resulting in the possibility the insured will have to bear its defense expenses without the benefit of advancement from the insurer.

There is little similarity between policy forms as respects the issue of expense advancement. Policies providing an affirmative duty to pay are most desirable, but few insurers actually provide such coverage. Some forms provide advancement only conditionally, or leave sole discretion to the insurer. Still others imply advancement but fall short of a complete commitment. The *Okada*

case did not appear to have set any trends other than reinforcing the court's inclination to construe coverage in favor of the insured. Seemingly identical advancement provisions have been interpreted differently by different courts, finding a duty to advance expenses in one instance and finding no such duty in another case.

### Loss Allocation

Often before an insurer will make a loss payment, a proper allocation between the covered and any uncovered portions of the loss must be established. It is common for the corporation and the corporation's directors and officers to be named in a suit as codefendants. Since the corporation normally is an insured only to the extent of the corporate reimbursement coverage part of the policy, those expenses stemming from defense of the corporation's alleged wrongdoings need to be removed from the loss before reimbursement of defense expenses can be undertaken. The insurer is normally responsible only for that portion of loss reasonably allocable to defense and settlement of claims against the individual insureds. Allocation of the claim can be a complicated issue, particularly if the same lawyers are used for both the individual insureds and the corporation.

*For further discussion of issues related to loss allocation, see "Allocation of Loss in Directors and Officers Insurance Policies" in the Terms and Conditions section.*

Because of the complexities of interim advancement of defense costs, it generally is a good practice for the insured and insurer to enter into some sort of a funding agreement early in the claim process. Such an agreement can be useful in establishing when, how, and for what kinds of expenses advancement will be made. Details regarding documentation, billing and routine communications between defense counsel also should be addressed at an early stage in a claim to avoid problems later. Insureds not wishing to resolve their policy's advancement issues in court should seek a policy that provides unambiguous, affirmative-expense-advancement provisions. Even when a basic policy form does not provide an affirmative duty to advance expenses, an endorsement may be available that provides this feature.

