UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELINDA BROWN and TREFFLE LAFLECHE,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,<br><br>Defendants. | C. A. No. 04-10685 WGY |

**PLAINTIFFS' POST-TRIAL MEMORANDUM OF LAW**

**EXHIBIT F**

**AMERICAN INTERNATIONAL GROUP AIG PRIVATE COMPANIES D&O POLICY**

# AMERICAN INTERNATIONAL GROUP

## AIG

### PRIVATE COMPANIES D&O POLICY

*"Private Edge$^{SM}$"*

POLICY:        68462 (5/97)
DEC PAGE:      68462 (5/97)
INITIAL APP:   65800 (8/97)

*The following analysis represents solely the opinion of the editorial staff of D&O MAPS$^{TM}$ Publishing Company. It is not a legal opinion, and is not necessarily concurred in by the underwriter.*

*This analysis is presented in three sections, dealing with Positive Features, Negative Features, and Other Items Worthy of Note.*

*This is a policy designed for private companies. It incorporates into a single policy D&O coverage, Entity coverage (Including Securities Claims), and Employment Practice Liability coverage. For sake of brevity we will refer to Employment Practice Liability as EPL from this point forward. This policy is a successor to policy 63273, which had been introduced in 1995 and will still be around for a few years as it is replaced by this newer form. Some references to this earlier form, and the differences between them, are in the following discussion.*

## THE POSITIVE FEATURES OF THIS POLICY ARE THESE:

### Application Forms

➢ AIG applications do not usually contain any severability provision, and the same is usually true of the policy forms, as respects the responses to the questions in the application. This was true of the 1995 policy, and is true of "D&O Gold$^{SM}$" as well. The "Private Edge" policy, however, does grant a degree of severability as to the knowledge possessed by the Insured Persons, other than knowledge possessed by the person signing the application. If some other individual insured knew of facts not disclosed or misrepresented on the application, that knowledge will not be imputed to any other Insured Person, but may be imputed to the Entity for determining coverage for the Entity. If the signer of the application knew of such facts, then the policy is void as to all Insureds <u>other than "non-employee Directors"</u> of the Company who did not personally know the statement or representation to be inaccurate or incomplete. This element of protection for "Outside Directors" in spite of the culpability of the person signing the application, and the protection of all individuals in spite of knowledge possessed by other person, is a positive feature.

### Declarations Page

➢ The usual notice of an absence of a duty to defend is set forth, but is followed by this qualification: *"However, the Insured may under certain conditions tender the defense of a Claim. In all events, the Insurer must advance Defense Costs payments pursuant to the terms herein prior to the final disposition of a Claim."* This refers to the policy provisions in Clause 8 of the policy.

### Coverage Agreements

- ➢ The Corporate Entity is covered both in the traditional manner for its obligation to indemnify directors and officers for claims against them, and also for Claims brought directly against the Company.

- ➢ The policy promises to pay Loss on behalf of the insureds, and also provides for payment of defense costs as they are incurred.

- ➢ Coverage is provided on a worldWide basis.

- ➢ Employment Practices Liability Insurance is built into the policy.

- ➢ Coverage for the Entity is also built into the policy, with a particular emphasis on Securities Claims but not limited to that class.

- ➢ The policy may also include one or more "CrisisFund$^{SM}$" endorsements as described below.

- ➢ The first of these, called CrisisFund$^{SM}$ provides up to $50,000 in coverage for public relations or "crisis management" services if there is an event which might result in a Securities Claim. If CrisisFund$^{SM}$ is triggered, the Insurer will pay up to $50,000, with no retention or deductible, for the "Crisis Management Loss" in dealing with the event, including the expenses of and fees for the services of an approved Crisis Management Firm and the amounts incurred by the Company for printing, advertising, mailing and travel in connection with the event. The $50,000 is part of, and not in addition to, the policy limit. Additional detail is set forth in the CrisisFund$^{SM}$ endorsement. Basically, the concept of AIG is that they and their policyholders will be better of spending up to $50,000 on professional help to head off or reduce a potential Securities Claim, whether one calls those professionals consultants, public relations experts, spin doctors, or whatever. There is a list of pre-approved crisis management firms. The Company does not have to use one of these, it can hire any public relations firm, crisis management firm or law firm if it gets the prior approval of AIG, but it can hire any of the pre-approved firms without waiting for that procedural step. **One important aspect of this is that the coverage can be triggered, and money spent, even if there never is a Claim as a result of the Crisis Management Event.**

- ➢ The second is called "Employment CrisisFund$^{SM}$", and is based on the same principle of reducing the probability of a serious claim before the claim gets up a head of steam. The triggering event is the determination by the Company's General Counsel that as a result of an allegation, discovery or media report of an Employment Practices Violation there is a reasonable likelihood of one or more of the following:
    1. a civil action or compliance audit by the EEOC or similar state agency;
    2. a civil or criminal action alleging sexual harassment or misconduct by an Executive Officer;
    3. a civil class action;
    4. a civil action involving multiple plaintiffs;
    5. a civil action alleging retaliatory conduct by an Insured in response to the claimant's actions as a "whistleblower".

    It should be noted that any relatively minor Employment Practices Violation would not trigger the Employment CrisisFund. It must be something involving multiple claimants, or misconduct by a senior executive, or EEOC actions, or certain types of retaliatory actions- in other words, a pretty serious matter. Again, the payment from the CrisisFund must be to approved public relations firms, media management consultants, investigative firms or law firms, for services "in advising the Company on minimizing potential harm to the Company arising from the Employment Crisis, including but not limited to maintaining and restoring pι  ɔlic and employee confidence in the Company." The amount of coverage is set forth in blank space in the endorsement, is <u>in addition</u> to the policy limit, and is not subject to any retention.

- ➢ Coverage applies to directors, officers, management committee members or members of the Board of Managers of the Company, with the definition extended to include titles, positions or capacities of foreign Companies equivalent to the positions listed in the United States. The basic protection also includes any past, present or future employee of the Company. The definition of Employee includes part-time, seasonal and temporary employees. It also includes leased employees if the Company provides indemnification to such leased employee as it would provide to a regular employee. A similar arrangement for contractors can be made by endorsement

to the policy.

- Coverage is provided for *"any directors, officers, management committee members [etc.] of the Company serving in the capacity as a director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company."* An "Outside Entity" includes a 501 (c) (3) non-profit entity, or any other organization listed by endorsement to the policy. This automatic coverage for service to non-for-profit organizations, and possible availability of coverage for service to other organizations, is a positive feature. It should be noted it does not extend to employees below the officer or management committee level.

- Subsidiaries and their directors, officers and employees are covered for wrongful acts taking place after they became subsidiaries and before they ceased to be subsidiaries. Newly acquired or created subsidiaries are automatically insured if their assets are less than 25% of the total consolidated assets of the Company. If over that threshold, they are covered if reported to the insurer within 90 days of the acquisition, and subject to paying any additional premium and acceptance of amendments to coverage required by the insurer.

- Any "Transaction" involving change in control of the Company, or merger, consolidation, or sale of substantially all of the assets, places the policy in automatic run off. Coverage continues until the normal expiration of the policy, but only for wrongful acts taking place prior to the transaction. This coverage is non-cancelable. The Company may also request an offer by the insurer of an extended discovery period of up to three years.

- There is no retention for claims which are not-indemnifiable by the Company. There are different retentions set forth as to Securities Claims, EPL Claims and all other indemnifiable or direct Claims against the Company. However, the retention is waived as to Claims which is in the form of a civil action for monetary relief if there is a determination of no liability on the part of all Insureds, or a dismissal of the Claim without prejudice and without payment of any consideration by any Insured.

- The retention may be reduced by 10% <u>of the amount of the Loss</u> if the Insureds consent to the "First Settlement Opportunity" as discussed below under "Claim Provisions".

- There is the typical provision as to limits of liability. There is also a provision for a single reinstatement of the aggregate limit of liability. This may be elected at any time following the reporting of a Claim to the Insurer, and the right expires with the expiration of the policy. The reinstatement restores the full policy limit for subsequent unrelated Claims made during the Policy Period, but the earlier Claim or Claims (and later related Claims) are subject to the original policy limit, and that original limit cannot be extended to apply to any of the subsequent claims- in other words, it is a right to obtain a "fresh start." The reinstatement is not automatically triggered, and there is a premium to be paid for it, as determined by the Insurer at the time of reinstatement.

**Claim Provisions**

- Claim is defined as follows:
*"Claim means:*
1) *a written demand for monetary or non-monetary relief...; or*
2) *a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:*
   a) *service of a complaint or similar proceeding; or*
   b) *return of an indictment (in the case of a criminal proceeding); or*
   c) *receipt of filing of a notice of charges.*
2) *an administrative or regulatory investigation when conducted by the EEOC (or similar ... agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event shall .. "Claim" includes any labor or grievance proceeding which is subject to a collective bargaining agreement.*
*The term "Claim" shall include an Employment Practices Claim and a Securities Claim."*

This is a broad definition of Claim. It includes non-monetary relief, and it includes administrative, regulatory,

arbitration and criminal proceedings.

- Employment Practices Claim means a Claim alleging an Employment Practices Violation, and that is defined as *"any actual or alleged:*
  1. *wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;*
  2. *harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);*
  3. *discrimination, including but not limited to... age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);*
  4. *retaliation (including lockouts);*
  5. *employment related misrepresentation... ;*
  6. *employment related libel, slander, humiliation, defamation, invasion of privacy;*
  7. *wrongful failure to employ or promote;*
  8. *wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation ...;*
  9. *wrongful discipline;*
  10. *failure to grant tenure;*
  11. *failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practice Violation;*
  12. *violation of an individual's civil rights relating to any of the above.*
  
  *but only if the Employment Practices Violation relates to an Employee or applicant for employment.. whether direct, indirect, intentional or unintentional."*
  
  This is a very comprehensive definition, and the listing includes everything we have seen in any other policy.

- The policy extends coverage to claims by any customer or client of the Company, whether individually or as a class or group, for certain violations, limited to actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or harassment, whether direct, indirect, intentional or unintentional.

- The definition of Loss has some unique features. It specifies that Loss includes back pay and front pay, and pre- and post-judgment interest. There is a provision that the policyholder may, for an additional premium shown on the Declarations Page, buy back the exclusion of Punitive, Exemplary & Multiple Damages. This is subject to the insurability of such damages, using the applicable law which most favors such insurability.

- The policy does not strictly require that Claims be reported during the policy period. A window for reporting after the policy expiration exists.

- Notice of facts or circumstances may be given during the Discovery Period as well as the Policy Period.

- Like most D&O policies, the "Private Edge" form states that it is not a duty to defend policy, although the Insurer retains the typical right to associate with the Insureds in the defense of any Claim. However, the Insureds have a right to tender the defense of any Claim to the Insurer, and the Insurer is obliged to accept that tender, providing it is made within 30 days of the date the Claim is first made against the Insureds. The Insurer's obligation to defend such Claim ceases upon exhaustion of the policy limit, or rejection by the Insureds of a "Settlement Opportunity" (a settlement within the policy limits negotiated by and recommended by the Insurer).

- If the Insureds have tendered a Claim to the Insurer, and the Insurer is defending it on their behalf, obviously defense expenses are being paid by the Insurer. If the Insureds are handling the defense themselves, the Insurer will advance Defense Costs prior to the final disposition of the Claim, at the written request of the Insureds.

- With reference to consent to settlement there is a typical provision as respects any settlement negotiated by the Insureds. However, particularly since the Insurer may have the primary burden of handling Claims, there is a provision relating to claim settlements negotiated by the Insurer. It provides that the Insurer may , with the consent of the Insured, make any settlement of any Claim it deems appropriate. If the Insureds withhold consent to such "Settlement Opportunity", the Insurer's liability for all loss on account of the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Expenses up to the date the Settlement

Opportunity was proposed, plus 50% of the covered Loss in excess of the "Settlement Opportunity Amount". However, if the first Settlement Opportunity is accepted by the Insureds within 30 days of the time it is first proposed, the Insureds are rewarded by a reduction of the applicable retention by 10% of the Loss.

To clarify the last sentence above, assume this scenario:
| | |
|---|---|
| Retention | $50,000 |
| Policy Limit | 5,000,000 |
| Claim Demand | 6,000,000 |
| Settlement Offer | 300,000 |
| Defense Costs | 30,000 |
| Reduction in Retention | 33,000 |
| Net Retention | 17,000 |
| Paid by Insurer | 313,000 |

Thus even if the Insured is convinced that the Claim is without merit, and would like to "fight it all the way to the Supreme Court", it comes out ahead by agreeing to the Settlement Opportunity since it otherwise would be paying at least the full $30,000 in accrued Defense Costs as part of its retention. This avoids the psychological barriers of Insureds insistent on victory- even a Pyrrhic victory.

While we frequently label provisions having a "hammer clause" of this general nature as a negative feature, that is not the case here. This provision is justified because of the Insurer's possible role in defending the Claim, coupled with the coverage of the Company as well as the Individual Insureds. Basically, fairness dictates that since it is the Insurer's money, they should be entitled to reasonable control over it. In addition, the penalty is not as severe as in most similar clauses in other policies, with the Insurer willing to pay 50% of the "penalty" resulting from rejection of the Settlement Opportunity- most other policies do not offer that payment. Finally the reward for quick acceptance of a Settlement Offer is unique.

- The usual subrogation clause is amended to add: *"In no event... shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been judicially determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled."*

## Exclusions

- The ERISA exclusion is typical, embodied in exclusion (m) with violations of other statutes. As such an Employment Practices Claim alleging retaliation for an ERISA claim would be covered.

- The Intentional Torts exclusion is limited to libel, slander, defamation or disparagement, invasion of privacy and emotional distress, and even then the exclusion does not apply to any Securities Claim or Employment Practices Claim.

- The Pollution & Contamination exclusion is typical, but with an exception for any Claim brought by a Securities holder of the Company in its capacity as such or to any Employment Practices Claim. However, it should be noted that the exception is not for any "Securities Claim"- a Securities Claim because of stock price fluctuations affecting a potential buyer of the stock would not be covered.

## Other Conditions

- While the Insured has its usual cancellation rights, the Insurer cannot cancel the policy for any reason other than non-payment of premium, in which 30 days notice must be given.

- The positive features of Extended Discovery option are as follows:
    1. Availability- Upon cancellation or non-renewal by either the Insurer or the Insured. It is also available in event of a "Transaction" which triggers run-off of the policy.
    2. Length- One year, two years or three years, at the option of the Insureds at the time of exercise of the

  Discovery Option.
3. Election Window- Within 30 days after the end of the Policy Period.
4. Right to Report Notice of Circumstances during Discovery Period- Made available by the terms of the Reporting Provisions of the policy.

➢ The policy contains a Section labeled "Dispute Resolution Process", under which the Insureds may, if they choose, select one of two alternative dispute resolution processes, non-binding mediation or binding arbitration. If mediation is the form of ADR chosen, and it is not successful, either party then has the right to proceed to a judicial proceeding, but such proceeding is stayed until 120 days after the termination of the mediation. If binding arbitration is chosen the arbitration follows the usual custom of a panel of three arbitrators, due consideration to the laws of the state of incorporation of the Named Entity, etc. There is a requirement that the terms, conditions, provisions and exclusions of the policy are to be construed in an even handed fashion. We have no problem with this- it does not require abandonment of any common law principles governing the interpretation of insurance policies, and this is an improvement over the language of the "Employment Plus" endorsement to the 1995 policy. The venue of either form of ADR is selected by the Insureds and can be New York, Atlanta, Chicago, Denver or the state of the mailing address of the Named Entity. The offering of choices of ADR is a positive feature.

➢ AIG offers a Three-Year Program set of endorsements. The first of these endorsements applies to the first year policy, the second to the second year policy. They provide the following:
1. A guarantee of renewal unless there has been:
 a) A change in control of the Company, or
 b) Bankruptcy or insolvency of the Company, or
 c) Failure to provide a renewal app or other information for renewal underwriting, or
 d) Cancellation of the policy during its term, or
 e) A change in law or insurance regulation preventing the insurer from issuing such renewal policy.
2) A guarantee that the renewal policy will be offered on the same terms and conditions, and with the same policy limit.
3) A guarantee that the premium quote for the renewal policy shall not exceed 125% of the premium for the current policy, unless a notice of claim or of circumstances that may reasonably be expected to give rise to a claim has been given to the Insurer, in which case the 125% premium cap does not apply.

Of course, the Insurer can raise the premium by 25% the first renewal and another 25% the second year, for a compound increase of 56% in two years, but given the history of past volatility in D&O premiums, capacity, and policy terms this type of guarantee is well worth having. AIG points out that the Insured may be able to negotiate a better deal, but AIG cannot offer a worse deal than that outlined above. It also states that this program is not reinsurance dependent.

AIG will also write coverage for a three-year term, but in those instances the limit of liability is a single aggregate limit for the entire three-year term. This obviously has both advantages and disadvantages.

➢ The defense of a Securities Claim or an Employment Practices Claim is required to be conducted by one of the pre-approved law firms listed as an attachment to the policy, which are referred to as the Panel Counsel Firms. If the Insurer has assumed the defense of the Claim, it selects the Panel Counsel Firm, if the Insureds have not tendered the defense they select the Panel Counsel Firm. There are various provisions in the wording of this clause relating to local counsel if the claim is brought in a jurisdiction in which there is no Panel Counsel Firm, etc. The Panel Counsel Firm concept is positive in that it assures that the Claim will be defended by competent counsel. On the other hand, it is obviously limiting in the choices available to the Insureds, and its assumption that the court in a case in a minor state will be as sympathetic to lead counsel from a big city in another state than it would be to lead counsel from the best defense firm in its own jurisdiction. (The clause does provide for appointment of local counsel in jurisdictions where there is no Panel Counsel Firm, but still requires that a Panel Counsel Firm from the nearest listed jurisdiction be the lead counsel.) However, the Panel Counsel Firm program for Employment Practices Claims includes 132 offices in 47 states and the District of Columbia, so the nation is very well covered in that respect. The listing for Securities Claims is less voluminous, but still covers all major states.

# THE NEGATIVE FEATURES OF THIS POLICY ARE THESE:

## Exclusions

- Rather than the typical wording, AIG uses the phrase *"the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law."* The inclusion of "any willful violation of any statute, rule or law" is troubling because so many aspects of Employment Practice are ruled by a myriad of statutes and regulations. Non-imputation applies to this exclusion.

- The exclusion or loss covered by a prior policy reads this way: *"..any Claim... based upon or attributable to the facts ... contained... in any circumstances of which <u>notice has been given</u> under any policy of which this Policy is a renewal or replacement or which it may succeed in time."*

  This differs from the typical exclusion slightly, since it applies if a Claim had been made <u>or a notice had been given</u> under a prior policy of insurance. If no Claim is made prior to the Inception Date, but notice is given to the Claims Department of a prior D&O insurer of facts or circumstances which might give rise to the claim, then the subsequent Claim will not be covered by reason of this exclusion, and that is a proper outcome.

  The difficulty might be the giving of notice of a transaction or event, such as a merger or acquisition, which is not made in expectation of a future claim but simply because the adjustment provisions of the prior policy called for such notice. If a claim now arises out of that event, the prior Insurer might deny coverage since this was not notice of a potential claim, merely a notice of underwriting matters, yet AIG may consider itself to have an applicable exclusion. While we believe AIG to be above taking an abusive position in a matter like this, the wording might open up the possibility to an over-eager claims attorney who chose to disregard the intent of the exclusion. It could be avoided if the Underwriter qualified the wording to say "..any notice of claim or potential claim which has been reported..". That would eliminate the problem of other notices triggering the exclusion.

- The policy uses the sweeping "arising out of bodily injury..." wording, as contrasted with the more limited "for bodily injury..." wording.

- The Insured v Insured Exclusion also applies to any Claim brought by any security holder of the Company, whether derivatively or directly. There is an exception for security holder claims if they are brought independent of and totally without the solicitation of, or assistance of, or active participation of, or active participation of any Insured. It should be remembered that all employees are insureds, not just Directors and Officers. This exclusion is going to bar coverage for litigation between opposing blocks of shareholders, even if the minority block has no positions in the Company other than mailroom clerk. The exclusion has an exception for cross claims or third party claims not otherwise excluded by the policy.

- There is an exception in the Insured v Insured exclusion of an EPL Claim, but this exception has another exception if the employee bringing the Claim is or was a Director of the Company, or a member of the Board of Managers or management committee member. Since private companies may have some individuals in these categories who may have legitimate and non-collusive reasons for bringing EPL claims, this is a negative feature.

- There is a four-part exclusion that applies only to direct Claims against the Company. Those parts are these:
  1. Claims for plagiarism or other intellectual property rights violations;
  2. Claims for violations of laws relating to anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships;
  3. Claims for rendering or failure to render any service to a customer or client of the Insured, except for Securities Claims or Claims solely alleging Employment Practices Violations, or Claims covered by a professional liability endorsement to the policy;
  4. Claims seeking fines, penalties or non-monetary relief against the Company, except for Securities Claims or Employment Practices Claims.

    These are limiting features on the extent of coverage granted to the Company. The policies of other Insurers may or may not have equivalent exclusions, or they may or may not limit such exclusions to Loss other than Defense Costs.

- The exclusion of Claims arising from Pending and/or Prior Litigation applies with the respective operative dates being the continuity dates set forth for coverage of the Company, coverage of Outside Directorship claims, and all other Claims. This exclusion includes any pending or prior administrative or regulatory proceeding or investigation of which an Insured had notice.

# OTHER FEATURES WORTHY OF NOTE ARE THESE:

### Applications

- In addition to the typical material AIG requests information on the type of business entity (corporation, limited liability company, sole proprietorship, other), the principal products or services, the primary SIC Code(s), number of locations (US + Canada, Foreign), and number of retail outlets if any.

- It also requests the names of the Risk Manager and the General Counsel and the number of years each has served in their current position. It also wants to know the names and locations of the outside law firms used, with particular emphasis on Securities Claims and Employment Practices Claims.

- It also asks if the applicant or any subsidiaries are involved in any joint ventures, general partnerships or limited partnerships.

- There is a section of the application seeking employee information, which asks for a fairly detailed breakdown of the number of employees, including the number in three particular states (California, Michigan & Texas), the annual percentage turnover, the number of Officers and number of other employees who have been terminated or have retired in the last 24 months, and information as to Union membership, collective bargaining agreements, and written employment contracts.

- In addition to the typical questions, AIG asks if any the Applicant's securities or those of any subsidiary are publicly traded or the subject of a "shelf registration". If so, additional information is requested. It also wants to know if any securities are convertible to voting stock.

- AIG asks about any recent or prospective private placements of securities, or the anticipated purchase of the securities of a publicly traded company which would result in such company becoming a subsidiary or affiliate of the Applicant.

- There also is a question about present or contemplated employee layoffs or early retirement plans, including ones resulting from company restructuring or facility closings.

- There are a number of questions dealing with corporate policies in the Human Resources field. These include information on the Human Resources Department (if any); existence, subjects covered by, and distribution of the Human Resources Manual or equivalent guidelines; training of management and supervisory staff; procedures in certain employment related matters; use of employment application forms; and existence and distribution of employee handbooks.

- The questions that are claim or knowledge related are expanded to include the Entity as well as the Directors and Officers. Detail is also requested on employment related claims which involved payments of $25,000 or more against the Applicant, Subsidiaries or any Directors, Officers or employees in the last five years. Information is also requested on administrative inquiries, investigations, etc. or any customer/client lawsuits in the last five years.

- ➤ In addition to the lists required of Directors and Officers and details of various other matters, AIG asks for the following documents:
    1. Latest annual report or audited financial statement.
    2. Latest interim financial statement.
    3. Proxy statements and notices of annual meeting in last year.
    4. Certified copies of the indemnification provisions of the charter and by-laws, and any corporate indemnification agreement.
    5. Latest CPA management letter along with the applicant's response to any recommendations made therein.
    6. Employee Handbook
    7. Human Resources Manual and/or Guidelines
    8. Procedures respecting applicants for employment, discipline, termination, and allegations of harassment or discrimination.
    9. Latest EEO-1 Report.

## Declaration Page

- ➤ Because of the special features of this policy, the information on Retentions is somewhat more complex than usual. There are no retentions for Judgments, Settlements and Defense Costs for any non-indemnifiable loss, while different retentions apply to Loss for Employment Practices Claims, Securities Claims, and all Other Claims if the Loss is a Company Loss or an Indemnifiable Loss.

- ➤ There also is a set of Continuity Dates contained in the Declarations. These dates relate to certain exclusions which deal with pending & prior litigation in General, Claims against the company, and coverage of service to an "Outside Entity."

## Coverage Agreements

- ➤ Spousal coverage is built into the policy form.

- ➤ Service to an Outside Entity as defined is covered. Service to any other entity, or not meeting the qualifications for the coverage provided, is specifically excluded.

## Loss Provisions

- ➤ There is one additional definition of a specific type of Claim- "Securities Claim". This means a Claim... which is:
    1. *brought ... alleging, arising out of, based upon or attributable to... the purchase or sale, or offer or solicitation of an offer to sell, any securities of the Company; or*
    2. *brought by a securities holder of the Company, whether directly, by class action, or derivatively on behalf of the Company... "*

- ➤ In addition to the usual exclusions of various elements of Loss, there are additional excluded elements, largely applicable to EPL Claims:
    *"4.     employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; or*
    *5.      any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or*
    *any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim."*

- ➤ These are fairly standard exclusions, except for the second part of the second excluded item relating to employment related benefits. However, this is a logical exclusion, in the sense that it excludes expenses to improve the work environment and benefit the corporation in the long run, as opposed to a payment to a

claimant as part of that claimant's damages.

- The definition of Wrongful Act is typical, but extended to include Wrongful Acts of the Company. Also includes any matter claimed against the Directors, Officers and other senior people arising out of their serving as a director, officer, trustee or governor of any Outside Entity, but only if such service is at the specific request or direction of the Company.

- Notice of a Claim must be given to the Insurer as soon as practicable, but in any event either within the Policy Period or the Discovery Period, if applicable, or within 30 days after the end of the Policy Period or the Discovery Period, if applicable, providing that any Claim reported during that grace period must be reported no later than 30 days after the Claim is first made against an Insured. The thirty day grace period is a little shorter than most, and the qualification on claims reported during the grace period a bit more restrictive than most, but this provision is reasonably fair.

- The policy has a section (#17) dealing with Dispute Resolution, which would include the handling of allocation disputes among others. Allocation between insured and uninsured parties is not a major factor since the policy is broad enough to include the entity as well as the directors, officers and employees.

## Coverage Limitations

- AIG does not have a prior knowledge clause in its policy as to claims per se. The following is wording found in the preamble to the policy: *"in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein....the Insurer agrees as follows"*

- The application contains this wording:
  *"It is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and become part of the policy."*
  *"All written statements and materials furnished to the insurer in conjunction with this application are hereby incorporated by reference into this application and made a part hereof."*
  *"It is agreed with respect to [the knowledge and claim questions] above, if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage."*

## Coverage Limitations

- The policy does not have "retroactive dates" as such. It does have "continuity dates", which relate to the pending or prior litigation exclusions, and three such dates are set forth in the Declarations. The first continuity date relates to all Coverages except those for Claims against the Company and for Outside Entity coverage. The second continuity date relates to Claims against the Company. The third continuity date relates to the Outside Entity coverage.

- There is a "non-pyramiding" section in the "Other Insurance" clause as respects other insurance carried in an AIG company by an outside entity applicable to a claim against an insured individual under this policy. The terms as to other insurance and/or reimbursement provided by an Outside Entity for an Insured Person providing service as a Director or Officer of such entity also apply to Employment Practices Claims against a leased employee.

## Exclusions

- The Personal Profit or Advantage exclusion is typical, but not limited to "personal profit". Claims based upon acts which result in an illegal corporate profit or advantage are also excluded. Non-imputation applies.

- There is an exclusion of Loss *"for violation(s) of any of the responsibilities, obligations or duties imposed by [ERISA], the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act,*

*[OSHA], etc....".* As to all of these except the ERISA exclusion, some other policies will cover Defense Costs, although they will not cover damages. To that extent, this is a negative feature. There is an exception to the exclusion, providing that it shall not apply to Loss arising from a Claim for Retaliation.

> There is also an exclusion of Claims *"arising out of, based upon... any obligation pursuant to any workers compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss resulting from a Claim for Retaliation."*

> There is an exclusion similar to the Insured v Insured type of exclusion, of a Claim brought by an Outside Entity or any director, officer, trustee or governor thereof, against an Insured serving as a director, officer, trustee or governor of such entity.

> There is an exclusion of *"any Claim alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering."* However, there is a provision for coverage of such securities offering if notice of the offering and full particulars are given to the Insurer, and the Insured accepts the premium quotation and policy terms which must then be offered by the Insurer. There is a window of 30 days prior to the effective date of the offering for this to take place. There is another exception as to the purchase or sale of securities exempted under section 3(b) of the Securities Act of 1933, if notice is given to the Insurer within 30 days after such event.

> There is another exclusion dealing with the purchase by the Company of securities of a publicly traded entity in a transaction which results, or would result, in such entity becoming a Subsidiary or Affiliate of the Company. Claims arising out of or based upon such purchases are excluded, unless the Company gives notice to the Insurer within 30 days prior to the transaction, and agrees to the payment of additional premium and amendment of the policy conditions as required by the Insurer.

> There is no exclusion of failure to effect or maintain Insurance

> There is an exclusion relating to Claims for contractual liability, which reads: *"alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practices Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement."* An exclusion of this nature is customary and reasonable for coverage of the Corporate entity, for one does not expect an insurer to cover routine breach of contract claims. The exception for EPL Claims is a positive feature, but in other policies as well as the 1995 policy the exception was worded "this exclusion shall not apply if the Insured would have had such liability even in the absence of such contract or agreement". We believe that wording was a little more liberal than the wording in the new policy.

## ITEMS SUBJECT TO NEGOTIATION

> The "continuity dates" established as operative dates for the pending or prior litigation exclusions are negotiable.

*Last Revised March 31, 2000*